# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DERICK L. DOLL and CATHERINE M. FLUEGEL, individually and as representatives of a Class of Participants and Beneficiaries on behalf of the Evergy, Inc. 401(k) Savings Plan<br><br>        Plaintiffs,<br><br>   v.<br><br>EVERGY, INC., DAVID A. CAMPBELL, TERRY BASSHAM, and THE ADMINISTRATIVE COMMITTEE OF THE EVERGY, INC. 401(k) SAVINGS PLAN,<br><br>        Defendants. | Case No. 4:25-cv-43 |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiffs, Derick L. Doll and Catherine M. Fluegel ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries on behalf of the Evergy, Inc. 401(k) Savings Plan, by and through their counsel, SCHNEIDER WALLACE COTTRELL KONECKY, LLP, WALCHESKE & LUZI, LLC, and DON BIVENS, PLLC as and for a claim against Defendants, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.      Plaintiffs, individually and on behalf of the Class, allege Defendants Evergy, Inc., David A. Campbell, Terry Bassham, and the Administrative Committee of the Evergy, Inc. 401(k) Savings Plan, (collectively "Defendants" or "Evergy") breached their fiduciary duty of prudence under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, regarding their Evergy, Inc. 401(k) Savings Plan (the "Plan" or "Evergy Plan").

2.      The Class is defined as: "All participants and beneficiaries of the Evergy, Inc. 401(k) Plan who invested in any of the American Century Target Date Funds (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period."

3.      Defendants breached their fiduciary duties to Plaintiffs and the Class when they: (1) selected and retained imprudent American Century Fund Target Date Funds ("TDFs") when prudent, more suitable TDF "meaningful benchmarks" were readily available at the beginning of and throughout the Class Period; and (2) failed to monitor fiduciaries responsible for Plan administration and management on the Administrative Committee for the Evergy, Inc. 401(k) Savings Plan ("Administrative Committee") regarding the imprudent Challenged Investments.

4.      These alleged breaches and imprudent investments resulted in the loss of tens of millions of dollars for Plaintiffs and the Class.

5.      Plaintiffs are "participants" in a defined-contribution plan under ERISA Section 3(7), 29 U.S.C. § 1002(7): the Evergy Plan.

6.      The Plan is a Section 401(k) "defined contribution" pension plan under 29 U.S.C. § 1002(34), meaning that the value of participants' investments is "determined by the market

performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l,* 575 U.S. 523, 525 (2015).

7. As a defined-contribution plan, the Plan allows participants to direct the investment of their contributions, but the investment options included in the Plan are selected by the Plan's fiduciaries.

8. Defendants are the Plan Sponsor, Plan Administrators, and fiduciaries of the Plan. Evergy assigned fiduciary management and administrative duties of the Plan to the Administrative Committee to manage and administer the Plan.

9. Under ERISA, plan fiduciaries must discharge their duty of prudence "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

10. ERISA's fiduciary duties have been described as "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

11. "In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble*, 575 U.S. at 528–29. The Supreme Court has stated that "a trustee has a continuing duty to monitor trust investments and remove imprudent ones ... separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.* at 529. "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2002) (citing *Tibble*, 575 U.S. at 529–30).

12. Under this prudent person standard, courts must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *See Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983).

2

13.     ERISA's duty of prudence "includes a continuous duty to monitor and remove imprudent investments." *Snyder v. UnitedHealth Grp., Inc.*, No. 21-1049 (JRT/DJF), 2024 U.S. Dist. LEXIS 42952, at *18-19 (D. Minn. Mar. 12, 2024).

14.     ERISA's statutory duty of prudence establishes "an objective standard" that focuses on "the process by which" decisions are made, "rather than the results of those decisions." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020).

15.     ERISA plaintiffs claiming a breach of fiduciary duty have a challenging pleading burden because of their different levels of knowledge regarding what investment choices a plan fiduciary made as compared to how a plan fiduciary made those choices. ERISA plaintiffs typically have extensive information regarding the selected funds because of ERISA's disclosure requirements. In contrast, they typically lack extensive information regarding the fiduciary's methods and actual knowledge because those details tend to be in the sole possession of that fiduciary. As a result, the challenge for ERISA plaintiffs is to use the data about the selected funds and some circumstantial allegations about methods to show that a prudent fiduciary in like circumstances would have acted differently. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)

16.     To show that "a prudent fiduciary in like circumstances" would have selected a different fund based on the cost or performance of the selected fund, a plaintiff must provide a sound basis for comparison — a meaningful benchmark. *Id.*

17.     That is, an ERISA claim alleging an imprudent investment process need not directly allege details of the process by which the Plan was managed, because a court can infer a flawed process from circumstantial factual allegations. A plaintiff relying on inferences from circumstantial allegations is required to allege facts that show a prudent fiduciary in like circumstances would have acted differently. At the pleading stage, a plaintiff must provide a sound basis for comparison—a meaningful benchmark, such as a market index, to show that a prudent fiduciary in like circumstances would have selected a different fund. *Karg v. Transamerica Corp.*, No. 18-CV-134-CJW-KEM, 2019 U.S. Dist. LEXIS 140567, at *15-16 (N.D. Iowa Aug. 20, 2019).

