## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

DERICK L. DOLL, CATHERINE M. FLUEGEL, and JOSEPH NAGLE, individually and as representatives of a Class of Participants and Beneficiaries on behalf of the Evergy, Inc. 401(k) Savings Plan,

        Plaintiffs,

   v.

EVERGY, INC., DAVID A. CAMPBELL, TERRY BASSHAM, THE PLAN COMMITTEE OF THE EVERGY, INC. 401(k) SAVINGS PLAN; and SAGEVIEW ADVISORY GROUP LLC,

        Defendants.

Case No. 4:25-cv-00043 (SRB)

## SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

COMES NOW Plaintiffs, Derick L. Doll, Catherine M. Fluegel, and Joseph Nagle ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries on behalf of the Evergy, Inc. 401(k) Savings Plan, by and through their counsel, SCHNEIDER WALLACE COTTRELL KONECKY, LLP, WALCHESKE & LUZI, LLC, DON BIVENS, PLLC, CAPOZZI ADLER, P.C., FORTMANSPANN, LLC, and BRADY & ASSOCIATES, as and for a claim against Defendants, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.      Plaintiffs, individually and on behalf of the Class, allege Defendants Evergy, Inc. ("Evergy"), David A. Campbell, Terry Bassham, the Plan Committee of the Evergy, Inc. 401(k) Savings Plan ("Plan Committee"), and SageView Advisory Group LLC ("SageView") (collectively "Defendants"), breached their fiduciary duties of prudence under the Employee Retirement Income Security Act ("ERISA"), 29 U.SC. § 1132, regarding the Evergy, Inc. 401(k) Savings Plan (the "Plan" or "Evergy Plan").

2.      The Class is defined as: "All participants and beneficiaries of the Evergy, Inc. 401(k) Plan who invested in any of the American Century Target Date Funds (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period."

3.      Defendants breached their fiduciary duties to Plaintiffs and the Class when they:

(a)      uncritically relied on the Plan co-fiduciary and investment advisor and consultant, SageView, who unreasonably and imprudently favored American Century TDFs to be Plan investments and qualified default investment alternatives ("QDIAs") from the beginning of the Class Period until January 5, 2025;

(b)      failed to follow its investment policy statements ("IPSs") and Plan Committee practice which required Plan funds falling into the third quartile of peer rankings to immediately to be placed on a Watch List;

(c)      unreasonably provided a conservative equity allocation to young participants

1

who had a long-term investment horizon;

 (d) did not undertake any TDF or QDIA suitability analysis with regard to the American Century Funds from December 2018 until June 2024; and

 (e) waited almost two years from the time that a majority of the American Century TDFs were on the Watch List (March 2023) before replacing them on January 6, 2025.

4. These alleged breaches and imprudent investments resulted in the loss of tens of millions of dollars for Plaintiffs and the Class.

5. Plaintiffs are "participants" in a defined-contribution plan under ERISA Section 3(7), 29 U.S.C. § 1002(7): the Evergy Plan.

6. The Plan is a Section 401(k) "defined contribution" pension plan under 29 U.S.C. § 1002(34), meaning that the value of participants' investments is "determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l,* 575 U.S. 523, 525 (2015).

7. As a defined-contribution plan, the Plan allows participants to direct the investment of their contributions, but the investment options included in the Plan are selected by the Plan's fiduciaries.

8. Defendants are the Plan Sponsor, Plan Administrators, Investment Advisor, and fiduciaries of the Plan. Evergy assigned fiduciary management and Plan duties of the Plan to the Plan Committee to manage and administer the Plan and was co-fiduciary with SageView of the Plan through January 5, 2025, at which point SageView became the Section 3(38) investment management fiduciary for the Plan.

9. Under ERISA, plan fiduciaries must discharge their duty of prudence "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

10.     ERISA's fiduciary duties have been described as "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

11.     "In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble*, 575 U.S. at 528–29. The Supreme Court has stated that "a trustee has a continuing duty to monitor trust investments and remove imprudent ones ... separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.* at 529. "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2002) (citing *Tibble*, 575 U.S. at 529–30).

12.     Under this prudent person standard, courts must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *See Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983).

13.     ERISA's duty of prudence "includes a continuous duty to monitor and remove imprudent investments." *Snyder v. UnitedHealth Grp., Inc.*, No. 21-1049 (JRT/DJF), 2024 U.S. Dist. LEXIS 42952, at *18-19 (D. Minn. Mar. 12, 2024)*.

14.     ERISA's statutory duty of prudence establishes "an objective standard" that focuses on "the process by which" decisions are made, "rather than the results of those decisions." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020).

15.     Fiduciaries must not deviate from the "guidelines concerning the selection, evaluation, and monitoring of Plan investment options." *See Bracalente v. Cisco Sys., Inc.*, No. 22-CV-04417-EJD, 2024 WL 2274523, at *2 (N.D. Cal. May 20, 2024).

16.     A plaintiff may plead **either** adequate direct evidence of process failure allegations **or** inferential evidence involving "meaningful benchmarks" that establishes the imprudence of the investments. *See Rubke v. ServiceNow, Inc.*, Case No. 3:24-cv-01050-TLT, Dkt. 90, at 8 (N.D. Cal. Apr. 23, 2025) (citing *Bracalente v. Cisco Systems, Inc.*, No. 22-cv-4417, 2024 WL 2274523,

at *5 (N.D. Cal. May 20, 2024) ("Plaintiffs may state a breach of the duty of prudence **either** through direct allegations of the fiduciary's 'knowledge, methods, or investigations at the relevant times' **or** 'circumstantial factual allegations [from which the Court] may reasonably infer from what is alleged that the process was flawed.'") (emphasis added).

17. During the Class Period, Defendants breached the duty of prudence they owed to the Plan by failing to monitor the American Century TDFs and by not removing these TDFs at the beginning of the Class Period based on information available to the Plan Committee with regard to the suitability and prudence of the American Century TDFs.

18. These direct procedural defects include at least the five specific procedural defects discussed above with regard to the fiduciary process followed by the Plan Committee and SageView fiduciaries in maintaining the American Century TDFs as plan investments and as qualified default investment alternatives ("QDIA") through January 5, 2025.

19. In addition to being able to provide the necessary plausible allegations through direct evidence of procedural defects, plaintiffs can also indirectly show that "a prudent fiduciary in like circumstances" would have selected a different TDF suite of funds based on the cost or performance of the selected fund, through a sound basis for comparison — a meaningful benchmark, such as a market index, to show that a prudent fiduciary in like circumstances would have selected a different fund. *See Karg v. Transamerica Corp.*, No. 18-CV-134-CJW-KEM, 2019 U.S. Dist. LEXIS 140567, at *15-16 (N.D. Iowa Aug. 20, 2019).

20. ERISA plaintiffs claiming a breach of fiduciary duty through inferential reasoning have a challenging pleading burden because of their different levels of knowledge regarding what investment choices a plan fiduciary made as compared to how a plan fiduciary made those choices.

21. ERISA plaintiffs typically lack extensive information regarding the fiduciary's methods because those details tend to be in the sole possession of the fiduciary. As a result, the challenge then becomes for ERISA plaintiffs to use the data about the selected funds and some circumstantial allegations about methods to show that a prudent fiduciary in like circumstances would have acted differently. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).

4

22.     During the Class Period, Defendants breached the duty of prudence they owed to the Plan by failing to monitor and remove the American Century Target Date Funds ("TDFs") as investment options in the Plan based on those TDFs' underperformance compared to their own benchmark, as well as numerous comparable funds.

23.     The duty to monitor is also especially important here, where a high percentage of the Plan's assets were/are concentrated in the American Century Retirement Date Trust target date funds. In 2023, over one-third of the Plan's assets were invested in the American Century TDFs ($455,750,222 of the $1,332,946,113 Plan assets).

24.     In fact, the American Century TDFs held more of the Plan's assets than any other investment option in the Plan throughout the Class Period, by a significant margin. Since the beginning of the Class Period, the American Century TDFs have consistently held more than one-third (1/3) of the Plans' total assets. At year-end 2018, the American Century TDFs held in excess of 40% of the Plan's assets.

25.     The Plan has at all times during the Class Period maintained over $1.2 billion in assets. At the end of the Plan's fiscal year in 2023, the Plan had over $1.3 billion in assets under management that were/are entrusted to the care of the Plan's fiduciaries. The Plan's assets under management makes it a jumbo plan in the defined contribution plan marketplace, and among the largest plans in the United States.

26.     In 2021, only 0.2 percent (1,011 of 641,747) of Plans in the country had more than $1 billion in assets under management. In 2019, at the start of the Class Period, only 0.1 percent (776 of 603,217) of 401(k) plans in the country were as large as the Plan. The Plan's assets under management makes it among the largest plans in the United States.

27.     In addition, Defendants failed to monitor the American Century TDFs' significant turnover rate of 68% over the three years before the start of the class period and 72% since that time, both significantly higher than the industry average during the same period. A prudent fiduciary would have monitored the American Century TDFs' turnover, investigated the reasons

5

for the high turnover rate, and taken action to protect the Plan participants' retirement savings, including removing the American Century TDFs from the Plan.

28.     To remedy these fiduciary breaches, Plaintiffs bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) in a representative capacity to enforce Defendants' liability under 29 U.S.C. § 1109(a), and to make good to the Plan all losses resulting from these breaches. In addition, Plaintiffs seek to reform the Plan to comply with ERISA and to prevent further breaches of fiduciary duties and grant other equitable and remedial relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

30.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

31.     Venue is appropriate in this District within the meaning of 29 U.S.C. § 1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District.

## THE PARTIES AND THE PLAN

32.     The Evergy Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

33.     Plaintiff Derick L. Doll is a resident of the State of Missouri and currently resides in Kansas City, Missouri, and during the Class Period, was a participant in the Plan under 29 U.S.C. § 1002(7). Plaintiff Doll was employed by Evergy's predecessor KCPL starting in 2000

6

and was an Evergy employee until May 2024. During that time he held several positions, including Work Week Manager, Transition Team Manager, and Simulator Instructor.

34.　Plaintiff Doll held the following investments in the Plan, among others: American Century Retirement 2025 Trust Class XI, American Century Retirement 2030 Trust Class XI, American Century Retirement 2035 Trust Class XI, American Century Retirement 2040 Trust Class XI, American Century Retirement 2045 Trust Class XI, American Century Retirement 2050 Trust Class XI, American Century Retirement 2055 Trust Class XI.

35.　Plaintiff Catherine M. Fluegel (formerly Catherin Tilden) is a resident of the State of Missouri and currently resides in Montrose, Missouri, and during the Class Period, was a participant in the Plan under 29 U.S.C. § 1002(7). Plaintiff Fluegel was employed by Evergy from 2008 through December 2022, in the position of Lead Plant Chemist.

36.　Plaintiff Fluegel held the following investment in the Plan, among others: American Century Retirement 2030 Trust Class XI.

37.　Plaintiff, Joseph Nagle, resides in Wichita, Kansas. During his employment, Plaintiff Nagle participated and invested in the options offered by the Plan that are challenged in this lawsuit. Plaintiff Nagle specifically invested American Century Retirement 2055 Trust Class XI during the Class Period.

38.　Plaintiffs have Article III standing to bring this action on behalf of the Plan because they suffered actual injuries to their Plan accounts in which they held a number of the American Century TDFs during the Class Period, those injuries are fairly traceable to Defendants' unlawful conduct as fiduciaries of the Plan in maintaining the American Century TDFs in the Plan, and the harm is likely to be redressed by a favorable judgment.

39.　In all, Plaintiffs were invested in various American Century TDFs (American Century Retirement 2025 Trust Class XI, American Century Retirement 2030 Trust Class XI, American Century Retirement 2035 Trust Class XI, American Century Retirement 2040 Trust Class XI, American Century Retirement 2045 Trust Class XI, American Century Retirement 2050

Trust Class XI, and American Century Retirement 2055 Trust Class XI), during the Class Period, and thus, suffered an injury-in-fact to their individual retirement accounts in the Evergy Plan.

40.    Having established Article III standing, Plaintiffs may seek recovery under ERISA § 502(a)(2), *codified at* 29 U.S.C. § 1132(a)(2), on behalf of the Plan to obtain for relief for the Plan under ERISA § 409(a), *codified at* 29 U.S.C. § 1109(a), including relief that sweeps beyond their own injuries.

41.    The named Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, regarding the imprudence selection, and maintenance of, the Challenged Investments) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

42.    The named Plaintiffs and all participants in the Plan, having never managed a large 401(k) Plan such as the Plan, lacked actual knowledge of prudent Plan investments or the prudent alternative investments available to the Plan. Further, Plaintiffs did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' processes for maintaining and monitoring the Plan's investments) because this information is solely within the possession of Defendants prior to discovery. For purposes of this Amended Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth below.

43.    Evergy is an American publicly traded public utility company incorporated in 2017 in Missouri and headquartered in Kansas City, Missouri, with significant energy generation and distribution operations in Kansas and Missouri. Its principal headquarters are located at 1200 Main Street, Kansas City, Missouri 64105. In this Complaint, "Evergy" refers to the named Defendants and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

44.    Evergy is the Plan sponsor under 29 U.S.C. § 1002(16)(B).

45.     Evergy acted through its officers, including the Board Defendants, to perform Plan-related fiduciary functions in the course and scope of their business.