3

18.     In addition, while a fiduciary may decide to hold an underperforming asset if they determine after a reasonable process that the performance may improve, "the reasonable length of retention and sufficiency of monitoring processes are generally fact-specific determinations that defy bright line rules." *Snyder*, 2024 U.S. Dist. LEXIS 42952, at *20.

19.     During the Class Period, Defendants breached the duty of prudence they owed to the Plan by failing to monitor and remove the American Century Target Date Funds ("TDFs") as investment options in the Plan based on those TDFs' underperformance compared to their own benchmark, as well as numerous comparable funds.

20.     In addition, Defendants failed to monitor the American Century TDFs' significant turnover rate of 68% over the three years before the start of the class period and 72% since that time, both significantly higher than the industry average during the same period. A prudent fiduciary would have monitored the American Century TDFs' turnover, investigated the reasons for the high turnover rate, and taken action to protect the Plan participants' retirement savings, including removing the American Century TDFs from the Plan.

21.     TDFs are designed to allow retirement plan participants to invest in a single fund with a professionally-managed and broadly-diversified portfolio that becomes more conservative as the participant approaches retirement age. The investment strategy of each fund is based on a level of risk generally deemed appropriate for someone who expects to retire in the year of the fund's target date. The investment strategy assumes greater risk in the fund's early years and grows more conservative over time.

22.     For example, in the early years when investors have more time to bear short-term fluctuations in the stock market, each fund's asset allocation favors stocks to try to maximize returns. Then as the "target date" nears, money is gradually moved out of stocks and into more conservative investments, like bonds, to try to preserve the accumulated value of investors' accounts. Typically, there will be multiple TDFs for the different retirement targets of a given organization, such as the 2020 Fund, the 2030 Fund, and the 2040 Fund. Collectively these TDFs are sometimes referred to as a "series." TDFs are primarily designed for participants who want a

dynamic but consistently conservative asset allocation that matches their retirement timeline, and are designed to be a "set it and forget it" investment option for participants who want their investments to be appropriately balanced and managed until they expect to retire.

23.     Here, the American Century TDFs materially and dramatically underperformed their own benchmarks, the S&P Target Date Index, during the three-year period before the beginning of the Class Period in 2018. The American Century TDFs continued to underperform their own benchmarks in the investment policy statement and in the required participant fee disclosures under ERISA Section 404(a)(5) throughout the Class Period.

24.     The American Century TDFs also underperformed all of the major TDFs available in the marketplace, both before and throughout the class period.

25.     Any prudent fiduciary would have reviewed the American Century TDFs' performance history, both relative to its benchmark and relative to other comparable TDF investment options in the marketplace as part of a prudent fiduciary process.

26.     A prudent fiduciary who reviewed that performance and turnover information— all of which was available to Defendants at the beginning of the Class Period—would have taken action to monitor and remove the American Century TDFs from the Plan as a result of their dramatic and sustained underperformance.

27.     Defendants' failure to monitor or remove the American Century TDFs as investment options for the Plans despite the long-term underperformance and high turnover of the American Century TDFs suggests that Defendants' fiduciary process was imprudent.

28.     Defendants' failures were compounded by their decision to select the American Century TDFs, despite their underperformance and high turnover, as the default investment option for Plan participants' retirement savings and for company matching contributions in the absence of an affirmative election for a different investment options.

29.     The American Century TDFs held more of the Plan's assets than any other investment option in the Plan throughout the Class Period, by a significant margin. Since the beginning of the Class Period, the American Century TDFs have consistently held more than one-

third (1/3) of the Plans' total assets. At year end 2018, the American Century TDFs held in excess of 40% of the Plan's assets.

30.     No reasonably prudent fiduciary would have allowed so much of the Plan participants' retirement savings be diverted into manifestly underperforming investment options as the American Century TDFs.

31.     To remedy these fiduciary breaches, Plaintiffs bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) in a representative capacity to enforce Defendants' liability under 29 U.S.C. § 1109(a), and to make good to the Plan all losses resulting from these breaches. In addition, Plaintiffs seek to reform the Plan to comply with ERISA and to prevent further breaches of fiduciary duties and grant other equitable and remedial relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

33.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

34.     Venue is appropriate in this District within the meaning of 29 U.S.C. § 1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District.