46.     David A. Campbell is the current Chief Executive Officer of Evergy, and has served in that capacity since January 4, 2021. Under the Plan, the Chief Executive Officer of Evergy is responsible for appointing the Plan's Plan Committee, and accordingly had a concomitant fiduciary duty to monitor and *supervise* those appointees. For these reasons, the Mr. Campbell, as Chief Executive Officer of Evergy, is a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

47.     Terry Bassham was the Chief Executive Officer of Evergy prior to the appointment of Mr. Campbell, and was also, in that capacity, a fiduciary of the Plan

48.     The Plan Committee of the Evergy, Inc. 401(k) Savings Plan ("Plan Committee"), is the Plan Administrator of the Plan.

49.     As the Plan Administrator, the Plan Committee is a fiduciary with day-to-day Plan and operating control of the Plan under 29 U.S.C. § 1002(21)(A). It has authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a).

50.     The Plan Committee is also a named fiduciary of the Plan, and has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

51.     SageView Advisory Group LLC is a plan investment consultant and advisor that has expertise in consulting on 401(k), 457(b) and 403(b) plans; defined benefit and cash balance plans; nonqualified deferred compensation (NQDC) plans; as well as endowments and foundations and ESOPs. Its principal headquarters are located at 4000 MacArthur Boulevard, Suite 1050, Newport Beach, CA 92660.

52.     According to the January 2013 Plan IPS, "[t]he Investment Consultant, SageView Advisory Group, is a *co-fiduciary* charged with the responsibility of advising the Committee on investment policy, advising on the selection of investment managers, providing performance

analysis and monitoring services, and educating the Committee on economic and investment trends that may impact the performance of the selected and available investment options. The Investment Consultant, along with the Committee, shall be responsible for the Plan level investment selection process, as set forth in this Investment Policy Statement." *See* Investment Policy Statement of the Great Plains Energy Incorporated 401(k) Savings Plan, at 3 (January 2010, revised as of January 1, 2013) ("January 2013 IPS").

53.     As a co-fiduciary of the Plan, SageView has also exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

## DIRECT EVIDENCE OF DEFENDANTS' IMPRUDENT FIDUCIARY PROCESS

54.     The Evergy Plan had two investment policy statements ("IPSs") during the Class Place.  The version that was in place at the beginning of the Class Period is dated January 2010 (revised as of January 1, 2013). *See* Investment Policy Statement of the Great Plains Energy Incorporated 401(k) Savings Plan (January 2010, revised as of January 1, 2013) ("January 2013 IPS").

55.     The Evergy January 2013 IPS establishes the policies and guidelines for the Evergy Plan and was intended to assist the Plan Committee in effectively selecting, monitoring, and evaluating investment alternatives made available to participants under the Plan. *Id.* at 2-3.

56.     The Evergy January 2013 IPS outlines and prescribes what would have been, if implemented, a prudent and acceptable investment philosophy, and sets out the investment management procedures. *Id.* at 6-8.

57.     When a Plan participant does not give instructions on how they want to invest their retirement money in the Evergy Plan, their retirement monies are placed into a qualified default investment alternative ("QDIA").

58.     The Plan Committee may elect to utilize a multi-asset class investment option, such as TDFs, as the QDIA.

59.    A target date fund is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches.

60.    All target date funds are inherently actively managed because managers make changes to the allocations to stocks, bonds, and cash over time. These allocation shifts are referred to as a fund's "glide path."

61.    The underlying mutual funds that target date fund managers choose to represent each asset class can be actively or passively managed, but all TDFs are actively managed even if the underlying funds which populate the asset classes are passive funds.

62.    There is no economically meaningful difference between "to-retirement" and "through-retirement" TDFs. In almost all instances, one type of TDF can be replicated using the other type through proper vintage selection. That is, a "to" can replicate a "through" and vice versa.

63.    For example, in the early years when investors have more time to bear short-term fluctuations in the stock market, each fund's asset allocation favors stocks to try to maximize returns. Then as the "target date" nears, money is gradually moved out of stocks and into more conservative investments, like bonds, to try to preserve the accumulated value of investors' accounts. Typically, there will be multiple TDFs for the different retirement targets of a given organization, such as the 2020 Fund, the 2030 Fund, and the 2040 Fund. Collectively these TDFs are sometimes referred to as a "series." TDFs are primarily designed for participants who want a dynamic but consistently conservative asset allocation that matches their retirement timeline, and are designed to be a "set it and forget it" investment option for participants who want their investments to be appropriately balanced and managed until they expect to retire.

64.    The American Century TDFs had been included as investment options in the Evergy Plan for many years prior to the beginning of the Class Period.

65.    The Plan Committee was responsible for crafting the Plan's investment lineup, as well as adding new funds and removing old funds, and could have chosen other target date fund

families than the American Century TDFs at or any time before or after the beginning of the Class Period.

66. During the Class Period, the QDIA for the Evergy Plan was the American Century TDFs from the beginning of the Class Period through January 5, 2025.

67. The specific target date portfolio for a participant who fails to make an investment election will be based on the participant's date of birth and an assumed normal retirement date of age 65.

68. As far as selection of investment options, the January 2013 IPS provides that the Plan investment consultant, SageView, will take a two-tier approach to fund selection. *Id.* at 5-8.

69. Quantitative factors include investment track record, investment risk, investment risk/return, investment style analysis, performance consistency, investment cost, and turnover ratio. *Id.* at 6-7.

70. Qualitative factors include investment-style variations, portfolio concentration, and asset size and growth. *Id.* at 8.

71. In addition to diversification and risk tolerance considerations, fund expenses will be considered in the selection of investment alternatives. *Id.*

72. The January 2013 IPS sets out the "evaluation methodology" for evaluating on an on-going basis Plan investment options using several measures that quantify the expenses, returns, and risk-adjusted performance of each fund within its peer group. *Id.* at 6-8.

73. "The [Plan] Committee, with the assistance of the Investment Consultant, [SageView,] will review the Plan's Investment Policy and *monitor each investment option* outlined in Appendix A on an ongoing basis, but *no less frequently than annually*. No less frequently than annually, the Committee *will evaluate the investment results of the investment options*." *Id.* at 8 (emphasis added). The American Century TDFs were investment options outlined in Appendix A of the January 2013 IPS. *Id.* at 11.

74. The following investment criteria are utilized: trailing one-, three-, five- and ten-year returns; rolling 12-month returns (five years); rolling 36-month returns (ten years), Sharpe

Ratio (five years); Alpha (five years); Up Capture Ratio (five years); Down Capture Ratio (five years); Style Consistency to the appropriate index (R-Squared); and Expense Ratio. *Id.* at 6-7.

75. Each Plan investment option is benchmarked to a specific market index, and fund performance is evaluated and compared to a relevant peer group using Morningstar category classifications. A fund is given a peer group ranking in each criterion, shown as a percentage. *Id.* at 7.

76. The benchmark for Target Date investment option category was the S&P Target Date Indexes. *Id.* at 14.

77. The rankings for all criteria are then weighted and averaged to a give a fund its average ranking score. An overall SageView score is used to indicate where a fund places in relation to the score of the other funds in its category. SageView generally divides the funds in a category into deciles or quartiles. *Id.*

78. While monitoring investment performance, the Plan Committee is required to maintain a "Watch List" for investment options that are not meeting certain investment objectives. *Id.* at 8.

79. Based on Plan Committee practice, the Plan Committee determined that whenever an investment option fell into the 3rd quartile based on SageView's scoring system, they would place that investment on the Watch List.

80. Based on Plan Committee practice, the Watch List investment option would be monitored and remain on the Watch List for four consecutive quarters, even if its performance improved. If the option remained in the 3rd quartile for four consecutive quarters, a detailed review of the option was made and a recommendation to replace or retain the option would be presented to the Committee.

81. Final selection, replacement and/or removal of an investment option would be completed only after conducting a thorough review of the identified investment option.

82. No such reviews of the American Century TDF investment option occurred between December 2018 and June 2024.

83. There is no indication in the January 2013 IPS that individual vintages of the American Century TDFs (e.g., American Century TDF 2040) could not be placed on the Watch List separately from other American Century TDF vintages.

84. The January 2013 IPS was not replaced until September 2022, almost ten years later, even though there were substantial and important developments with regard to the types of plan investments in which plans, like the Evergy Plan, were invested.

85. The January 2013 IPS and September 2022 IPS are materially identical in all relevant respects, except that the September 2022 adds upfront a "Note" that states the "[t]he provisions of this Investment Policy Statement are guidelines only. The fiduciaries are not required to follow them. Instead, in all cases, fiduciaries are expected to exercise discretion and independent judgment when it considers this to be prudent and in the best interest of participants and beneficiaries of the Plan," September 2022 IPS at 3, where the January 2013 IPS had a similar statement towards the end of the IPS. January 2013 IPS at 8.

86. That being said, Evergy makes clear in many other Plan documents that it seeks to align directly its investment review of the Plan investments with the IPS are do TDF review in conjunction with the IPS.

87. Moreover, in every Evergy Quarterly Plan Investment Review, SageView undertakes an "IPS Historical Ranking" and/or an "Historical IPS Rankings For Alternatives" based on the SageView scoring system, whose methodology in set out in both the 2013 and 2022 IPS.

88. In its June 12, 2019 Plan Committee Minutes, the Plan Committee explains about the Plan Watch List: "All nine of the One Choice Target Date Funds passed their IPS scoring criteria, with the series receiving an average Sage View ranking at the 25th percentile. The series has been removed from qualitative watch." Evergy Plan Committee Minutes (June 12, 2019) (emphasis added).

89. These Minutes suggest, and the other evidence, make clear that the Plan Committee and SageView did, in fact, did follow the IPSs assiduously.

90.     There was at least one important difference between the two IPSs. Only starting with the September 2022 IPS, did other investment evaluation criteria start coming into play when the Plan Committee and SageView reviewed multi-asset class investments, like TDFs. *See Investment Policy Statement of the Evergy, Inc. 401(k) Savings Plan* (September 2022), at 6 ("September 2022 IPS).

91.     With regard to TDFs, the September 2022 IPS, states that "[f]or multi-asset class investment alternatives, such as target-date funds, the asset allocation and glide path should be evaluated taking into account factors such as generally accepted investment theories and prevailing investment industry practices, and goals of the plan, the philosophy of the fiduciaries regarding asset class diversification and the desired relationship of risk (or volatility) and potential return, and the needs and abilities of the participants and beneficiaries. *The Committee, subject to any further delegation to an investment consultant or investment manager, expects to engage in a process to identify and consider those goals, preferences, needs and abilities and to select a default investment consistent with that analysis*." *Id.* (emphasis added).

92.     From December 2018 to June 2024, neither the Plan Committee nor Sageview *"engage[d[ in a process to identify and consider [TDF] goals, preferences, needs and abilities and to select a default investment consistent with that analysis."*

93.     As a result of numerous defects in their fiduciary process, the Plan Committee only yet removed the American Century TDFs from the Plan on January 5, 2025, years later than they should have.

94.     The American Century TDFs consistently, materially, and dramatically underperformed their own benchmarks, the S&P Target Date Index, during the three-year, five-year, and ten-year period before the beginning of the Class Period in 2018.

95.     The American Century TDFs continued to underperform their own benchmarks in the IPSs.

96.     The American Century TDFs also underperformed all of the major TDFs available in the marketplace, both substantially before and throughout the Class period.

97.     Any prudent fiduciary would have reviewed the American Century TDFs' performance history, both relative to its benchmark and relative to other comparable TDF investment options in the marketplace as part of a prudent fiduciary process.

98.     A prudent fiduciary who reviewed that performance and turnover information— all of which was available to Defendants at the beginning of the Class Period—would have taken action to monitor and remove the American Century TDFs from the Plan as a result of their dramatic and sustained underperformance.

99.     Defendants' failure to monitor or remove the American Century TDFs as investment options for the Plans despite the long-term underperformance and high turnover of the American Century TDFs suggests that Defendants' fiduciary process was imprudent.

100.    Plan Committee minutes also suggest that SageView, co-fiduciary of the Evergy Plan, unreasonable favored retention of the American Century TDFS, even when prudent fiduciaries in similar circumstances would have advised their removal from the Plan.

101.    Defendants' failures were compounded by their decision to select the American Century TDFs, despite their underperformance and high turnover, as the QDIA for Plan participants' retirement savings and for company matching contributions in the absence of an affirmative election for a different investment option.

102.    No reasonably prudent fiduciary would have allowed so much of the Plan participants' retirement savings be diverted into manifestly imprudent investment options as the American Century TDFs.

103.    Despite the underperformance and high turnover rates of the American Century TDFs, Defendants nevertheless selected the TDFs as the default investment option for Plan participants' retirement savings and for company matching contributions. Thus, unless participants affirmatively directed otherwise, Defendants automatically directed participants' savings into the American Century TDFs as the Plan QDIA.

104.    As a result, the American Century TDFs held more of the Plan's assets than any other investment option in the Plan throughout the Class Period, by a significant margin. Since

the beginning of the Class Period, the American Century TDFs have consistently held more than one-third (1/3) of the Plans' total assets, and at the beginning of the Class Period, the American Century TDFs held in excess of 40% of the Plan's assets:

| Year Ending | Evergy Plan Assets in American Century TDFs | Total Evergy Plan Assets | Percentage of Evergy Plan Asset in American Century TDFs |
|---|---|---|---|
| 12/31/2019 | $ 584,753,920 | $ 1,353,285,042 | 43.2% |
| 12/31/2020 | $ 550,483,179 | $ 1,435,366,990 | 38.4% |
| 12/31/2021 | $ 569,927,380 | $ 1,539,730,672 | 37.0% |
| 12/31/2022 | $ 463,727,025 | $ 1,247,728,854 | 37.2% |
| 12/31/2023 | $ 491,529,199 | $ 1,332,946,113 | 36.9% |

105. As a jumbo plan with hundreds of missions of dollars to invest in a target date fund, the Plan would have been able to choose virtually any available target date funds for the Plan by the start of the Class Period.