## THE PARTIES AND THE PLAN

35.     The Evergy Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

36.     Evergy is the Plan sponsor under 29 U.S.C. § 1002(16)(B).

6

37.     Plaintiff Derick L. Doll is a resident of the State of Missouri and currently resides in Kansas City, Missouri, and during the Class Period, was a participant in the Plan under 29 U.S.C. § 1002(7). Plaintiff Doll was employed by Evergy's predecessor KCPL starting in 2000 and was an Evergy employee until May 2024. During that time he held several positions, including Work Week Manager, Transition Team Manager, and Simulator Instructor.

38.     Plaintiff Doll held the following investments in the Plan, among others: American Century Retirement 2025 Trust Class XI, American Century Retirement 2030 Trust Class XI, American Century Retirement 2035 Trust Class XI, American Century Retirement 2040 Trust Class XI, American Century Retirement 2045 Trust Class XI, American Century Retirement 2050 Trust Class XI, American Century Retirement 2055 Trust Class XI.

39.     Plaintiff Catherine M. Fluegel (formerly Catherin Tilden) is a resident of the State of Missouri and currently resides in Montrose, Missouri, and during the Class Period, was a participant in the Plan under 29 U.S.C. § 1002(7). Plaintiff Fluegel was employed by Evergy from 2008 through December, 2022, in the position of Lead Plant Chemist.

40.     Plaintiff Fluegel held the following investment in the Plan, among others: American Century Retirement 2030 Trust Class XI.

41.     Plaintiffs have Article III standing to bring this action on behalf of the Plan because they suffered actual injuries to their Plan accounts in which they held a number of the American Century TDFs during the Class Period, those injuries are fairly traceable to Defendants' unlawful conduct as fiduciaries of the Plan in maintaining the American Century TDFs in the Plan, and the harm is likely to be redressed by a favorable judgment.

42.     Having established Article III standing, Plaintiffs may seek recovery under ERISA § 502(a)(2), *codified at* 29 U.S.C. § 1132(a)(2), on behalf of the Plan to obtain for relief for the Plan under ERISA § 409(a), *codified at* 29 U.S.C. § 1109(a), including relief that sweeps beyond their own injuries.

43.     The named Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, regarding the imprudence selection, and

maintenance of, the Challenged Investments) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

44.     The named Plaintiffs and all participants in the Plan, having never managed a large 401(k) Plan such as the Plan, lacked actual knowledge of prudent Plan investments or the prudent alternative investments available to the Plan. Further, Plaintiffs did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' processes for maintaining and monitoring the Plan's investments) because this information is solely within the possession of Defendants prior to discovery. For purposes of this Amended Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth below.

45.     Evergy is an American publicly traded public utility company incorporated in 2017 in Missouri and headquartered in Kansas City, Missouri, with significant energy generation and distribution operations in Kansas and Missouri. Its principal headquarters are located at 1200 Main Street, Kansas City, Missouri 64105. In this Complaint, "Evergy" refers to the named Defendants and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

46.     Evergy acted through its officers, including the Board Defendants, to perform Plan-related fiduciary functions in the course and scope of their business.

47.     David A. Campbell is the current Chief Executive Officer of Evergy, and has served in that capacity since January 4, 2021. Under the Plan, the Chief Executive Officer of Every is responsible for appointing the Plan's Administrative Committee, and accordingly had a concomitant fiduciary duty to monitor and supervise those appointees. For these reasons, the Mr. Campbell, as Chief Executive Officer of Evergy, is a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

48.     Terry Bassham was the Chief Executive Officer of Evergy prior to the appointment of Mr. Campbell, and was also, in that capacity, a fiduciary of the Plan.

49.     Evergy also serves as the Plan Administrator of the Plan. As the Plan Administrator, Evergy is also a fiduciary with day-to-day administration and operation of the Plan under 29 U.S.C. § 1002(21)(A). It has authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a). The Administrative Committee is also a named fiduciary of the Plan, and has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

50.     At year end 2018, the Plan had $564,535,140 in assets entrusted to the care of the Plan's fiduciaries, and more than 3,000 participants. As a result, the Plan was among the largest 401(k) plans in the United States.

## DEFENDANTS' IMPRUDENT FIDUCIARY PROCESS LEAD TO THE PLAN'S CONTINUED INVESTMENT IN THE AMERICAN CENTURY TARGET DATE FUNDS

51.     The American Century TDFs had been included as investment options in the Evergy Plan for many years prior to the beginning of the Class Period.

52.     The Administrative Committee was responsible for crafting the Plan's investment lineup, as well as adding new funds and removing old funds, and could have chosen other target date fund families than the American Century TDFs at or any time before or after the beginning of the Class Period.

53.     As a result of numerous defects in their fiduciary process, the Plan Committee has not yet removed the American Century TDFs from the Plan as of the date of this Complaint, years later than they should have.