106. As relevant here, American Century Target Date Series were the only target date investing option in the Plan through January 5, 2025, when they were finally replaced by the Black Rock TDFs. In other words, for most of the Class Period, participants in the Plan who wanted to invest in a target date strategy have no choice other than the American Century TDFs.

107. SageView provided the Plan Committee with all the necessary information to do the required IPS analysis through quarterly Plan Investment Reviews throughout the Class Period.

108. These Plan investment reviews by SageView provided information from December 2018 through June 2024 that illustrated that American Century TDFs had many red flags with regard to its suitability for its Plan population and demographics, its design and structure, and its performance based on numerous quantitative factors outlined in the 2013 and 2022 IPSs.

109.    Nevertheless, both SageView and the Plan Committee ignored these issues and did not conduct any TDF suitability analyses or comparative TDF analyses from December 2018 until June 2024, or for over five and half years. Even then, it took almost another two years, until January 6, 2025, for the American Century TDFs to be replaced by the Black Rock TDFs.

110.    If a proper TDF suitability analysis and a comparative TDF analysis had been completed in early 2019 as it should have been based on the January 2013 IPS, the American Century TDFs could have been replaced by any number of many meaningful benchmark TDFs, including the Vanguard TDFs, T. Rowe Price TDFs, or the Black Rock TDFs (which was actually selected and became the Plan TDF on January 6, 2025).

111.    All of these comparator TDFs above were selected as "meaningful benchmarks" by SageView because these comparators have "similar aims, risks, and potential rewards" as the American Century TDFs.  *See Nelson v. F. Hoffman-La Roche, Inc.*, No. 21-cv-10074-TLT, 2022 WL 19765995, at *1 (N.D. Cal. Nov. 2, 2022).

112.    Although each of these comparators had different TDF glide paths, different percentage of various asset classes, different retirement strategies, and various amounts of passive and active underlying funds, SageView considered them to be "meaningful benchmarks" because SageView still believed they had "similar aims, risks, and potential rewards" as the American Century TDFs to be considered as replacements for the American Century TDFs.

113.    Indeed, the Black Rock TDFs which replaced the American Century TDFs, albeit on an untimely basis, became the Plan QDIA just like the American Century TDFs.

114.    Even though by as early as September 2021, SageView reported that at least one of the American Century Target Date funds had not passed IPS scoring criteria, that vintage of the American Century Date fund was not placed on the Watch List.

115.    Again and again, between September 2021 and June 2024, when American Century Target Date funds had not passed IPS scoring criteria, they were also not placed on the Watch List like that should have been.

116.     Indeed, one of the American Century Target Date Funds (American Century 2065 TDF) fell into the Fourth Quartile in December 2023, which required an immediate analysis of whether it should be removed under the September 2022 IPS, and this was not done by the Plan Committee or recommended by SageView.

117.     It was not until May 31, 2024, that SageView reluctantly recommended to the Plan Committee to a deeper dive into whether to keep the American Century Funds as the Plan's QDIA and TDF series.

118.     Remarkably, and even though starting in September 2021 the American Century TDFs failed IPS scoring criteria according to SageView, in September 2023, when only four out of nine of the American Century Target date funds passe IPS scoring criteria," SageView simply "attributed the drop in rankings to the drop off of good years in the 3-and 5-year scoring," and took no further action.

119.     Yet, a mere eight months later, according to the May 31, 2024 Plan Committee Minutes, SageView pointed that now only "[t]wo out of nine of the American Century Target Date Funds passed their IPS scoring criteria, with the series receiving an average SageView ranking at the 58th percentile. Mr. Gratton [from SageView] then briefly reviewed potential share class adjustments that could be implemented in the future." Critically, SageView did not recommend any replacements for the American Century TDF funds.

120.     Instead, and reluctantly, SageView "recommended that the Committee do a deeper dive into alternative target date options by soliciting and reviewing proposals from other providers at a future meeting."

121.     At the August 13, 2024 Plan Committee Meeting, the Plan Committee heard presentations from Vanguard, Black Rock, and T. Rowe Price about their target date funds.

122.     At a Plan Committee meeting on September 11, 2024, the Plan Committee heard presentations from the American Century about their target date funda in the Plan.

123.     After the American Century Fund presentation on September 11, 2024, the Plan Committee had a discussion about the presentations and concluded that, "that American Century

has demonstrated underperformance over a five-year period and its glidepath exposes participants to more risk in retirement. Thus, they believed it was in participants' best interests to select a new TDF provider."

124. This same analysis could have been completed at any other time in the Class Period and the same conclusion should have been reached. The Plan Committee came to this conclusion five to six years too late.

125. The Plan Committee also concluded on September 11, 2024, that "[b]ased upon the three candidates who made presentations to the Committee in August, T. Rowe Price appeared to be the most aggressive and Vanguard offered only a passively managed TDF option. They agreed that BlackRock appears to have the right balance of risk and stability for the Plan population."

126. At the same meeting, SageView maintained "that if Sage View was retained as an ERISA 3(38) investment manager for the TDF funds in lieu of its current ERISA 3(21) co-fiduciary status, the T. Rowe Price investment fees would decrease from 19 basis points to 14 basis points and the BlackRock investment fees would decrease from 28 basis points to 21 basis points."

127. The change would also garner SageView more money "by approximately $75,000 if they accepted ERISA 3(38) responsibility just for the Target Date Funds, or approximately $140,000 if they accepted ERISA 3(38) responsibility for all of the Plan's investments."

128. The Committee, after discussion, voted to engage Sage View as an ERISA 3(38) investment manager for the TDFs and select the BlackRock series of TDFs as the Plan's new investment default and TDF option.

129. These actions in September 2024 make SageView and Plan Committee's previous findings as recently as March 13, 2024 to keep the American Century Funds lack any credibility or legitimacy with regard to the reasonableness of the American Century TDF being a Plan investment or QDIA, and establishes that the Plan Committee was not paying sufficient attention to TDF investment issues.

130.     There is no reasonable or prudent reason why the Plan Committee waited so long to replace the American Century Funds, to the point where only 2 of 10 American Century Funds passed the SageView scoring criteria by May 31, 2024.

131.     A prudent plan fiduciary would have replaced these American Century TDFs substantially earlier, especially since according to both the January 2013 and September 2022 IPSs that "[n]o less frequently than annually, the Committee will evaluate the investment results of the investment options.

132.     For TDFs, according the September 2022 IPS, this means that "the asset allocation and glide path should be evaluated taking into account factors such as generally accepted investment theories and prevailing investment industry practices, and goals of the plan, the philosophy of the fiduciaries regarding asset class diversification and the desired relationship of risk (or volatility) and potential return, and the needs and abilities of the participants and beneficiaries. The Committee . . . expects to engage in a process to identify and consider those goals, preferences, needs and abilities and to select a default investment consistent with that analysis." September 2022 IPS at 8. This was not done.

133.     It appears also that SageView was consistently manipulating its IPS scoring criteria in its quarterly Plan Investment Reviews to the Plan Committee from as early as its Plan Investment review of December 31, 2018 to May 31, 2024, to make sure during this same period of time (from 2021 to 2023) that many of the vintages of the American Century Fund were just barely staying in the Second Quartile (i.e., 46% to 50%), so they would not have to be placed on the Watch List under the Plan IPSs.

134.     Had SageView used an appropriate scoring methodology for the American Century Funds, there would not have been red flags for the Plan Committee that they needed to replace the American Century TDFs at the beginning of the Class Period.

135.     The Evergy Plan offered the XI version of the American Century TDFs from at least January 2019 through January 2025.

136.    The Plan Committee was responsible for crafting the Plan lineup and could have chosen other target date families than the American Century TDFs at the beginning of the Class Period in January 2019.

137.    The Plan Committee was responsible for following the evaluation criteria and methodology set out in the both the January 2013 and September 2022 Plan IPSs, but failed to do so.

138.    In other words, the Plan Committee deviated from the "guidelines concerning the selection, evaluation, and monitoring of Plan investment options" in the January 2013 and September 2022 Plan IPSs. *See Bracalente*, 2024 WL 2274523, at * 2.

139.    As a result, numerous defects in their fiduciary process, the Plan Committee did not remove the American Century TDFs from the Plan until January 6, 2025, almost six years later than they should have had if the Plan Committee had followed their Plan IPS.

140.    The Plan Committee engaged in at least five major Plan fiduciary process errors during the Class Period that deviated from "guidelines concerning the selection, evaluation, and monitoring of Plan investment options" in the January 2013 and September 2022 Plan IPSs:

a.    uncritically relied on the Plan co-fiduciary and investment advisor and consultant, SageView, who unreasonably and imprudently favored American Century TDFs to be Plan investments and qualified default investment alternatives ("QDIAs") from the beginning of the Class Period until January 5, 2025;

b.    failed to follow its investment policy statements ("IPSs") and Plan Committee practice which required Plan funds falling into the third quartile of peer rankings to immediately to be placed on a Watch List;

c.    unreasonably provided a conservative equity allocation to young participants who had a long-term investment horizon;

d.    did not undertake any TDF or QDIA suitability analysis with regard to the American Century Funds from December 2018 until June 2024; and

e.    waited almost two years from the time that a majority of the American Century TDFs were on the Watch List (March 2023) before replacing them on January 6, 2025.

141.    Through at least these five major fiduciary process defects, which amount to objectively unreasonable and imprudent conduct, Defendants breached their fiduciary duties of prudence by retaining and not removing the American Century TDFs from January 2019 until January 2025.

142.    Prudent alternative TDF options existed for the American Century TDFs – "meaningful benchmarks" identified by the Plan investment consultant, SageView, that were more suitable in terms of asset class coverage, glide paths, performance and category ranking, Sharpe Ratios, risk v. return, net expense ratio, fund structure, underlying funds, and glidepath changes, all criterion outlined in the Plan's January 2013 and September 2022 Plan IPSs.

143.    These "meaningful benchmark" TDFs identified by SageView included Vanguard TDFs, T. Rowe Price TDFs, and Black Rock TDFs, among others.

144.    Each prudent alternative investment option was available to replace the American Century TDFs at the beginning of the Class Period, if the Plan Committee had prudently followed the IPS methodology for target date funds.

145.    Instead, the Plan Committee and SageView did not complete the necessary analysis until September 2024.

146.    During the Class Period, Plaintiffs had no knowledge of Defendants' process for selecting TDFs and for regularly monitoring them to ensure they remained prudent.

147.    During the Class Period, Plaintiffs had no knowledge of how the performance of the TDFs compared to readily available prudent alternative investments and whether the American Century TDFs remained suitable given Plan demographics and other Plan features.

148.    During the Class Period, Plaintiffs did not know about the availability of comparable investment options that Defendants failed to reasonably offer at the beginning of the

Class Period in January 2019, because Defendants provided no suitability or comparative TDF information to allow Plaintiffs to evaluate and compare Defendants' potential TDF options.

149.     Defendants were imprudent starting in January 2019 in retaining the American Century TDFs, and should have known from the information presented by SageView about the American Century TDFs' lack of suitability for the Plan demographics, its imprudent structure and plan design, and its poor, historical investment performance adjusted for risk.

150.     During the Class Period and because Defendants imprudently did not choose prudent, alternative TDFs at the beginning of the Class Period, Defendants caused unreasonable and unnecessary losses to Plaintiffs and Plan participants invested in the American Century TDFs in the tens of millions of dollars.

## CIRCUMSTANTIAL EVIDENCE OF IMPRUDENT FIDUCIARY PROCESS

151.     In addition to all this and other direct evidence of procedural defects, there is voluminous circumstantial factual allegations from which it may be reasonably inferred that the fiduciary process followed by Defendants was seriously flawed.

152.     For instances, with respect to investment returns, as discussed above, diligent investment professionals monitor the performance of their selected target date funds using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

153.     A meaningful benchmark simply provides a sound basis for comparison. See *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). When making an investment-by-investment challenge, "there is no one-size-fits-all approach" in choosing a meaningful benchmark. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020).

154.     Additionally, no "circuit court … has held that a market index can never serve as a meaningful benchmark." *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, at 2018 (6th Cir. 2024). In fact, the Eighth Circuit in *Braden v. Walmart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) "expressly held that market indices are appropriate meaningful points of comparison for passive funds." *Johnson*, 122 F.4th at 218.

155.    The American Century TDFs underperformed their own benchmark, the S&P Target Date index, before and during the Class Period.

156.    For the three-year period ending on December 31, 2018, the American Century TDFs underperformed their S&P Benchmark:[1]

| American Century TDF | 2018 AmCent TDF 3 Year Return | 2018 S&P Benchmark 3 Year Return | 2018 3 Year AmCent Underperformance |
|---|---|---|---|
| American Century 2025 XI | 4.60% | 5.46% | 0.87% |
| American Century 2030 XI | 4.82% | 5.77% | 0.94% |
| American Century 2035 XI | 5.08% | 6.09% | 1.00% |
| American Century 2040 XI | 5.45% | 6.32% | 0.87% |
| American Century 2045 XI | 5.79% | 6.51% | 0.71% |
| American Century 2050 XI | 6.00% | 6.68% | 0.68% |
| American Century 2055 XI | 6.14% | 6.82% | 0.68% |
| American Century 2060 XI | 6.14% | 6.95% | 0.81% |

157.    The same pattern of underperformance for the American Century TDFs continued after January 1, 2019:

| American Century TDF | AmCent Performance Since 1/1/2019 | S&P Benchmark Performance Since 1/1/2019 | AmCent Underperformance Since 1/1/2019 |
|---|---|---|---|
| American Century 2025 XI | 7.40% | 7.79% | 0.39% |
| American Century 2030 XI | 7.97% | 8.87% | 0.90% |
| American Century 2035 XI | 8.58% | 9.98% | 1.40% |
| American Century 2040 XI | 9.20% | 10.87% | 1.67% |
| American Century 2045 XI | 9.93% | 11.40% | 1.47% |
| American Century 2050 XI | 10.67% | 11.69% | 1.02% |
| American Century 2055 XI | 11.08% | 11.76% | 0.67% |
| American Century 2060 XI | 11.36% | 11.81% | 0.45% |

---

[1] The performance data presented herein is adjusted to eliminate discrepancies based on fees. Data for years prior to the launch of the XI share class comes from different classes of the same fund, but is adjusted upwards to account for the lower fees in the XI class.