54.     Despite the underperformance and high turnover rates of the American Century TDFs, Defendants nevertheless selected the TDFs as the default investment option for Plan participants' retirement savings and for company matching contributions. Thus, unless participants affirmatively directed otherwise, Defendants automatically directed participants' savings into the American Century TDFs.

55.     As a result, the American Century TDFs held more of the Plan's assets than any other investment option in the Plan throughout the Class Period, by a significant margin. Since the beginning of the Class Period, the American Century TDFs have consistently held more than one-third (1/3) of the Plans' total assets, and at the beginning of the Class Period, the American Century TDFs held in excess of 40% of the Plan's assets:

| Year Ending | Plan Assets In American Century TDFs | Total Plan Assets | Percentage In American Century TDFs |
|---|---|---|---|
| 12/31/2019 | 584753920 | 1,353,285,042 | 43.2% |
| 12/31/2020 | 550483179 | 1,435,366,990 | 38.4% |
| 12/31/2021 | 569927380 | 1,539,730,672 | 37.0% |
| 12/31/2022 | 463727025 | 1,247,728,854 | 37.2% |
| 12/31/2023 | 491529199 | 1,332,946,113 | 36.9% |

## A.  The American Century TDFs' Underperformance

56.     The American Century TDFs underperformed their own benchmark, the S&P Target Date indices, before and during the Class Period.

57.     For the three year period ending on December 31, 2018, the American Century TDFs underperformed their S&P Benchmark:[1]

| American Century TDF | 2018 Fund 3 Year Return | 2018 S&P Benchmark 3 Year Return | 2018 3 Year Fund Underperformance |
|---|---|---|---|
| American Century 2025 XI | 4.60% | 5.46% | 0.87% |
| American Century 2030 XI | 4.82% | 5.77% | 0.94% |
| American Century 2035 XI | 5.08% | 6.09% | 1.00% |
| American Century 2040 XI | 5.45% | 6.32% | 0.87% |
| American Century 2045 XI | 5.79% | 6.51% | 0.71% |
| American Century 2050 XI | 6.00% | 6.68% | 0.68% |
| American Century 2055 XI | 6.14% | 6.82% | 0.68% |
| American Century 2060 XI | 6.14% | 6.95% | 0.81% |

---

[1] The performance data presented herein is adjusted to eliminate discrepancies based on fees. Data for years prior to the launch of the XI share class comes from different classes of the same fund, but is adjusted upwards to account for the lower fees in the XI class.

58.     The same pattern of underperformance for the American Century TDFs continued after January 1, 2019:

| American Century TDF | Fund Performance Since 1/1/2019 | S&P Benchmark Performance Since 1/1/2019 | Fund Underperformance Since 1/1/2019 |
|---|---|---|---|
| American Century 2025 XI | 7.40% | 7.79% | 0.39% |
| American Century 2030 XI | 7.97% | 8.87% | 0.90% |
| American Century 2035 XI | 8.58% | 9.98% | 1.40% |
| American Century 2040 XI | 9.20% | 10.87% | 1.67% |
| American Century 2045 XI | 9.93% | 11.40% | 1.47% |
| American Century 2050 XI | 10.67% | 11.69% | 1.02% |
| American Century 2055 XI | 11.08% | 11.76% | 0.67% |
| American Century 2060 XI | 11.36% | 11.81% | 0.45% |

59.     Moreover, the underperformance of the American Century TDFs has become more severe since 2021:

| American Century TDF | Fund Performance Since 1/1/2021 | S&P Benchmark Performance Since 1/1/2021 | Fund Underperformance Since 1/1/2021 |
|---|---|---|---|
| American Century 2025 XI | 3.75% | 4.33% | 0.57% |
| American Century 2030 XI | 3.94% | 5.30% | 1.35% |
| American Century 2035 XI | 4.24% | 6.30% | 2.06% |
| American Century 2040 XI | 4.54% | 7.20% | 2.67% |
| American Century 2045 XI | 4.95% | 7.75% | 2.80% |
| American Century 2050 XI | 5.46% | 8.06% | 2.60% |
| American Century 2055 XI | 5.85% | 8.12% | 2.27% |
| American Century 2060 XI | 6.06% | 8.12% | 2.06% |
| American Century 2065 XI | 6.13% | 8.26% | 2.13% |