158.    Moreover, the underperformance of the American Century TDFs has become more severe since 2021:

| American Century TDF | AmCent Performance Since 1/1/2021 | S&P Benchmark Performance Since 1/1/2021 | AmCent Underperformance Since 1/1/2021 |
|---|---|---|---|
| American Century 2025 XI | 3.75% | 4.33% | 0.57% |
| American Century 2030 XI | 3.94% | 5.30% | 1.35% |
| American Century 2035 XI | 4.24% | 6.30% | 2.06% |
| American Century 2040 XI | 4.54% | 7.20% | 2.67% |
| American Century 2045 XI | 4.95% | 7.75% | 2.80% |
| American Century 2050 XI | 5.46% | 8.06% | 2.60% |
| American Century 2055 XI | 5.85% | 8.12% | 2.27% |
| American Century 2060 XI | 6.06% | 8.12% | 2.06% |
| American Century 2065 XI | 6.13% | 8.26% | 2.13% |

159.    In 2018, the largest TDF families in the marketplace (the "Large TDF Comparator Funds") are listed, with assets under management, in the following table:

| TDF Fund Family | Dec 2018 AUM |
|---|---|
| Vanguard Target Retirement Series | $ 396,175,296,240 |
| Fidelity Freedom Series | $ 84,729,035,081 |
| Capital American Target Date Retirement Series | $ 78,086,788,111 |
| T. Rowe Price Retirement Series | $ 30,368,625,484 |
| JPM SmartRetirement Series | $ 29,672,047,144 |
| Nuveen Lifecycle Series | $ 21,886,508,996 |
| BlackRock LifePath Index | $ 17,267,116,854 |
| Principal LifeTime Series | $ 13,487,459,129 |
| Nuveen Lifecycle Index Series | $ 12,184,480,741 |
| American Century One Choice Series | $ 7,084,048,834 |
| Fidelity Advisor Freedom Series | $ 5,526,751,117 |
| JPMorgan SmartRetirement Blend Series | $ 5,057,908,188 |

160.    In addition to underperforming their benchmarks, the American Century TDFs have also underperformed compared to the Large TDF Comparator Funds during the three-year period ending December 31, 2018, and since 2019 and 2021:

| Three-Year Performance Before 12/31/2018 |
|---|

| American Century TDF | AmCent Fund Perform. | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
|---|---|---|---|---|---|---|---|---|---|
| American Century 2025 XI | 4.60% | 5.21% | 6.12% | 5.73% | 4.97% | 5.76% | 5.03% | 6.19% | 5.73% |
| American Century 2030 XI | 4.82% | 5.64% | 6.92% | 6.40% | 5.38% | 6.22% | 5.09% | 6.53% | 6.07% |
| American Century 2035 XI | 5.08% | 6.07% | 7.44% | 6.67% | 5.45% | 6.69% | 5.33% | 6.69% | 6.41% |
| American Century 2040 XI | 5.45% | 6.41% | 7.61% | 6.53% | 5.71% | 7.11% | 5.44% | 6.88% | 6.74% |
| American Century 2045 XI | 5.79% | 6.63% | 7.78% | 6.52% | 5.67% | 7.23% | 5.52% | 6.89% | 6.79% |
| American Century 2050 XI | 6.00% | 6.66% | 7.82% | 6.56% | 5.64% | 7.35% | 5.60% | 6.89% | 6.77% |
| American Century 2055 XI | 6.14% | 6.68% | 7.81% | 6.53% | 5.65% | 7.45% | 5.64% | 6.87% | 6.77% |
| American Century 2060 XI | 6.14% | | 7.81% | 6.50% | | 7.53% | 5.59% | 6.80% | 6.77% |

| Performance Since 1/1/2019 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| American Century TDF | AmCent Fund Perform. | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
| American Century 2025 XI | 7.40% | 6.96% | 8.33% | 7.91% | 7.30% | 8.26% | 8.14% | 8.93% | 8.03% |
| American Century 2030 XI | 7.97% | 8.32% | 9.44% | 8.95% | 8.48% | 9.16% | 8.98% | 9.82% | 8.92% |
| American Century 2035 XI | 8.58% | 9.59% | 11.01% | 10.57% | 10.03% | 10.14% | 9.80% | 10.71% | 9.78% |
| American Century 2040 XI | 9.20% | 10.75% | 11.97% | 11.80% | 11.02% | 11.20% | 10.62% | 11.48% | 10.64% |

| American Century TDF | AmCent Fund Perform. | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
|---|---|---|---|---|---|---|---|---|---|
| American Century 2045 XI | 9.93% | 11.74% | 12.19% | 12.02% | 11.71% | 12.02% | 11.23% | 12.02% | 11.46% |
| American Century 2050 XI | 10.67% | 12.30% | 12.25% | 12.01% | 11.81% | 12.26% | 11.70% | 12.10% | 11.73% |
| American Century 2055 XI | 11.08% | 12.46% | 12.23% | 12.01% | 11.82% | 12.41% | 11.87% | 12.11% | 11.71% |
| American Century 2060 XI | 11.36% | 12.46% | 12.20% | 12.02% | 11.81% | 12.55% | 12.00% | 12.12% | 11.72% |
| American Century 2065 XI | 7.40% | 6.96% | 8.33% | 7.91% | 7.30% | 8.26% | 8.14% | 8.93% | 8.03% |

| Performance Since 1/1/2021 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| American Century TDF | AmCent Fund Perform. | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
| American Century 2025 XI | 3.75% | 2.69% | 4.64% | 3.45% | 3.38% | 4.08% | 3.77% | 4.55% | 3.89% |
| American Century 2030 XI | 3.94% | 4.06% | 5.42% | 4.20% | 4.44% | 4.81% | 4.33% | 5.20% | 4.68% |
| American Century 2035 XI | 4.24% | 5.29% | 6.40% | 5.62% | 5.87% | 5.67% | 5.04% | 5.95% | 5.46% |
| American Century 2040 XI | 4.54% | 6.47% | 7.27% | 6.95% | 6.78% | 6.73% | 5.85% | 6.61% | 6.24% |
| American Century 2045 XI | 4.95% | 7.51% | 7.42% | 7.27% | 7.50% | 7.44% | 6.47% | 7.10% | 7.00% |
| American Century 2050 XI | 5.46% | 8.13% | 7.39% | 7.26% | 7.66% | 7.70% | 6.90% | 7.22% | 7.36% |
| American Century 2055 XI | 5.85% | 8.34% | 7.35% | 7.25% | 7.67% | 7.85% | 7.04% | 7.24% | 7.36% |
| American Century 2060 XI | 6.06% | 8.33% | 7.30% | 7.26% | 7.68% | 7.97% | 7.14% | 7.24% | 7.37% |
| American Century 2065 XI | 6.13% | 8.36% | 7.34% | 7.28% | | 8.16% | 7.13% | 7.49% | 7.39% |

161.    All of the Large TDF Comparator Funds had similar structure, objectives, strategy, and risk profile to the American Century TDFs, and all were designed to provide essentially the

same type of investment experience to plan participants: a long-term investment strategy based on holding a mix of stocks, bonds and other investments (this mix is called an asset allocation) that automatically changes over time as the participant ages.

162.    The Large TDF Comparator Funds were available to the Defendants to include as investment options for the Plan, and thousands of other ERISA plan fiduciaries selected these Large TDF Comparator Funds for their plans as well.

163.    Any reasonably prudent fiduciary determining which target date funds to offer the Plan's participants was or should have been aware of the Large TDF Comparator Funds, and should have compared the performance of the American Century TDFs to the performance of these comparator TDFs.

164.    All of these target date fund families were, like the American Century TDFs, included in the "Target Date" Morningstar category.

165.    Morningstar, the most well respected and accepted financial industry fund database has created the Morningstar Lifetime Moderate Index category as the index category for target date funds.

166.    A Morningstar Category is assigned by placing funds into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years. Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al.*, No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in Allegretti similarly deals with the Morningstar Lifetime Moderate Index category. *Id.*

167.    Specifically, Morningstar Categories group funds "into categories according to their actual investment style, not merely their stated investment objectives, nor their ability to generate a certain level of income. To ensure homogeneous groupings, Morningstar normally allocates funds to categories on the basis of their portfolio holdings. Several portfolios are taken

into account to ensure that the fund´s real investment stance is taken into account." *See* https://lt.morningstar.com/1c6qh1t6k9/glossary/default.aspx?LanguageId=en-GB&group=M

168. Morningstar categories are more reliable than simply comparing fund prospectuses, because Morningstar is a third party providing neutral information. Indeed, "Morningstar categories help investors and investment professionals make meaningful comparisons between funds." *See* https://sg.morningstar.com/sg/news/115635/morningstar-category-definition.aspx

169. Morningstar is particularly meaningful here because the American Century target date funds use Morningstar data to provide publicly available information. *See* https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/.

170. For example, American Century's own dissemination of information explains that the Morningstar ratings for the 2045 vintage were only one star for the overall returns (out of 180 funds), three-year returns, five-year returns, and 10-year returns. *Id.*

171. Additionally, the measurement of target date funds against prudently managed alternatives is critical given that these alternatives represent other target date funds available to the plan, which may be a more appropriate choice to meet participants' retirement needs. 85. There was no shortage of prudent choices. Beginning in 1994, the market for target date funds exploded with numerous investment managers offering a variety of different target date funds (both mutual funds and CITs alike).

172. By 2010, multiple investment firms and banks offered target date funds with established and consistent performance histories, stable and experienced management, and discrete changes to the underlying assets and allocations.

173. Established target date investment managers include, but are not limited to, American Funds, Callan GlidePath® Funds, MoA Clear Passage Funds, Natixis Funds, Nuveen Lifecycle Funds, T. Rowe Price Retirement Funds, and Voya Target Retirement Funds. T. Rowe has offered target date funds for more than 20 years while American offered target date funds for approximately 15 years, providing stable investment returns to 401(k) plan participants. The T.

30

Rowe Price Retirement Target Date A Series, the American Funds Target Date R6 Series, the Callan GlidePath® Target Date R6 Series, the MoA Clear Passage Target Date Series, the Natixis Target Date N Series, the Nuveen Lifecycle Target Date R6 Series and Voya Target Date CIT Series will all be referred to as the "Morningstar Comparator Funds."

174.    The Morningstar Comparator Funds are grouped in the same Morningstar Category as the American Century Target Date Series.

175.    A closer look at the American Century Target Date Series and Morningstar Comparator Funds further demonstrate they had similar underlying investments and strategies.

176.    The American Century Target Date Series and each of the Morningstar Comparator Funds are Large Cap Blend series, meaning their underlying holdings are a combination of active and passive investments.

177.    The American Century Target Date Series and all of the Morningstar Comparator Funds have a "through" glidepath.[2]

178.    While one or two years of underperformance or outperformance might not cause a prudent fiduciary to question investment options, the American Century TDFs have been consistently underperforming for almost ten years, as they consistently failed to meet their own benchmark and numerous other TDF families had better performance over almost ten years.