11

60.     In addition to underperforming their benchmarks, the American Century TDFs have also underperformed compared to other major TDF groups during the three-year period ending December 31, 2018, and since 2019 and 2021:

| 3 Year Performance Before 12/31/2018 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| American Century TDF | American Century | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
| American Century 2025 XI | 4.60% | 5.21% | 6.12% | 5.73% | 4.97% | 5.76% | 5.03% | 6.19% | 5.73% |
| American Century 2030 XI | 4.82% | 5.64% | 6.92% | 6.40% | 5.38% | 6.22% | 5.09% | 6.53% | 6.07% |
| American Century 2035 XI | 5.08% | 6.07% | 7.44% | 6.67% | 5.45% | 6.69% | 5.33% | 6.69% | 6.41% |
| American Century 2040 XI | 5.45% | 6.41% | 7.61% | 6.53% | 5.71% | 7.11% | 5.44% | 6.88% | 6.74% |
| American Century 2045 XI | 5.79% | 6.63% | 7.78% | 6.52% | 5.67% | 7.23% | 5.52% | 6.89% | 6.79% |
| American Century 2050 XI | 6.00% | 6.66% | 7.82% | 6.56% | 5.64% | 7.35% | 5.60% | 6.89% | 6.77% |
| American Century 2055 XI | 6.14% | 6.68% | 7.81% | 6.53% | 5.65% | 7.45% | 5.64% | 6.87% | 6.77% |
| American Century 2060 XI | 6.14% | | 7.81% | 6.50% | | 7.53% | 5.59% | 6.80% | 6.77% |

| American Century TDF | Fund Since 1/1/19 | BlackRock Since 1/1/19 | American Funds Since 1/1/19 | Fidelity Freedom Since 1/1/19 | JPMorgan Since 1/1/19 | Nuveen Since 1/1/19 | Principal Since 1/1/19 | T Rowe Price Since 1/1/19 | Vanguard Since 1/1/19 |
|---|---|---|---|---|---|---|---|---|---|
| American Century 2025 XI | 7.40% | 6.96% | 8.33% | 7.91% | 7.30% | 8.26% | 8.14% | 8.93% | 8.03% |
| American Century 2030 XI | 7.97% | 8.32% | 9.44% | 8.95% | 8.48% | 9.16% | 8.98% | 9.82% | 8.92% |
| American Century 2035 XI | 8.58% | 9.59% | 11.01% | 10.57% | 10.03% | 10.14% | 9.80% | 10.71% | 9.78% |
| American Century 2040 XI | 9.20% | 10.75% | 11.97% | 11.80% | 11.02% | 11.20% | 10.62% | 11.48% | 10.64% |
| American Century 2045 XI | 9.93% | 11.74% | 12.19% | 12.02% | 11.71% | 12.02% | 11.23% | 12.02% | 11.46% |
| American Century 2050 XI | 10.67% | 12.30% | 12.25% | 12.01% | 11.81% | 12.26% | 11.70% | 12.10% | 11.73% |
| American Century 2055 XI | 11.08% | 12.46% | 12.23% | 12.01% | 11.82% | 12.41% | 11.87% | 12.11% | 11.71% |
| American Century 2060 XI | 11.36% | 12.46% | 12.20% | 12.02% | 11.81% | 12.55% | 12.00% | 12.12% | 11.72% |

| American Century TDF | Fund Since 1/1/21 | BlackRock Since 1/1/21 | American Funds Since 1/1/21 | Fidelity Freedom Since 1/1/21 | JPMorgan Since 1/1/21 | Nuveen Since 1/1/21 | Principal Since 1/1/21 | T Rowe Price Since 1/1/21 | Vanguard Since 1/1/21 |
|---|---|---|---|---|---|---|---|---|---|
| American Century 2025 XI | 3.75% | 2.69% | 4.64% | 3.45% | 3.38% | 4.08% | 3.77% | 4.55% | 3.89% |
| American Century 2030 XI | 3.94% | 4.06% | 5.42% | 4.20% | 4.44% | 4.81% | 4.33% | 5.20% | 4.68% |
| American Century 2035 XI | 4.24% | 5.29% | 6.40% | 5.62% | 5.87% | 5.67% | 5.04% | 5.95% | 5.46% |
| American Century 2040 XI | 4.54% | 6.47% | 7.27% | 6.95% | 6.78% | 6.73% | 5.85% | 6.61% | 6.24% |
| American Century 2045 XI | 4.95% | 7.51% | 7.42% | 7.27% | 7.50% | 7.44% | 6.47% | 7.10% | 7.00% |
| American Century 2050 XI | 5.46% | 8.13% | 7.39% | 7.26% | 7.66% | 7.70% | 6.90% | 7.22% | 7.36% |
| American Century 2055 XI | 5.85% | 8.34% | 7.35% | 7.25% | 7.67% | 7.85% | 7.04% | 7.24% | 7.36% |
| American Century 2060 XI | 6.06% | 8.33% | 7.30% | 7.26% | 7.68% | 7.97% | 7.14% | 7.24% | 7.37% |
| American Century 2065 XI | 6.13% | 8.36% | 7.34% | 7.28% | | 8.16% | 7.13% | 7.49% | 7.39% |

61.     Thus, not only were the American Century TDFs underperforming compared to their own S&P Target Date indices benchmark, but there were numerous other TDF families available to the Plan that all outperformed the American Century TDFs.