179.    The 2045 vintage is just one good demonstration of the American Century Target Date Series and the Morningstar Comparator Funds' asset allocations because the target date is neither too close nor too distant. The asset allocation is sufficiently similar across all funds, where

---

[2]    *See*    https://res.americancentury.com/docs/a-auth/one-choice-target-date-portfolios-plan-sponsor-brochure?cpg=true                ;                https://capitalgroup.prospectus-express.com/summary.asp?doctype=pros&cid=capgroup&fid=02630T365                ; https://doc.morningstar.com/LatestDoc.aspx?clientid=greatgray&key=1cd9aa63b2372cae&documenttype=124&sourceid=260&secid=FOUSA06U3N    ;    https://moafunds.com/funds/target-date/clear-passage-2045    and    https://moafunds.com/documents/fs/MoA-Clear-Passage-2045-Factsheet.pdf    ;    https://www.im.natixis.com/en-us/products/mutual-funds/natixis-target-retirement-funds#key    ;    https://www.nuveen.com/en-us/mutual-funds/nuveen-lifecycle-2045-fund?shareclass=I                ;                https://prospectus-express.broadridge.com/summary.asp?doctype=pros&clientid=trowepll&fundid=74149P481    ; https://individuals.voya.com/product/mutual-fund/profile/voya-target-retirement-2045-fund

U.S. Equities are the largest percentage of holdings, non-U.S. equities range from 20.07-29.57% of holdings, and the remaining holding are Fixed Income (or bonds), Cash investments, and less than one percent of "other" and "not classified" investments:[3]

| | U.S. Equity | Non-U.S. Equity | Fixed Income | Other | Cash | Not Classified |
|---|---|---|---|---|---|---|
| **American Century 2045 TDFs**[4] | 45.64% | 21.19% | 31.19% | 0.04% | 1.7% | 0.24% |
| **Natixis Target Retirement 2045**[5] | 54.6% | 26.67% | 14.11% | 0.25% | 4.33% | N/A |
| **Nuveen Lifecycle 2045**[6] | 55.71% | 29.17% | 13.43% | 0.02% | 1.65% | N/A |
| **American Funds 2045**[7] | 59.24% | 25.84% | 10.05% | 0.4% | 4.34% | 0.14% |
| **MoA Clear Passage 2045**[8] | 62.32% | 20.07% | 13.34% | 0.16% | 4.11% | N/A |
| **Voya Target Retirement 2045**[9] | 60.18% | 29.57% | 10.98% | 0.04% | -0.78% | 0.01 |
| **T. Rowe Price Retirement 2045**[10] | 65.6% | 28.66% | 2.6% | 0.61% | 2.51% | 0.02 |

180.  A prudent fiduciary should have used some or all of these benchmarks, or substantially similar benchmarks (as discussed below), to evaluate the performance of the

---

[3] Similar categorial information for the 2045 Callan GP series was not found, however the asset allocation is as follows: Bank Loan 0.51%, High Yield 0.51%, Real Asset 8.31%, Dom Lg Cap Stks 47.10%, Dom Sm/Mid Cap Stks 10.58%, Developed Non-U.S. 26.92%, Dev Non-U.S. Passive 2.01%. *See*https://doc.morningstar.com/LatestDoc.aspx?clientid=greatgray&key=1cd9aa63b2372cae&documenttype=124&sourceid=260&secid=FOUSA06U3N

[4] *See* https://www.morningstar.com/funds/xnas/aroix/portfolio

[5] *See* https://www.morningstar.com/funds/xnas/nsfjx/portfolio

[6] *See* https://www.morningstar.com/funds/xnas/tlxix/portfolio

[7] *See* https://www.morningstar.com/funds/xnas/aahtx/portfolio

[8] *See* https://www.morningstar.com/funds/xnas/murmx/portfolio

[9] *See* https://www.morningstar.com/funds/xnas/irspx/portfolio

[10] *See* https://www.morningstar.com/funds/xnas/trrkx/portfolio

American Century Target Date Series as early as the inception of the Class Period, or sooner, and on an ongoing basis thereafter.

181. The information in the charts below is based on the total return, meaning that the fees paid for the fund's maintenance and management are not factored into their performance. However, when taking into account total returns below, the Morningstar Comparator Funds were the most cost-effective.

182. In the chart below, the American Century TDFs (highlighted in yellow), consistently underperformed compared to the Morningstar Comparator Funds (in red text) in their Morningstar Categories and their Morningstar benchmarks (in bold) on a 3-year average basis at the start of the Class Period and continued to underperform throughout the Class Period. In fact, the chart below demonstrates that, in 2019, the 2030-2060 vintages of the American Century TDFs underperformed against the Morningstar Comparator Funds' corresponding vintages 36 out of 41 instances (88%). In 2021, the same vintages underperformed against the Morningstar Comparator Funds' corresponding vintages in all 49 instances (100%). In 2023 and 2024, the 2030-2065 vintages of the American Century TDFs underperformed against the Morningstar Comparator Funds' corresponding vintages in all 55 instances (100%), and in all 56 instances (100%), respectively. In total and since 2017, the American Century TDFs underperformed the Morningstar Comparator Funds on a 3-year lookback period in 196 out of 201 instances, or *98%* of the time.

| Investment and Benchmark | Three-Year Return (Annualized) | | | |
|---|---|---|---|---|
| | 1/1/2017 - 12/31/2019 | 1/1/2019 - 12/31/2021 | 1/1/2021 - 12/31/2023 | 1/1/2022 - 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 8.64 | 14.30 | 2.29 | 1.68 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 10.86 | 16.09 | 3.47 | 2.77 |
| Callan GlidePath® 2030 Fund CL R6 | 10.56 | 17.62 | 4.85 | 3.11 |
| MoA Clear Passage 2030 Fund | 9.77 | 16.22 | 4.49 | 3.23 |
| Natixis Target Retirement 2030 N | N/A | 16.31 | 3.19 | 2.43 |

33

| | | | | |
|---|---|---|---|---|
| Nuveen Lifecycle 2030 R6 | 10.34 | 15.61 | 2.64 | 2.31 |
| T. Rowe Price Retirement 2030 Tr-A | 11.26 | 17.34 | 3.23 | 2.45 |
| Voya Target Retirement 2030 Tr Comps CIT | 10.12 | 16.46 | 2.82 | 1.98 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2030 TR USD** | **10.01** | **15.47** | **1.27** | **0.40** |
| | | | | |
| American Century Retirement 2035 Trust Class XI | 9.25 | 15.42 | 2.49 | 1.82 |
| | | | | |
| American Funds 2035 Trgt Date Retire R6 | 12.28 | 18.75 | 4.20 | 3.35 |
| Callan GlidePath® 2035 Fund CL R6 | 10.95 | 18.60 | 5.23 | 3.50 |
| MoA Clear Passage 2035 Fund | 10.28 | 17.94 | 5.42 | 3.98 |
| Natixis Target Retirement 2035 N | N/A | 17.82 | 3.95 | 2.90 |
| Nuveen Lifecycle 2035 R6 | 11.07 | 17.00 | 3.29 | 2.88 |
| T. Rowe Price Retirement 2035 Tr-A | 11.87 | 18.68 | 3.86 | 2.99 |
| Voya Target Retirement 2035 Tr Comps CIT | 10.89 | 18.10 | 3.83 | 2.85 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **10.76** | **16.60** | **2.38** | **1.34** |
| | | | | |
| American Century Retirement 2040 Trust Class XI | 9.94 | 16.54 | 2.63 | 2.01 |
| | | | | |
| American Funds 2040 Trgt Date Retire R6 | 12.76 | 19.96 | 4.75 | 4.14 |
| Callan GlidePath® 2040 Fund CL R6 | 11.22 | 19.37 | 5.61 | 4.02 |
| MoA Clear Passage 2040 Fund | 10.32 | 19.10 | 6.45 | 4.78 |
| Natixis Target Retirement 2040 N | N/A | 18.70 | 4.48 | 3.48 |
| Nuveen Lifecycle 2040 R6 | 11.72 | 18.36 | 4.09 | 3.61 |
| T. Rowe Price Retirement 2040 Tr-A | 12.36 | 19.80 | 4.35 | 3.47 |
| Voya Target Retirement 2040 Tr Comps CIT | 11.30 | 19.70 | 4.75 | 3.54 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **11.24** | **17.50** | **3.51** | **2.40** |
| | | | | |

34

| | | | | |
|---|---|---|---|---|
| American Century Retirement 2045 Trust Class XI | 10.62 | 17.75 | 2.90 | 2.28 |
| | | | | |
| American Funds 2045 Trgt Date Retire R6 | 12.96 | 20.32 | 4.83 | 4.23 |
| Callan GlidePath® 2045 Fund CL R6 | 11.33 | 19.77 | 5.68 | 4.26 |
| MoA Clear Passage 2045 Fund | 10.34 | 19.38 | 6.78 | 5.08 |
| Natixis Target Retirement 2045 N | N/A | 19.67 | 4.97 | 3.87 |
| Nuveen Lifecycle 2045 R6 | 12.05 | 19.63 | 4.63 | 3.98 |
| T. Rowe Price Retirement 2045 Tr-A | 12.59 | 20.49 | 4.80 | 3.90 |
| Voya Target Retirement 2045 Tr Comps CIT | 11.52 | 20.65 | 5.40 | 4.15 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **11.42** | **17.99** | **4.25** | **3.19** |
| | | | | |
| American Century Retirement 2050 Trust Class XI | 11.15 | 18.95 | 3.28 | 2.62 |
| | | | | |
| American Funds 2050 Trgt Date Retire R6 | 13.11 | 20.53 | 4.75 | 4.20 |
| Callan GlidePath® 2050 Fund CL R6 | 11.33 | 19.79 | 5.75 | 4.47 |
| MoA Clear Passage 2050 Fund | 10.26 | 19.53 | 6.92 | 5.29 |
| Natixis Target Retirement 2050 N | N/A | 19.80 | 4.94 | 3.87 |
| Nuveen Lifecycle 2050 R6 | 12.18 | 19.96 | 4.81 | 4.14 |
| T. Rowe Price Retirement 2050 Tr-A | 12.58 | 20.53 | 4.88 | 4.03 |
| Voya Target Retirement 2050 Tr Comps CIT | 11.58 | 20.72 | 5.33 | 4.25 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **11.43** | **18.09** | **4.52** | **3.54** |
| | | | | |
| American Century Retirement 2055 Trust Class XI | 11.34 | 19.43 | 3.56 | 2.98 |
| | | | | |
| American Funds 2055 Trgt Date Retire R6 | 13.11 | 20.54 | 4.56 | 4.15 |
| Callan GlidePath® 2055 Fund CL R6 | 11.30 | 19.84 | 5.76 | 4.46 |
| MoA Clear Passage 2055 Fund | 10.17 | 19.73 | 6.97 | 5.34 |
| Natixis Target Retirement 2055 N | N/A | 19.68 | 5.05 | 4.05 |
| Nuveen Lifecycle 2055 R6 | 12.27 | 20.10 | 4.89 | 4.23 |

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Retirement 2055 Tr-A | 12.60 | 20.53 | 4.87 | 4.04 |
| Voya Target Retirement 2055 Tr Comps CIT | 11.68 | 20.84 | 5.42 | 4.36 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **11.41** | **18.05** | **4.50** | **3.54** |
| | | | | |
| American Century Retirement 2060 Trust Class XI | 11.50 | 19.86 | 3.71 | 3.12 |
| | | | | |
| American Funds 2060 Trgt Date Retire R6 | 13.05 | 20.51 | 4.62 | 4.14 |
| Callan GlidePath® 2060 Fund CL R6 | 11.37 | 19.89 | 5.76 | 4.48 |
| MoA Clear Passage 2060 Fund | N/A | 19.99 | 7.19 | 5.44 |
| Natixis Target Retirement 2060 N | N/A | 20.22 | 5.32 | 4.15 |
| Nuveen Lifecycle 2060 R6 | 12.34 | 20.34 | 4.97 | 4.29 |
| T. Rowe Price Retirement 2060 Tr-A | 12.56 | 20.55 | 4.88 | 4.02 |
| Voya Target Retirement 2060 Tr Comps CIT | 11.62 | 21.04 | 5.45 | 4.30 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **11.37** | **17.95** | **4.41** | **3.45** |
| | | | | |
| American Century Retirement 2065 Trust Class XI | N/A | N/A | 3.72 | 3.21 |
| | | | | |
| American Funds 2065 Trgt Date Retire R6 | N/A | N/A | 4.65 | 4.14 |
| Callan GlidePath® 2065 Fund CL R6 | N/A | N/A | 5.77 | 4.48 |
| MoA Clear Passage 2065 Fund | N/A | N/A | 7.40 | 5.70 |
| Natixis Target Retirement 2065 N | N/A | N/A | N/A | 4.21 |
| Nuveen Lifecycle 2065 R6 | N/A | N/A | 5.15 | 4.42 |
| T. Rowe Price Retirement 2065 Tr-A | N/A | N/A | 5.16 | 4.03 |
| Voya Target Retirement 2065 Tr Comps CIT | N/A | N/A | 5.42 | 4.37 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2065 TR USD** | **N/A** | **N/A** | **4.31** | **3.35** |

183. Further, the charts above demonstrate that the American Century TDFs underperformed their Morningstar benchmarks on a 3-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period. More specifically, 2030-2065 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 3-year average basis in every instance in 2019, four out of seven instances in 2021, and six out of eight instances in 2023 and 2024.

184. As seen in the chart below, the Challenged Funds (in yellow) underperformed compared to the peers (in red text) in their Morningstar Categories and their Morningstar benchmarks on a 5-year average basis before the start of the Class Period and continued to underperform throughout the Class Period.

185. Specifically, the chart below demonstrates that, in 2019, the 2030-2060 vintages of the American Century TDFs underperformed against the Morningstar Comparator Funds' corresponding vintages 35 out of 35 instances (100%).

186. In 2021, the same vintages underperformed against the Morningstar Comparator Funds' corresponding vintages in 39 out of 41 instances (95%).