62.     The TDFs identified as comparators above represent the largest TDF families in the marketplace in 2018:

| Brand | Dec 2018 AUM |
|---|---|
| Vanguard Target Retirement Series | $396,175,296,240 |
| Fidelity Freedom Series | $84,729,035,081 |
| Capital American Target Date Retirement Series | $78,086,788,111 |
| T. Rowe Price Retirement Series | $30,368,625,484 |
| JPM SmartRetirement Series | $29,672,047,144 |
| Nuveen Lifecycle Series | $21,886,508,996 |
| BlackRock LifePath Index | $17,267,116,854 |
| Principal LifeTime Series | $13,487,459,129 |
| Nuveen Lifecycle Index Series | $12,184,480,741 |
| American Century One Choice Series | $7,084,048,834 |
| Fidelity Advisor Freedom Series | $5,526,751,117 |
| JPMorgan SmartRetirement Blend Series | $5,057,908,188 |

63.     All of the comparator funds were also TDFs, and thus had similar structure, objectives, strategy, and risk profile to the American Century TDFs. All were designed to provide essentially the same type of investment experience to plan participants: "a long-term investment strategy based on holding a mix of stocks, bonds and other investments (this mix is called an asset allocation) that automatically changes over time as the participant ages."

64.     All of these fund families were, like the American Century TDFs, included in the "Target Date" Morningstar category.

65.     As the largest TDF families in the marketplace, these funds were available to the Defendants to include as investment options for the Plan, and thousands of other ERISA plan fiduciaries selected these comparator funds for their plans as well.

66.     Any reasonably prudent fiduciary determining which target date funds to offer the Plan's participants was or should have been aware of these investment options, and should have compared the performance of the American Century TDFs to the performance of these comparator TDFs.

67.    While one or two years of underperformance or outperformance might not cause a prudent fiduciary to question investment options, the American Century TDFs have been consistently underperforming for almost ten years, as they consistently failed to meet their own benchmark and numerous other TDF families had better performance over almost ten years.

68.    The market has taken note of the American Century TDFs' underperformance. In 2016, the American Century TDFs had a roughly 1.5% market share among TDFs. By the end of 2024, that market share had dwindled to 0.5%., or roughly 1/3 of its 2016 market share.



69.    The American Century TDF's steady underperformance has given rise to a dramatic loss of market share. The following chart illustrates the cumulative growth rate for the TDF sector as well as for AC based on monthly observations as of Dec 2016. Note that while the industry as a whole has seen nearly 100% growth (excluding investment returns), American Century has seen a nearly 40% decline in assets as a result of redemptions.



**B. The American Century TDFs Had Significantly Above Average Turnover Rates**

70. Turnover rates measure how often a fund changes its investments, with higher rates meaning the fund frequently buys and sells stocks or bonds.

71. High turnover rates create meaningful transaction costs for funds.

72. A higher-than-average turnover rate may indicate an investment manager's lack of experience or an attempt to mask a fund's underperformance. "High turnover is worrisome because it can suggest a manager is not following a disciplined investment strategy — which would contradict the funds' role in investors' retirement portfolios." Jessica Toonkel, *Target date turnover troubles big firms*, Investment News (Aug. 29, 2010).[2]

73. A turnover rate above 30% "warrants closer inspection" by investment professionals. *Id.*

74. The American Century TDFs had significant turnover, however, much higher than 30%, both before and during the Class Period.

75. During the period 2016-2018, the funds underlying the American Century TDFs had an average turnover of 68% per year, which rose to 72% per year over 2019-2023, more than **double** 30% starting in 2016, and substantially higher than the turnover for peer TDFs.

76. A prudent fiduciary would monitor a fund's turnover rate and would understand that excessive turnover can mean that the manager is attempting to remedy underperformance by deviating from the fund's strategy.

77. Here, the American Century TDF's turnover was a significant red flag, and a prudent fiduciary would have investigated the reasons for the high turnover and the impact the turnover was having on the Plan and the participants' retirement savings.

78. Taken together, because of the underperformance and high turnover rates for the American Century TDFs, Defendants were or should have been aware from the beginning of the Class Period that the American Century TDFs were not an appropriate investment in the Plan.

---

[2] Available at https://www.investmentnews.com/mutual-funds/target-date-turnover-troubles-big-firms/31049.

79.     The analysis set forth above in ***no way uses hindsight.*** Instead, it is solely based on information that the Plan Committee had or should have had available to them before and at all times during the Class Period.

80.     Because Defendants imprudently did not choose prudent, alternative TDFs, and instead chose the consistently underperforming American Century TDFs, Defendants caused unreasonable and unnecessary losses to Plaintiffs and Plan participants invested in the American Century TDFs in the tens of millions of dollars over the course of the Class Period.