187. In 2023 and 2024, the same vintages underperformed against the Morningstar Comparator Funds' corresponding vintages in all 49 instances (100%). In total, and since 2015, the American Century TDFs underperformed the Morningstar Comparator Funds on a 5-year lookback period in 172 out of 174 instances, or *99%* of the time.

| Investment and Benchmark | Five-Year Return (Annualized) | | | |
| --- | --- | --- | --- | --- |
| | 1/1/2015 – 12/31/2019 | 1/1/2017 – 12/31/2021 | 1/1/2019 – 12/31/2023 | 1/1/2020 – 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 6.27 | 10.00 | 7.61 | 5.72 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 8.07 | 12.16 | 8.90 | 7.18 |
| Callan GlidePath® 2030 Fund CL R6 | 8.05 | 12.51 | 9.92 | 7.90 |
| MoA Clear Passage 2030 Fund | 7.88 | 11.23 | 9.21 | 7.21 |
| Natixis Target Retirement 2030 N | N/A | N/A | 8.92 | 6.92 |

| | | | |
|---|---|---|---|
| Nuveen Lifecycle 2030 R6 | 7.67 | 11.35 | 8.48 | 6.41 |
| T. Rowe Price Retirement 2030 Tr-A | 8.25 | 12.64 | 9.39 | 7.21 |
| Voya Target Retirement 2030 Tr Comps CIT | 7.47 | 11.74 | 8.61 | 6.71 |
| **Benchmark: Morningstar Lifetime Mod 2030 TR USD** | **7.28** | **11.07** | **7.44** | **5.15** |
| American Century Retirement 2035 Trust Class XI | 6.69 | 10.76 | 8.22 | 6.17 |
| American Funds 2035 Trgt Date Retire R6 | 8.99 | 13.97 | 10.39 | 8.43 |
| Callan GlidePath® 2035 Fund CL R6 | 8.25 | 13.09 | 10.51 | 8.48 |
| MoA Clear Passage 2035 Fund | 8.28 | 12.22 | 10.28 | 8.33 |
| Natixis Target Retirement 2035 N | N/A | N/A | 9.83 | 7.67 |
| Nuveen Lifecycle 2035 R6 | 8.11 | 12.27 | 9.38 | 7.22 |
| T. Rowe Price Retirement 2035 Tr-A | 8.64 | 13.55 | 10.24 | 8.05 |
| Voya Target Retirement 2035 Tr Comps CIT | 7.91 | 12.86 | 9.77 | 7.87 |
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **7.82** | **11.85** | **8.41** | **6.04** |
| American Century Retirement 2040 Trust Class XI | 7.14 | 11.57 | 8.80 | 6.67 |
| American Funds 2040 Trgt Date Retire R6 | 9.30 | 14.75 | 11.17 | 9.40 |
| Callan GlidePath® 2040 Fund CL R6 | 8.35 | 13.55 | 11.02 | 9.08 |
| MoA Clear Passage 2040 Fund | 8.29 | 12.79 | 11.19 | 9.36 |
| Natixis Target Retirement 2040 N | N/A | N/A | 10.48 | 8.40 |
| Nuveen Lifecycle 2040 R6 | 8.51 | 13.17 | 10.34 | 8.17 |
| T. Rowe Price Retirement 2040 Tr-A | 8.93 | 14.31 | 10.93 | 8.80 |
| Voya Target Retirement 2040 Tr Comps CIT | 8.21 | 13.77 | 10.83 | 8.94 |
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **8.15** | **12.42** | **9.3** | **6.98** |
| American Century Retirement 2045 Trust Class XI | 7.59 | 12.42 | 9.48 | 7.25 |

| | | | | |
|---|---|---|---|---|
| American Funds 2045 Trgt Date Retire R6 | 9.45 | 15.02 | 11.35 | 9.60 |
| Callan GlidePath® 2045 Fund CL R6 | 8.41 | 13.73 | 11.26 | 9.34 |
| MoA Clear Passage 2045 Fund | 8.30 | 12.91 | 11.43 | 9.65 |
| Natixis Target Retirement 2045 N | N/A | N/A | 11.11 | 8.93 |
| Nuveen Lifecycle 2045 R6 | 8.76 | 13.85 | 11.08 | 8.86 |
| T. Rowe Price Retirement 2045 Tr-A | 9.08 | 14.73 | 11.43 | 9.33 |
| Voya Target Retirement 2045 Tr Comps CIT | 8.35 | 14.25 | 11.54 | 9.65 |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **8.26** | **12.70** | **9.84** | **7.63** |
| American Century Retirement 2050 Trust Class XI | 7.93 | 13.18 | 10.18 | 7.89 |
| American Funds 2050 Trgt Date Retire R6 | 9.55 | 15.17 | 11.41 | 9.64 |
| Callan GlidePath® 2050 Fund CL R6 | 8.43 | 13.74 | 11.31 | 9.48 |
| MoA Clear Passage 2050 Fund | 8.26 | 12.93 | 11.55 | 9.85 |
| Natixis Target Retirement 2050 N | N/A | N/A | 11.13 | 9.06 |
| Nuveen Lifecycle 2050 R6 | 8.86 | 14.06 | 11.28 | 9.09 |
| T. Rowe Price Retirement 2050 Tr-A | 9.07 | 14.73 | 11.48 | 9.42 |
| Voya Target Retirement 2050 Tr Comps CIT | 8.39 | 14.24 | 11.54 | 9.67 |
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **8.24** | **12.75** | **10.03** | **7.88** |
| American Century Retirement 2055 Trust Class XI | 8.07 | 13.48 | 10.52 | 8.29 |
| American Funds 2055 Trgt Date Retire R6 | 9.54 | 15.17 | 11.35 | 9.60 |
| Callan GlidePath® 2055 Fund CL R6 | 8.39 | 13.75 | 11.34 | 9.50 |
| MoA Clear Passage 2055 Fund | N/A | 13.03 | 11.65 | 10.03 |
| Natixis Target Retirement 2055 N | N/A | N/A | 11.13 | 9.00 |
| Nuveen Lifecycle 2055 R6 | 8.93 | 14.17 | 11.37 | 9.19 |
| T. Rowe Price Retirement 2055 Tr-A | 9.08 | 14.75 | 11.47 | 9.43 |
| Voya Target Retirement 2055 Tr Comps CIT | 8.44 | 14.36 | 11.65 | 9.81 |

| | | | | |
|---|---|---|---|---|
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **8.19** | **12.71** | **10.01** | **7.86** |

| | | | | |
|---|---|---|---|---|
| American Century Retirement 2060 Trust Class XI | N/A | 13.73 | 10.78 | 8.52 |
| | | | | |
| American Funds 2060 Trgt Date Retire R6 | N/A | 15.13 | 11.32 | 9.59 |
| Callan GlidePath® 2060 Fund CL R6 | 8.46 | 13.80 | 11.37 | 9.53 |
| MoA Clear Passage 2060 Fund | N/A | N/A | 11.84 | 10.21 |
| Natixis Target Retirement 2060 N | N/A | N/A | 11.51 | 9.31 |
| Nuveen Lifecycle 2060 R6 | 9.01 | 14.29 | 11.53 | 9.31 |
| T. Rowe Price Retirement 2060 Tr-A | 9.11 | 14.73 | 11.47 | 9.42 |
| Voya Target Retirement 2060 Tr Comps CIT | N/A | 14.46 | 11.72 | 9.89 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **8.13** | **12.65** | **9.94** | **7.77** |

188.   The chart above also demonstrates that the American Century TDFs underperformed their Morningstar benchmarks on a 5-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period. More specifically, 2030-2060 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 5-year average basis in every instance in 2019, four out of seven instances in 2021, three out of seven instances in 2023, and three out of seven instances in 2024.

189.   To make matters worse, the American Century Target Date Series continuously ranked poorly as compared to its peers in its Morningstar Category on a 3-year average basis since before and throughout the Class Period.

| | Peer Group Percentile Rank | | | |
|---|---|---|---|---|
| **Group/Investment** | **1/1/2017 – 12/31/2019** | **1/1/2019 – 12/31/2021** | **1/1/2021 – 12/31/2023** | **1/1/2022 – 12/31/2024** |
| American Century Retirement 2030 Trust Class XI | 91 | 89 | 76 | 75 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 6 | 34 | 5 | 10 |

| | | | |
|---|---|---|---|
| Callan GlidePath® 2030 Fund CL R6 | 16 | 5 | 9 | 20 |
| MoA Clear Passage 2030 Fund | 48 | 29 | 1 | 5 |
| Natixis Target Retirement 2030 N | N/A | 23 | 13 | 20 |
| Nuveen Lifecycle 2030 R6 | 20 | 46 | 35 | 24 |
| T. Rowe Price Retirement 2030 Tr-A | 4 | 13 | 39 | 42 |
| Voya Target Retirement 2030 Tr Comps CIT | 30 | 24 | 51 | 66 |
| | | | | |
| American Century Retirement 2035 Trust Class XI | 86 | 87 | 90 | 87 |
| | | | | |
| American Funds 2035 Trgt Date Retire R6 | 1 | 3 | 7 | 11 |
| Callan GlidePath® 2035 Fund CL R6 | 25 | 11 | 3 | 19 |
| MoA Clear Passage 2035 Fund | 61 | 27 | 1 | 7 |
| Natixis Target Retirement 2035 N | N/A | 33 | 14 | 23 |
| Nuveen Lifecycle 2035 R6 | 21 | 50 | 50 | 24 |
| T. Rowe Price Retirement 2035 Tr-A | 9 | 11 | 43 | 45 |
| Voya Target Retirement 2035 Tr Comps CIT | 30 | 19 | 45 | 51 |
| | | | | |
| American Century Retirement 2040 Trust Class XI | 89 | 94 | 95 | 91 |
| | | | | |
| American Funds 2040 Trgt Date Retire R6 | 1 | 5 | 12 | 8 |
| Callan GlidePath® 2040 Fund CL R6 | 37 | 17 | 10 | 24 |
| MoA Clear Passage 2040 Fund | 81 | 25 | 1 | 7 |
| Natixis Target Retirement 2040 N | N/A | 37 | 26 | 33 |
| Nuveen Lifecycle 2040 R6 | 18 | 44 | 51 | 24 |
| T. Rowe Price Retirement 2040 Tr-A | 6 | 9 | 51 | 51 |
| Voya Target Retirement 2040 Tr Comps CIT | 31 | 12 | 36 | 47 |
| | | | | |
| American Century Retirement 2045 Trust Class XI | 85 | 87 | 96 | 92 |
| | | | | |
| American Funds 2045 Trgt Date Retire R6 | 1 | 7 | 33 | 16 |
| Callan GlidePath® 2045 Fund CL R6 | 47 | 26 | 9 | 27 |
| MoA Clear Passage 2045 Fund | 91 | 45 | 3 | 9 |

| | | | | |
|---|---|---|---|---|
| Natixis Target Retirement 2045 N | N/A | 26 | 24 | 37 |
| Nuveen Lifecycle 2045 R6 | 17 | 28 | 49 | 32 |
| T. Rowe Price Retirement 2045 Tr-A | 7 | 12 | 60 | 58 |
| Voya Target Retirement 2045 Tr Comps CIT | 38 | 6 | 20 | 38 |
| | | | | |
| American Century Retirement 2050 Trust Class XI | 66 | 67 | 93 | 91 |
| | | | | |
| American Funds 2050 Trgt Date Retire R6 | 1 | 1 | 50 | 30 |
| Callan GlidePath® 2050 Fund CL R6 | 52 | 43 | 19 | 31 |
| MoA Clear Passage 2050 Fund | 92 | 50 | 3 | 9 |
| Natixis Target Retirement 2050 N | N/A | 33 | 38 | 52 |
| Nuveen Lifecycle 2050 R6 | 14 | 26 | 45 | 33 |
| T. Rowe Price Retirement 2050 Tr-A | 7 | 12 | 63 | 62 |
| Voya Target Retirement 2050 Tr Comps CIT | 35 | 4 | 36 | 52 |
| | | | | |
| American Century Retirement 2055 Trust Class XI | 60 | 58 | 92 | 89 |
| | | | | |
| American Funds 2055 Trgt Date Retire R6 | 1 | 1 | 57 | 38 |
| Callan GlidePath® 2055 Fund CL R6 | 65 | 43 | 12 | 37 |
| MoA Clear Passage 2055 Fund | 96 | 46 | 3 | 10 |
| Natixis Target Retirement 2055 N | N/A | 51 | 34 | 44 |
| Nuveen Lifecycle 2055 R6 | 13 | 24 | 42 | 35 |
| T. Rowe Price Retirement 2055 Tr-A | 6 | 11 | 67 | 69 |
| Voya Target Retirement 2055 Tr Comps CIT | 43 | 4 | 42 | 50 |
| | | | | |
| American Century Retirement 2060 Trust Class XI | 57 | 46 | 91 | 85 |
| | | | | |
| American Funds 2060 Trgt Date Retire R6 | 1 | 6 | 62 | 41 |
| Callan GlidePath® 2060 Fund CL R6 | 68 | 45 | 21 | 33 |
| MoA Clear Passage 2060 Fund | N/A | 45 | 4 | 10 |
| Natixis Target Retirement 2060 N | N/A | 24 | 32 | 40 |
| Nuveen Lifecycle 2060 R6 | 12 | 12 | 39 | 29 |

42

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Retirement 2060 Tr-A | 10 | 20 | 62 | 65 |
| Voya Target Retirement 2060 Tr Comps CIT | 43 | 8 | 36 | 48 |
| | | | | |
| American Century Retirement 2065 Trust Class XI | N/A | N/A | 82 | 86 |
| | | | | |
| American Funds 2065 Trgt Date Retire R6 | N/A | N/A | 63 | 45 |
| Callan GlidePath® 2065 Fund CL R6 | N/A | N/A | 16 | 40 |
| MoA Clear Passage 2065 Fund | N/A | N/A | 9 | 11 |
| Natixis Target Retirement 2065 N | N/A | N/A | N/A | 43 |
| Nuveen Lifecycle 2065 R6 | N/A | N/A | 36 | 28 |
| T. Rowe Price Retirement 2065 Tr-A | N/A | N/A | 41 | 65 |
| Voya Target Retirement 2065 Tr Comps CIT | N/A | N/A | 29 | 50 |

190. The American Century Target Date Series also continuously ranked poorly as compared to its peers in its Morningstar Category on a 5-year average basis since before and throughout the Class Period.