## C.  Defendants' Failure to Monitor and Remove the American Century TDFs Caused Losses to Plaintiffs and the Plan

81.     By failing to engage in an objectively reasonable fiduciary process when retaining and failing to remove American Century TDFs from January 2019 until January 2025, Defendants breached their fiduciary duties of prudence to Plaintiffs and Plan participants and are liable to Plaintiffs and Class Members for the retirement monies lost through the imprudent investment in the American Century TDFs through the Class Period.

82.     Defendants caused objectively unreasonable losses to Plaintiffs and the Plan's participants of more than $27 million from the beginning of the Class Period, when considering the retirement losses suffered by Plaintiffs and the Class by the Plan Committee maintaining various versions of the American Century TDFs as the Plan's default investment.

83.     The following chart illustrates an estimate of damages suffered for each vintage of the American Century TDFs by maintaining the American Century TDF as the Plan's default investment instead of selecting, at the beginning of the Class Period, a more suitable and prudent alternative suite of TDFs. The damages estimates in this chart are based on a comparison of the performance of the American Century TDFs and the average performance of the comparator TDFs identified above.

| Fund | Est. Damages |
|---|---|
| American Century 2025 XI | 1,878,359 |
| American Century 2030 XI | 4,021,623 |
| American Century 2035 XI | 6,126,509 |
| American Century 2040 XI | 7,383,256 |
| American Century 2045 XI | 6,613,615 |
| American Century 2050 XI | 3,248,997 |
| American Century 2055 XI | 1,401,032 |
| American Century 2060 XI | 836,089 |
| American Century 2065 XI | 38,043 |
| Total | 31,547,523 |

84.     If the Administrative Committee appropriately evaluated the American Century TDFs at the beginning of and throughout the Class Period, it should have selected a more suitable and better performing TDF suite. Any of those suites of TDFs would have, as the data summarized *supra* in ¶¶ 56-80 shows, delivered performance superior to the American Century TDFs.

85.     Plaintiffs were invested in various American Century TDFs (American Century Retirement 2025 Trust Class XI, American Century Retirement 2030 Trust Class XI, American Century Retirement 2035 Trust Class XI, American Century Retirement 2040 Trust Class XI, American Century Retirement 2045 Trust Class XI, American Century Retirement 2050 Trust Class XI, and American Century Retirement 2055 Trust Class XI), during the Class Period, and thus, suffered an injury-in-fact to their individual retirement accounts in the Evergy Plan.

…


## CLASS ACTION ALLEGATIONS

86.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

87.     In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the Evergy, Inc. 401(k) Plan who invested in any of the American Century Target Date Funds (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period.

88.     The Class Period is defined as six years prior to the filing of this Complaint and continuing through the date of judgment in this action.

89.     The Class includes thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

90.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owe fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

- Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether Defendants breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

91.     Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were Plan participants during the time period at issue and the designated participants in the Plan were harmed by Defendants' fiduciary misconduct in the same manner.

92.     Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were Plan participants in the Plan during the Class period, have

no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

93.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

94.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

95.     Plaintiffs' attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

96.     The claims brought by the Plaintiffs arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the Plan. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

97.     Under ERISA, an individual "participant" or "beneficiary" are distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

## **FIRST CLAIM FOR RELIEF**
### **Breach of Duty of Prudence of ERISA, as Amended**
**(Plaintiffs, on behalf of themselves and Class,**
**Against Defendant Administrative Committee – Challenged TDFs)**

98.     Plaintiffs restate the above allegations as if fully set forth herein.

99.     Defendant Administrative Committee and its members are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

100.     29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant Administrative Committee in managing the investments of the Plan.

101.     Defendant Administrative Committee, as a fiduciary of the Plan, is responsible for selecting and maintaining prudent investment options and taking any other necessary steps to ensure that the Plan's assets are invested prudently.

102.     During the Class Period, Defendant Administrative Committee had a fiduciary duty to do all of the following: manage the assets of the Plan prudently and act with the care, skill, diligence, and prudence required by ERISA.

103.     During the Class Period, Defendant Administrative Committee breached its fiduciary duties of prudence to Plan participants, including to Plaintiffs, by failing to manage the TDFs of the Plan prudently, and failing to act with the care, skill, diligence, and prudence required by ERISA.

104.     Defendant Administrative Committee, as a fiduciary of the Plan, had a continuing duty to regularly monitor and independently assess before and during the Class Period whether the Plan's TDFs were prudent choices for the Plan and to remove imprudent investment options regardless of how long those investments had been in the Plan.

105.     During the Class Period, Defendant Administrative Committee breached their fiduciary duty of prudence to Plan participants, including Plaintiffs, by failing to engage in a prudent fiduciary process for monitoring the Plan's TDFs and by failing to remove imprudent TDFs investments within a reasonable period.