| | Peer Group Percentile Rank | | | |
|---|---|---|---|---|
| Group/Investment | 1/1/2015 - 12/31/2019 | 1/1/2017 - 12/31/2021 | 1/1/2019 - 12/31/2023 | 1/1/2020 - 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 88 | 91 | 85 | 78 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 2 | 3 | 10 | 1 |
| Callan GlidePath® 2030 Fund CL R6 | 11 | 11 | 6 | 6 |
| MoA Clear Passage 2030 Fund | 13 | 42 | 5 | 1 |
| Natixis Target Retirement 2030 N | N/A | N/A | 10 | 6 |
| Nuveen Lifecycle 2030 R6 | 20 | 33 | 31 | 27 |
| T. Rowe Price Retirement 2030 Tr-A | 7 | 6 | 12 | 12 |
| Voya Target Retirement 2030 Tr Comps CIT | 27 | 22 | 30 | 28 |
| | | | | |
| American Century Retirement 2035 Trust Class XI | 86 | 90 | 87 | 86 |
| | | | | |

| | | | | |
|---|---|---|---|---|
| American Funds 2035 Trgt Date Retire R6 | 1 | 1 | 1 | 2 |
| Callan GlidePath® 2035 Fund CL R6 | 22 | 16 | 6 | 7 |
| MoA Clear Passage 2035 Fund | 18 | 38 | 7 | 5 |
| Natixis Target Retirement 2035 N | N/A | N/A | 19 | 17 |
| Nuveen Lifecycle 2035 R6 | 21 | 35 | 38 | 35 |
| T. Rowe Price Retirement 2035 Tr-A | 14 | 6 | 12 | 18 |
| Voya Target Retirement 2035 Tr Comps CIT | 29 | 22 | 24 | 23 |
| | | | | |
| American Century Retirement 2040 Trust Class XI | 93 | 90 | 95 | 92 |
| | | | | |
| American Funds 2040 Trgt Date Retire R6 | 1 | 1 | 7 | 2 |
| Callan GlidePath® 2040 Fund CL R6 | 19 | 20 | 13 | 10 |
| MoA Clear Passage 2040 Fund | 30 | 48 | 6 | 4 |
| Natixis Target Retirement 2040 N | N/A | N/A | 24 | 25 |
| Nuveen Lifecycle 2040 R6 | 18 | 28 | 28 | 36 |
| T. Rowe Price Retirement 2040 Tr-A | 7 | 6 | 14 | 16 |
| Voya Target Retirement 2040 Tr Comps CIT | 25 | 16 | 16 | 14 |
| | | | | |
| American Century Retirement 2045 Trust Class XI | 86 | 86 | 85 | 88 |
| | | | | |
| American Funds 2045 Trgt Date Retire R6 | 1 | 1 | 8 | 8 |
| Callan GlidePath® 2045 Fund CL R6 | 28 | 25 | 23 | 17 |
| MoA Clear Passage 2045 Fund | 38 | 71 | 4 | 7 |
| Natixis Target Retirement 2045 N | N/A | N/A | 21 | 28 |
| Nuveen Lifecycle 2045 R6 | 12 | 18 | 22 | 29 |
| T. Rowe Price Retirement 2045 Tr-A | 7 | 5 | 11 | 18 |
| Voya Target Retirement 2045 Tr Comps CIT | 33 | 13 | 8 | 6 |
| | | | | |
| American Century Retirement 2050 Trust Class XI | 71 | 64 | 89 | 92 |
| | | | | |
| American Funds 2050 Trgt Date Retire R6 | 1 | 1 | 6 | 8 |

| | | | | |
|---|---|---|---|---|
| Callan GlidePath® 2050 Fund CL R6 | 31 | 39 | 39 | 21 |
| MoA Clear Passage 2050 Fund | 47 | 73 | 3 | 7 |
| Natixis Target Retirement 2050 N | N/A | N/A | 26 | 34 |
| Nuveen Lifecycle 2050 R6 | 10 | 16 | 15 | 29 |
| T. Rowe Price Retirement 2050 Tr-A | 6 | 6 | 21 | 27 |
| Voya Target Retirement 2050 Tr Comps CIT | 42 | 13 | 17 | 14 |
| | | | | |
| American Century Retirement 2055 Trust Class XI | 81 | 56 | 82 | 89 |
| | | | | |
| American Funds 2055 Trgt Date Retire R6 | 1 | 1 | 15 | 11 |
| Callan GlidePath® 2055 Fund CL R6 | 52 | 44 | 39 | 32 |
| MoA Clear Passage 2055 Fund | N/A | 75 | 4 | 8 |
| Natixis Target Retirement 2055 N | N/A | N/A | 32 | 44 |
| Nuveen Lifecycle 2055 R6 | 8 | 15 | 15 | 30 |
| T. Rowe Price Retirement 2055 Tr-A | 7 | 5 | 27 | 36 |
| Voya Target Retirement 2055 Tr Comps CIT | 48 | 10 | 9 | 10 |
| | | | | |
| American Century Retirement 2060 Trust Class XI | N/A | 51 | 64 | 75 |
| | | | | |
| American Funds 2060 Trgt Date Retire R6 | N/A | 1 | 27 | 15 |
| Callan GlidePath® 2060 Fund CL R6 | 58 | 44 | 40 | 31 |
| MoA Clear Passage 2060 Fund | N/A | N/A | 3 | 9 |
| Natixis Target Retirement 2060 N | N/A | N/A | 12 | 28 |
| Nuveen Lifecycle 2060 R6 | 8 | 12 | 9 | 29 |
| T. Rowe Price Retirement 2060 Tr-A | 10 | 9 | 33 | 34 |
| Voya Target Retirement 2060 Tr Comps CIT | N/A | 15 | 16 | 9 |

191. The chart below shows that starting in 2019, the 2030-2065 vintages of the American Century TDFs underperformed against each of the Morningstar Comparator Funds' corresponding vintages on a one-year cumulative return basis in 211 out of 216 instances, or *98%* of the time, and underperformed the Morningstar benchmarks in 28 out of 31 instances.

| Investment and Benchmark | One Year Return (Cumulative) | | | |
|---|---|---|---|---|
| | 1/1/2019 - 12/31/2019 | 1/1/2021 - 12/31/2021 | 1/1/2023 - 12/31/2023 | 1/1/2024 - 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 18.88 | 10.75 | 12.65 | 8.76 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 20.06 | 13.16 | 14.52 | 10.86 |
| Callan GlidePath® 2030 Fund CL R6 | 21.96 | 16.88 | 14.41 | 11.19 |
| MoA Clear Passage 2030 Fund | 21.93 | 15.29 | 15.25 | 11.16 |
| Natixis Target Retirement 2030 N | 20.99 | 12.77 | 16.65 | 10.28 |
| Nuveen Lifecycle 2030 R6 | 21.27 | 11.23 | 14.59 | 10.16 |
| T. Rowe Price Retirement 2030 Tr-A | 22.70 | 13.45 | 16.56 | 10.92 |
| Voya Target Retirement 2030 Tr Comps CIT | 21.05 | 13.64 | 15.80 | 10.87 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2030 TR USD** | **21.24** | **11.69** | **13.33** | **8.83** |
| | | | | |
| American Century Retirement 2035 Trust Class XI | 20.28 | 11.52 | 13.54 | 9.36 |
| | | | | |
| American Funds 2035 Trgt Date Retire R6 | 23.29 | 15.54 | 16.90 | 12.73 |
| Callan GlidePath® 2035 Fund CL R6 | 23.16 | 17.95 | 15.66 | 12.23 |
| MoA Clear Passage 2035 Fund | 23.62 | 17.84 | 17.26 | 13.05 |
| Natixis Target Retirement 2035 N | 23.12 | 14.95 | 17.89 | 11.50 |
| Nuveen Lifecycle 2035 R6 | 23.04 | 12.70 | 16.38 | 11.36 |
| T. Rowe Price Retirement 2035 Tr-A | 23.99 | 15.02 | 18.43 | 12.19 |
| Voya Target Retirement 2035 Tr Comps CIT | 22.67 | 15.70 | 17.65 | 12.43 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **23.04** | **13.63** | **14.84** | **10.18** |
| | | | | |
| American Century Retirement 2040 Trust Class XI | 21.63 | 12.23 | 14.40 | 10.20 |
| | | | | |
| American Funds 2040 Trgt Date Retire R6 | 24.40 | 16.83 | 19.33 | 14.79 |
| Callan GlidePath® 2040 Fund CL R6 | 23.99 | 18.77 | 16.75 | 13.50 |

| | | | | |
|---|---|---|---|---|
| MoA Clear Passage 2040 Fund | 24.25 | 19.89 | 18.87 | 14.35 |
| Natixis Target Retirement 2040 N | 23.83 | 15.87 | 19.76 | 12.59 |
| Nuveen Lifecycle 2040 R6 | 24.56 | 14.33 | 18.39 | 12.76 |
| T. Rowe Price Retirement 2040 Tr-A | 24.95 | 16.30 | 19.93 | 13.40 |
| Voya Target Retirement 2040 Tr Comps CIT | 24.07 | 17.87 | 19.33 | 13.85 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **24.35** | **15.35** | **16.34** | **11.70** |
| | | | | |
| American Century Retirement 2045 Trust Class XI | 23.09 | 13.12 | 15.14 | 11.08 |
| | | | | |
| American Funds 2045 Trgt Date Retire R6 | 24.68 | 17.18 | 20.15 | 15.17 |
| Callan GlidePath® 2045 Fund CL R6 | 24.59 | 18.97 | 17.58 | 14.24 |
| MoA Clear Passage 2045 Fund | 24.54 | 20.57 | 19.64 | 14.90 |
| Natixis Target Retirement 2045 N | 25.23 | 17.09 | 20.65 | 13.45 |
| Nuveen Lifecycle 2045 R6 | 25.87 | 15.94 | 19.47 | 13.80 |
| T. Rowe Price Retirement 2045 Tr-A | 25.59 | 17.22 | 20.83 | 14.22 |
| Voya Target Retirement 2045 Tr Comps CIT | 25.15 | 19.12 | 20.20 | 14.94 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **24.97** | **16.36** | **17.39** | **12.86** |
| | | | | |
| American Century Retirement 2050 Trust Class XI | 24.44 | 14.19 | 15.96 | 12.01 |
| | | | | |
| American Funds 2050 Trgt Date Retire R6 | 25.04 | 17.27 | 20.83 | 15.43 |
| Callan GlidePath® 2050 Fund CL R6 | 24.60 | 18.96 | 18.04 | 14.67 |
| MoA Clear Passage 2050 Fund | 24.65 | 20.82 | 19.94 | 15.39 |
| Natixis Target Retirement 2050 N | 24.89 | 17.22 | 21.31 | 13.66 |
| Nuveen Lifecycle 2050 R6 | 26.19 | 16.48 | 20.03 | 14.27 |
| T. Rowe Price Retirement 2050 Tr-A | 25.67 | 17.35 | 21.12 | 14.51 |
| Voya Target Retirement 2050 Tr Comps CIT | 25.61 | 19.05 | 20.59 | 15.45 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **25.09** | **16.60** | **17.85** | **13.36** |

| | | | | |
|---|---|---|---|---|
| American Century Retirement 2055 Trust Class XI | 24.96 | 14.76 | 16.60 | 12.83 |
| | | | | |
| American Funds 2055 Trgt Date Retire R6 | 25.09 | 17.28 | 21.40 | 15.58 |
| Callan GlidePath® 2055 Fund CL R6 | 24.61 | 19.01 | 18.02 | 14.65 |
| MoA Clear Passage 2055 Fund | 24.40 | 21.11 | 19.98 | 15.66 |
| Natixis Target Retirement 2055 N | 25.51 | 17.25 | 21.74 | 13.93 |
| Nuveen Lifecycle 2055 R6 | 26.36 | 16.65 | 20.25 | 14.46 |
| T. Rowe Price Retirement 2055 Tr-A | 25.65 | 17.37 | 21.20 | 14.60 |
| Voya Target Retirement 2055 Tr Comps CIT | 25.64 | 19.15 | 20.68 | 15.62 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **25.05** | **16.50** | **17.90** | **13.33** |
| | | | | |
| American Century Retirement 2060 Trust Class XI | 25.45 | 15.16 | 16.85 | 13.20 |
| | | | | |
| American Funds 2060 Trgt Date Retire R6 | 25.01 | 17.19 | 21.61 | 15.60 |
| Callan GlidePath® 2060 Fund CL R6 | 24.71 | 18.96 | 18.03 | 14.70 |
| MoA Clear Passage 2060 Fund | 24.53 | 21.60 | 20.19 | 15.73 |
| Natixis Target Retirement 2060 N | 25.78 | 17.71 | 21.74 | 13.84 |
| Nuveen Lifecycle 2060 R6 | 26.70 | 16.80 | 20.46 | 14.56 |
| T. Rowe Price Retirement 2060 Tr-A | 25.70 | 17.45 | 21.17 | 14.60 |
| Voya Target Retirement 2060 Tr Comps CIT | 25.56 | 19.51 | 20.70 | 15.63 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **24.96** | **16.33** | **17.86** | **13.15** |
| | | | | |
| American Century Retirement 2065 Trust Class XI | N/A | 15.21 | 17.09 | 13.52 |
| | | | | |
| American Funds 2065 Trgt Date Retire R6 | N/A | 17.32 | 21.55 | 15.64 |
| Callan GlidePath® 2065 Fund CL R6 | N/A | 18.96 | 18.03 | 14.68 |
| MoA Clear Passage 2065 Fund | N/A | 21.73 | 20.50 | 16.01 |
| Natixis Target Retirement 2065 N | N/A | N/A | 22.06 | 13.95 |
| Nuveen Lifecycle 2065 R6 | N/A | 17.15 | 20.59 | 14.71 |

| | | | | |
|---|---|---|---|---|
| T. Rowe Price Retirement 2065 Tr-A | N/A | 18.33 | 21.24 | 14.55 |
| Voya Target Retirement 2065 Tr Comps CIT | N/A | 19.26 | 20.89 | 15.73 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2065 TR USD** | **N/A** | **16.10** | **17.78** | **12.92** |

192.     Altogether, the charts above span from the first day of 2015 until the last day of 2024, demonstrating that the American Century TDFs underperformed in both good markets and bad markets.