106. Defendant Administrative Committee was directly responsible for: evaluating and monitoring the Plan's investment options, including the American Century TDFs, in a prudent fashion; eliminating funds, such the American Century TDFs, that were no longer prudent investment options; and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

107. Defendant Administrative Committee failed to employ a prudent fiduciary process by failing to monitor evaluate the American Century TDFs for suitability given Plan demographics and in comparison to other meaningful benchmark TDFs.

108. Defendant Administrative Committee failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching their fiduciary duties of prudence under 29 U.S.C. § 1104(a)(1)(B).

109. As a result of Defendant Administrative Committee's breach of its fiduciary duty of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered tens of million dollars in unreasonable and unnecessary monetary losses.

110. Defendant Administrative Committee is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the fiduciary breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breach of fiduciary duty alleged in this Count. In addition, Defendant Administrative Committee is subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

### SECOND CLAIM FOR RELIEF
**Failure to Adequately Monitor Other Fiduciaries under ERISA,**
**(Plaintiffs, on behalf of themselves and Class,**
**Against Defendants Evergy, Campbell, and Bassham– Challenged TDFs)**

111. Plaintiffs restate the above allegations as if fully set forth herein.

112.    Defendants Evergy, Campbell, and Bassham had the authority to appoint and remove members or individuals responsible for Plan investment management on the Administrative Committee and were aware that these fiduciaries had critical responsibilities for the Plan.

113.    In light of this authority, Defendants Evergy, Campbell, and Bassham had a duty to monitor those individuals responsible for Plan investment management on the Administrative Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

114.    Defendants Evergy, Campbell, and Bassham had a duty to ensure that the individuals responsible for Plan investment management on the Administrative Committee possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to Defendants.

115.    Defendants Evergy, Campbell, and Bassham breached their duty to monitor individuals responsible for Plan investment management on the Administrative Committee, by, among other things:

- Failing to monitor and evaluate the performance of individuals responsible for Plan investment management on the Administrative Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses by maintaining the imprudent American Century TDFs for most of the Class Period;

- Failing to monitor the process by which Plan TDFs were evaluated, failing to investigate the suitability of the American Century TDFs based on Plan demographics and failing to investigate the availability of alternative, prudent TDFs; and

- Failing to remove individuals responsible for Plan investment management on the Administrative Committee whose performance was inadequate in that they continued to maintain the American Century TDFs, all to the detriment of the Plan and Plan participants' retirement savings.

116.     As a result of Defendants Evergy, Campbell, and Bassham's foregoing breaches of the duty to monitor, the Plaintiffs and Plan Participants suffered unreasonable and unnecessary monetary losses amounting to tens of millions of dollars.

117.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants Evergy, Campbell, and Bassham are liable to restore to the Plan all loses caused by their failure to adequately monitor individuals responsible for Plan investment management on the Administrative Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.     A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.     Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.     A Declaration the Defendants have breached their fiduciary duties of prudence and to monitor under ERISA;

D.     An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty, including restoring to the Plan all losses resulting from imprudent investment of the Plan's assets in the American Century TDFs, restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Plan participants would have made if the Defendants had fulfilled their fiduciary obligations by undertaking TDF suitability and comparative analyses on a timely basis;

E.     An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

F.     An award of pre-judgment interest;

G.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

H.      Such other and further relief as the Court deems equitable and just.


DATED: January 21, 2024                    Respectfully submitted,

                                           */s/ Michael F. Brady*_____
                                           Michael F. Brady (Bar No. 47521)
                                           **BRADY & ASSOCIATES**
                                           2118 W 120th Street
                                           Leawood, KS 66209
                                           Telephone: (913) 696-0925
                                           brady@mbradylaw.com

                                           Paul M. Secunda*
                                           * *Pro Hac Vice* Application forthcoming
                                           **WALCHESKE & LUZI, LLC**
                                           235 N. Executive Drive, Suite 240
                                           Brookfield, Wisconsin 53005
                                           Telephone: (414) 828-2372
                                           psecunda@walcheskeluzi.com

                                           James A. Bloom*
                                           Todd M. Schneider*
                                           **Pro Hac Vice* Application forthcoming
                                           **SCHNEIDER WALLACE**
                                           **COTTRELL KONECKY LLP**
                                           2000 Powell Street, Suite 1400
                                           Emeryville, CA 94608
                                           Telephone: (415) 421-7100
                                           jbloom@schneiderwallace.com

                                           Don Bivens*
                                           Teresita T. Mercado*
                                           *Pro Hac Vice Application forthcoming
                                           **DON BIVENS PLLC**
                                           15169 N. Scottsdale Road, Suite 205
                                           Scottsdale, Arizona 85254
                                           Telephone: (602) 762-2661
                                           don@donbivens.com
                                           teresita@donbivens.com


                                           *Attorneys for Plaintiffs and Proposed Class*