193.     Looking at this data together, the American Century TDFs underperformed across several metrics for *years before* the Class Period, and for *years into* the Class Period. This consistent underperformance data was publicly available to the Plan Committee and SageView at the time of their decision-making, whether they reviewed the funds annually or quarterly (if at all).

194.     Prudent fiduciaries would have acknowledged that this pattern of underperformance did not bode well for American Century TDFs' future performance and would have made a timely switch to any of the numerous safer, better managed, and ultimately more optimistic investment options.

195.     Given the long history of underperformance, it's inexplicable why the American Century TDFs would have been included as Plan investment options by the start of the Class Period and kept in place, unless SageView was unreasonably favoring American Century TDFs for retention. Of course, that would be a fiduciary breach on SageView's part.

196.    The market has taken note of the American Century TDFs' underperformance. In 2016, the American Century TDFs had a roughly 1.5% market share among TDFs. By the end of 2024, that market share had dwindled to 0.5%, or roughly 1/3 of its 2016 market share.



197.    The American Century TDF's steady underperformance has given rise to a dramatic loss of market share. The following chart illustrates the cumulative growth rate for the TDF sector as well as for AC based on monthly observations as of Dec 2016. Note that while the industry as a whole has seen nearly 100% growth (excluding investment returns), American Century has seen a nearly 40% decline in assets as a result of redemptions.

198.    Additionally, high turnover rates create meaningful transaction costs for funds.



199.    Turnover rates measure how often a fund changes its investments, with higher rates meaning the fund frequently buys and sells stocks or bonds.

200.     A higher-than-average turnover rate indicates an investment manager's lack of experience or an attempt to mask a fund's underperformance.

201.     "High turnover is worrisome because it can suggest a manager is not following a disciplined investment strategy — which would contradict the funds' role in investors' retirement portfolios." Jessica Toonkel, *Target date turnover troubles big firms*, Investment News (Aug. 29, 2010).[11]

202.     A turnover rate above 30% "warrants closer inspection" by investment professionals. *Id.*

203.     The American Century TDFs had significant turnover, however, much higher than 30%, both before and during the Class Period.

204.     During the period 2016-2018, the funds underlying the American Century TDFs had an average turnover of 68% per year, which rose to 72% per year over 2019-2023, more than ***double*** 30% starting in 2016, and substantially higher than the turnover for peer TDFs.

205.     A prudent fiduciary would monitor a fund's turnover rate and would understand that excessive turnover can mean that the manager is attempting to remedy underperformance by deviating from the fund's strategy.

206.     Here, the American Century TDF's turnover was a significant red flag, and a prudent fiduciary would have investigated the reasons for the high turnover and the impact the turnover was having on the Plan and the participants' retirement savings.

207.     Taken together, because of the underperformance and high turnover rates for the American Century TDFs, Defendants were or should have been aware from the beginning of the Class Period that the American Century TDFs were not an appropriate investment in the Plan.

208.     The analysis set forth above in ***no way uses hindsight.*** Instead, it is solely based on information that the Plan Committee had or should have had available to them before and at all times during the Class Period.

---

[11] Available at https://www.investmentnews.com/mutual-funds/target-date-turnover-troubles-big-firms/31049.

209.     Because Defendants imprudently did not choose prudent, alternative TDFs, and instead chose the consistently underperforming American Century TDFs, Defendants caused unreasonable and unnecessary losses to Plaintiffs and Plan participants invested in the American Century TDFs in the tens of millions of dollars over the course of the Class Period.

210.     Moreover, by failing to engage in an objectively reasonable fiduciary process when retaining and failing to remove American Century TDFs from January 2019 until January 2025, Defendants breached their fiduciary duties of prudence to Plaintiffs and Plan participants and are liable to Plaintiffs and Class Members for the retirement monies lost through the imprudent investment in the American Century TDFs through the Class Period.

211.     Defendants caused objectively unreasonable losses to Plaintiffs and the Plan's participants of more than $27 million from the beginning of the Class Period, when considering the retirement losses suffered by Plaintiffs and the Class by the Plan Committee maintaining various versions of the American Century TDFs as the Plan's default investment.

212.     The following chart illustrates an estimate of damages suffered for each vintage of the American Century TDFs by maintaining the American Century TDF as the Plan's default investment instead of selecting, at the beginning of the Class Period, a more suitable and prudent alternative suite of TDFs.

213.     Defendants caused objectively unreasonable losses to Plaintiffs and the Plan's participants of over $31 million dollars from January 2019 through January 2025, when considering the retirement losses suffered by Plaintiffs and the Class by the Plan Committee maintaining various versions of just one of the many possible comparable TDFs the Committee could have used to replace the American Century TDFs as Plan investments QDIA.

52

| Fund | Est. Damages |
|---|---|
| American Century 2025 XI | $ 1,878,359 |
| American Century 2030 XI | $ 4,021,623 |
| American Century 2035 XI | $ 6,126,509 |
| American Century 2040 XI | $ 7,383,256 |
| American Century 2045 XI | $ 6,613,615 |
| American Century 2050 XI | $ 3,248,997 |
| American Century 2055 XI | $ 1,401,032 |
| American Century 2060 XI | $ 836,089 |
| American Century 2065 XI | $ 38,043 |
| **Total** | **$ 31,547,523** |

214. If the Plan Committee appropriately evaluated the American Century TDFs at the beginning of and throughout the Class Period, it should have selected a more suitable and prudent TDF suite. Any of those suites of TDFs would have delivered performance superior to the American Century TDFs.

## **CLASS ACTION ALLEGATIONS**

215. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

216. In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the Evergy, Inc. 401(k) Plan who invested in any of the American Century Target Date Funds (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period.

217. The Class Period is defined as six years prior to the filing of this Complaint and continuing through the date of judgment in this action.

218. The Class includes thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

219.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owe fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

- Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether Defendants breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

220.     Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were Plan participants during the time period at issue and the designated participants in the Plan were harmed by Defendants' fiduciary misconduct in the same manner.

221.     Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were Plan participants in the Plan during the Class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

222.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

54

223. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

224. Plaintiffs' attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

225. The claims brought by the Plaintiffs arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the Plan. Exhaustion is intended to serve as a Plan procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

226. Under ERISA, an individual "participant" or "beneficiary" are distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust Plan remedies – does not, by itself, bind the Plan.

## FIRST CLAIM FOR RELIEF
### Breach of Duty of Prudence of ERISA, as Amended
### (Plaintiffs, on behalf of themselves and Class,
### Against Defendant Plan Committee and SageView– Challenged TDFs)

227. Plaintiffs restate the above allegations as if fully set forth herein.

228. Defendant Plan Committee and its members and SageView are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

229. 29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant Plan Committee and SageView in managing the investments of the Plan.

230. Defendant Plan Committee and SageView, as fiduciaries of the Plan, are responsible for selecting and maintaining prudent investment options and taking any other necessary steps to ensure that the Plan's assets are invested prudently.

231.     During the Class Period, Defendant Plan Committee and SageView had a fiduciary duty to do all of the following: manage the assets of the Plan prudently and act with the care, skill, diligence, and prudence required by ERISA.

232.     During the Class Period, Defendant Plan Committee and SageView breached their fiduciary duties of prudence owed to Plan participants, including to Plaintiffs, by failing to manage the TDFs of the Plan prudently, and failing to act with the care, skill, diligence, and prudence required by ERISA.

233.     Defendant Plan Committee and SageView, as fiduciaries of the Plan, had a continuing duty to regularly monitor and independently assess before and during the Class Period whether the Plan's TDFs were prudent choices for the Plan and to remove imprudent investment options regardless of how long those investments had been in the Plan.

234.     During the Class Period, Defendant Plan Committee and SageView breached their fiduciary duties of prudence to Plan participants, including Plaintiffs, by failing to engage in a prudent fiduciary process for monitoring the Plan's TDFs and by failing to remove imprudent TDFs investments within a reasonable period.

235.     Defendant Plan Committee and SageView were directly responsible for: evaluating and monitoring the Plan's investment options, including the American Century TDFs, in a prudent fashion; eliminating funds, such the American Century TDFs, that were no longer prudent investment options; and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

236.     Defendant Plan Committee and SageView failed to employ a prudent fiduciary process by failing to monitor evaluate the American Century TDFs for suitability given Plan demographics and in comparison to other meaningful benchmark TDFs.

237.     Defendant Plan Committee and SageView, as fiduciaries of the Plan, had a continuing duty to regularly monitor and independently assess through the Plan 2013 and 2022 IPSs whether the Plan's TDFs were prudent choices for the Plan and to remove imprudent investment options regardless of how long those investments had been in the Plan.

238. Defendant Plan Committee and SageView failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching their fiduciary duties of prudence under 29 U.S.C. § 1104(a)(1)(B).

239. As a result of Defendant Plan Committee and SageView's breach of their fiduciary duty of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered tens of millions of dollars in unreasonable and unnecessary monetary losses.

240. Defendant Plan Committee and SageView are liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the fiduciary breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breach of fiduciary duty alleged in this Count. In addition, Defendant Plan Committee and SageView are subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

## SECOND CLAIM FOR RELIEF
**Failure to Adequately Monitor Other Fiduciaries under ERISA,**
**(Plaintiffs, on behalf of themselves and Class,**
**Against Defendants Evergy, Campbell, and Bassham– Challenged TDFs)**

241. Plaintiffs restate the above allegations as if fully set forth herein.

242. Defendants Evergy, Campbell, and Bassham had the authority to appoint and remove members or individuals responsible for Plan investment management on the Plan Committee and for hiring SageView, and were aware that these fiduciaries had critical responsibilities for the Plan.

243. In light of this authority, Defendants Evergy, Campbell, and Bassham had a duty to monitor those individuals responsible for Plan investment management on the Plan Committee and at SageView to ensure that they were adequately performing their fiduciary obligations, and

to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

244.     Defendants Evergy, Campbell, and Bassham had a duty to ensure that the individuals responsible for Plan investment management on the Plan Committee and at SageView possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan's investments; and reported regularly to Defendants Evergy, Campbell, and Bassham.

245.     Defendants Evergy, Campbell, and Bassham breached their duty to monitor individuals responsible for Plan investment management on the Plan Committee and at SageView, by, among other things:

- Failing to monitor and evaluate the performance of individuals responsible for Plan investment management on the Plan Committee or at SageView or have a system in place for doing so, standing idly by as the Plan suffered significant losses by maintaining the imprudent American Century TDFs for most of the Class Period;

- Failing to monitor the process by which Plan TDFs were evaluated, failing to investigate the suitability of the American Century TDFs based on Plan demographics and failing to investigate the availability of alternative, prudent TDFs; and

- Failing to remove individuals responsible for Plan investment management on the Plan Committee or SageView whose performance was inadequate in that they continued to maintain the American Century TDFs, all to the detriment of the Plan and Plan participants' retirement savings.

246.     As a result of Defendants Evergy, Campbell, and Bassham's foregoing breaches of the duty to monitor, the Plaintiffs and Plan Participants suffered unreasonable and unnecessary monetary losses amounting to tens of millions of dollars.

247.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants Evergy, Campbell, and Bassham are liable to restore to the Plan all loses caused by their failure to adequately monitor individuals responsible for Plan investment management on the Plan Committee and at

SageView. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.      A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.      Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.      A Declaration the Defendants have breached their fiduciary duties of prudence and to monitor under ERISA;

D.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty, including restoring to the Plan all losses resulting from imprudent investment of the Plan's assets in the American Century TDFs, restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Plan participants would have made if the Defendants had fulfilled their fiduciary obligations by undertaking TDF suitability and comparative analyses on a timely basis;

E.      An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

F.      An award of pre-judgment interest;

G.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

H.      Such other and further relief as the Court deems equitable and just.

DATED: June 24, 2025                    Respectfully submitted,

                                        */s/ Paul M. Secunda*
                                        Paul M. Secunda (admitted *pro hac vice*)
                                        **WALCHESKE & LUZI, LLC**

235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

James A. Bloom*
Todd M. Schneider*
*admitted *pro hac vice*
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
jbloom@schneiderwallace.com

Michael F. Brady (Bar No. 47521)
**BRADY & ASSOCIATES**
2118 W 120th St
Leawood, KS 66209
Telephone: (913) 696-0925
brady@mbradylaw.com

Don Bivens*
Teresita T. Mercado*
*admitted *pro hac vice*
**DON BIVENS PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 762-2661
don@donbivens.com
teresita@donbivens.com

Mark K. Gyandoh, Esquire (*pro hac vice*)
James A. Maro, Esquire (*pro hac vice*)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Tel: 610.890.0200
markg@capozziadler.com
jamesm@capozziadler.com

Kelly M. Spann, Esquire
**FORTMANSPANN, LLC**
MO Attorney ID #73954
250 St. Catherine Street
Florissant, MO 63031

Tel: 314.522.2312
kms@fortmanlaw.com

*Attorneys for Plaintiffs and Proposed Class*

**<u>Certificate of Service</u>**

I hereby certify that I filed the foregoing on June 24, 2025 using the Court's ECF system, and that all counsel of record are registered with the Court's ECF system.

<u>/s/ William C. W. Nervis</u>
William C. W. Nervis
