## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

DERICK L. DOLL, CATHERINE M.
FLUEGEL, and JOSEPH NAGLE, individually
and as representatives of a Class of Participants
and Beneficiaries on behalf of the Evergy, Inc.
401(k) Savings Plan,

        Plaintiffs,

    v.

EVERGY, INC., DAVID A. CAMPBELL,
TERRY BASSHAM, THE PLAN
COMMITTEE OF THE EVERGY, INC. 401(k)
SAVINGS PLAN; and SAGEVIEW
ADVISORY GROUP LLC,

        Defendants.

Case No. 4:25-cv-00043 (SRB)

## DEFENDANT SAGEVIEW'S ANSWER TO SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Defendant SageView Advisory Group LLC ("SageView") hereby answers the Second Amended Consolidated Class Action Complaint ("SAC") of Plaintiffs Derick L. Doll, Catherine M. Fluegel, and Joseph Nagle, individually and as representatives of a Class of Participants and Beneficiaries on behalf of the Evergy, Inc. 401(k) Savings Plan (collectively, "Plaintiffs"), as follows:

### INTRODUCTION

1.    Plaintiffs, individually and on behalf of the Class, allege Defendants Evergy, Inc. ("Evergy"), David A. Campbell, Terry Bassham, the Plan Committee of the Evergy, Inc. 401(k) Savings Plan ("Plan Committee"), and SageView Advisory Group LLC ("SageView") (collectively "Defendants"), breached their fiduciary duties of prudence under the Employee

Retirement Income Security Act ("ERISA"), 29 U.SC. § 1132, regarding the Evergy, Inc. 401(k) Savings Plan (the "Plan" or "Evergy Plan").

**ANSWER**:    SageView admits only that Plaintiffs purport to assert certain claims under § 502 of the Employee Retirement Income Security Act ("ERISA"), on behalf of themselves and a class of participants and beneficiaries in the Evergy, Inc. 401(k) Savings Plan (the "Plan"). SageView expressly denies that Plaintiffs are entitled to relief under ERISA or to any other relief whatsoever. Unless expressly admitted, SageView denies the allegations in Paragraph 1.

2.    The Class is defined as: "All participants and beneficiaries of the Evergy, Inc. 401(k) Plan who invested in any of the American Century Target Date Funds (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period."

**ANSWER**:    SageView admits that Plaintiffs purport to bring this action on behalf of the class defined in Paragraph 2 but deny that class treatment is appropriate in this action. SageView denies any remaining allegations in Paragraph 2.

3.    Defendants breached their fiduciary duties to Plaintiffs and the Class when they:

(a)    uncritically relied on the Plan co-fiduciary and investment advisor and consultant, SageView, who unreasonably and imprudently favored American Century TDFs to be Plan investments and qualified default investment alternatives ("QDIAs") from the beginning of the Class Period until January 5, 2025;

(b)    failed to follow its investment policy statements ("IPSs") and Plan Committee practice which required Plan funds falling into the third quartile of peer rankings to immediately to be placed on a Watch List;

(c)    unreasonably provided a conservative equity allocation to young participants who had a long-term investment horizon;

(d)     did not undertake any TDF or QDIA suitability analysis with regard to the

American Century Funds from December 2018 until June 2024; and

(e)     waited almost two years from the time that a majority of the American

Century TDFs were on the Watch List (March 2023) before replacing

them on January 6, 2025.

**ANSWER**:     SageView denies the allegations in Paragraph 3 and all subparagraphs

thereunder.

4.     These alleged breaches and imprudent investments resulted in the loss of tens of

millions of dollars for Plaintiffs and the Class.

**ANSWER**:     SageView denies the allegations in Paragraph 4.

5.     Plaintiffs are "participants" in a defined-contribution plan under ERISA Section

3(7), 29 U.S.C. § 1002(7): the Evergy Plan.

**ANSWER**:     Paragraph 5 asserts legal conclusions to which no response is required. To

the extent a response is required, SageView admits that Plaintiffs are former participants in the

Plan but denies that Plaintiffs are entitled to any relief under ERISA or any other legal theory.

6.     The Plan is a Section 401(k) "defined contribution" pension plan under 29 U.S.C.

§ 1002(34), meaning that the value of participants' investments is "determined by the market

performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l,* 575

U.S. 523, 525 (2015).

**ANSWER**:     Paragraph 6 asserts legal conclusions to which no response is required.

Paragraph 6 also purports to quote a judicial decision which speaks for itself. To the extent

Paragraph 6 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies

those allegations. To the extent a response is required, SageView admits that the Plan is a "defined

3

contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). Unless expressly admitted, SageView denies the allegations in Paragraph 6.

7.      As a defined-contribution plan, the Plan allows participants to direct the investment of their contributions, but the investment options included in the Plan are selected by the Plan's fiduciaries.

**ANSWER**:      SageView admits the allegations in Paragraph 7.

8.      Defendants are the Plan Sponsor, Plan Administrators, Investment Advisor, and fiduciaries of the Plan. Evergy assigned fiduciary management and Plan duties of the Plan to the Plan Committee to manage and administer the Plan and was co-fiduciary with SageView of the Plan through January 5, 2025, at which point SageView became the Section 3(38) investment management fiduciary for the Plan.

**ANSWER**:      Paragraph 8 asserts conclusions of law to which no response is required. To the extent a response is required, SageView admits that Evergy is the Plan sponsor and Plan Administrator, and that SageView currently serves as the investment advisor and Section 3(38) investment manager for the Plan. The remaining allegations in Paragraph 8 assert legal conclusions to which no response is required. Unless expressly admitted, SageView denies that allegations in Paragraph 8.

9.      Under ERISA, plan fiduciaries must discharge their duty of prudence "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

**ANSWER**:      Paragraph 9 asserts legal conclusions to which no response is required. To the extent a response is required, SageView admits that Paragraph 9 purports to quote and

characterize the text of ERISA and SageView denies those allegations to the extent they mischaracterize, misrepresent, or misquote the terms of the statute. SageView denies any remaining allegations in Paragraph 9.

10.     ERISA's fiduciary duties have been described as "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

**ANSWER**:     Paragraph 10 asserts legal conclusions to which no response is required. Paragraph 10 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 10 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 10.

11.     "In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble*, 575 U.S. at 528–29. The Supreme Court has stated that "a trustee has a continuing duty to monitor trust investments and remove imprudent ones ... separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.* at 529. "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2002) (citing *Tibble*, 575 U.S. at 529–30).

**ANSWER**:     Paragraph 11 asserts legal conclusions to which no response is required. Paragraph 11 also purports to quote judicial decisions that speak for themselves. To the extent Paragraph 11 mischaracterizes, misrepresents, or misquotes those judicial decisions, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 11.

12.     Under this prudent person standard, courts must determine "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods

to investigate the merits of the investment and to structure the investment." *See Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983).

**ANSWER**:    Paragraph 12 asserts legal conclusions to which no response is required. Paragraph 12 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 12 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 12.

13.    ERISA's duty of prudence "includes a continuous duty to monitor and remove imprudent investments." *Snyder v. UnitedHealth Grp., Inc.*, No. 21-1049 (JRT/DJF), 2024 U.S. Dist. LEXIS 42952, at *18-19 (D. Minn. Mar. 12, 2024)*.

**ANSWER**:    Paragraph 13 asserts legal conclusions to which no response is required. Paragraph 13 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 13 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 13.

14.    ERISA's statutory duty of prudence establishes "an objective standard" that focuses on "the process by which" decisions are made, "rather than the results of those decisions." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020).

**ANSWER**:    Paragraph 14 asserts legal conclusions to which no response is required. Paragraph 14 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 14 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 14.

15.    Fiduciaries must not deviate from the "guidelines concerning the selection, evaluation, and monitoring of Plan investment options." *See Bracalente v. Cisco Sys., Inc.*, No. 22-CV-04417-EJD, 2024 WL 2274523, at *2 (N.D. Cal. May 20, 2024).

**ANSWER**: Paragraph 15 asserts legal conclusions to which no response is required. Paragraph 15 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 15 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 15.

16. A plaintiff may plead *either* adequate direct evidence of process failure allegations *or* inferential evidence involving "meaningful benchmarks" that establishes the imprudence of the investments. *See Rubke v. ServiceNow, Inc.*, Case No. 3:24-cv-01050-TLT, Dkt. 90, at 8 (N.D. Cal. Apr. 23, 2025) (citing *Bracalente v. Cisco Systems, Inc.*, No. 22-cv-4417, 2024 WL 2274523, at *5 (N.D. Cal. May 20, 2024) ("Plaintiffs may state a breach of the duty of prudence **either** through direct allegations of the fiduciary's 'knowledge, methods, or investigations at the relevant times' or 'circumstantial factual allegations [from which the Court] may reasonably infer from what is alleged that the process was flawed.'") (emphasis added).

**ANSWER**: Paragraph 13 asserts legal conclusions to which no response is required. Paragraph 16 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 16 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 16.

17. During the Class Period, Defendants breached the duty of prudence they owed to the Plan by failing to monitor the American Century TDFs and by not removing these TDFs at the beginning of the Class Period based on information available to the Plan Committee with regard to the suitability and prudence of the American Century TDFs.

**ANSWER**: SageView denies the allegations in Paragraph 17.

18. These direct procedural defects include at least the five specific procedural defects discussed above with regard to the fiduciary process followed by the Plan Committee and

SageView fiduciaries in maintaining the American Century TDFs as plan investments and as qualified default investment alternatives ("QDIA") through January 5, 2025.

**ANSWER**:    SageView denies the allegations in Paragraph 18.

19.    In addition to being able to provide the necessary plausible allegations through direct evidence of procedural defects, plaintiffs can also indirectly show that "a prudent fiduciary in like circumstances" would have selected a different TDF suite of funds based on the cost or performance of the selected fund, through a sound basis for comparison — a meaningful benchmark, such as a market index, to show that a prudent fiduciary in like circumstances would have selected a different fund. *See Karg v. Transamerica Corp.*, No. 18-CV-134-CJW-KEM, 2019 U.S. Dist. LEXIS 140567, at *15-16 (N.D. Iowa Aug. 20, 2019).

**ANSWER**:    Paragraph 19 asserts legal conclusions to which no response is required. Paragraph 19 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 19 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 19.

20.    ERISA plaintiffs claiming a breach of fiduciary duty through inferential reasoning have a challenging pleading burden because of their different levels of knowledge regarding what investment choices a plan fiduciary made as compared to how a plan fiduciary made those choices.

**ANSWER**:    Paragraph 20 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 20.

21.    ERISA plaintiffs typically lack extensive information regarding the fiduciary's methods because those details tend to be in the sole possession of the fiduciary. As a result, the challenge then becomes for ERISA plaintiffs to use the data about the selected funds and some

circumstantial allegations about methods to show that a prudent fiduciary in like circumstances would have acted differently. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).

**ANSWER**:    Paragraph 21 asserts legal conclusions to which no response is required. Paragraph 21 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 21 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 21.

22.    During the Class Period, Defendants breached the duty of prudence they owed to the Plan by failing to monitor and remove the American Century Target Date Funds ("TDFs") as investment options in the Plan based on those TDFs' underperformance compared to their own benchmark, as well as numerous comparable funds.

**ANSWER**:    SageView denies the allegations in Paragraph 22.

23.    The duty to monitor is also especially important here, where a high percentage of the Plan's assets were/are concentrated in the American Century Retirement Date Trust target date funds. In 2023, over one-third of the Plan's assets were invested in the American Century TDFs ($455,750,222 of the $1,332,946,113 Plan assets).

**ANSWER**:    SageView admits that, according to the Plan's 2023 Form 5500, the Plan held total assets of $1,332,946,113, of which $455,750,222 was held in the American Century TDFs. SageView denies any remaining allegations in Paragraph 23.

24.    In fact, the American Century TDFs held more of the Plan's assets than any other investment option in the Plan throughout the Class Period, by a significant margin. Since the beginning of the Class Period, the American Century TDFs have consistently held more than one-third (1/3) of the Plans' total assets. At year-end 2018, the American Century TDFs held in excess of 40% of the Plan's assets.

**ANSWER**: SageView admits that the Plan's Forms 5500 for 2019 through 2023 reflect that the Plan reported holding more than 33.33% of its invested assets in the American Century TDFs. According to the Plan's 2024 Form 5500, SageView denies that the Plan reported holding more than 33.33% of its invested assets in the American Century TDFs as of December 31, 2024. Responding further, according to the Plan's 2018 Form 5500, SageView denies that the Plan reported holding more than 40% of its invested assets in the American Century TDFs as of December 31, 2018. SageView denies any remaining allegations in Paragraph 24.

25. The Plan has at all times during the Class Period maintained over $1.2 billion in assets. At the end of the Plan's fiscal year in 2023, the Plan had over $1.3 billion in assets under management that were/are entrusted to the care of the Plan's fiduciaries. The Plan's assets under management makes it a jumbo plan in the defined contribution plan marketplace, and among the largest plans in the United States.

**ANSWER**: SageView admits that, according to the Plan's Forms 5500 for 2019 through 2024, the Plan held more than $1.2 billion in total assets. SageView further admits that, according to the Plan's Form 5500 for 2023, the Plan held more than $1.3 billion in total assets. Responding further, SageView lacks sufficient information to form a response to the remaining allegations in Paragraph 25 regarding the size of other plans, and, therefore, SageView denies those allegations on that basis. SageView denies any remaining allegations in Paragraph 25.

26. In 2021, only 0.2 percent (1,011 of 641,747) of Plans in the country had more than $1 billion in assets under management. In 2019, at the start of the Class Period, only 0.1 percent (776 of 603,217) of 401(k) plans in the country were as large as the Plan. The Plan's assets under management makes it among the largest plans in the United States.

10

**ANSWER**: SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 26 regarding the size of other plans, and, therefore, denies those allegations. SageView denies any remaining allegations in Paragraph 26.

27. In addition, Defendants failed to monitor the American Century TDFs' significant turnover rate of 68% over the three years before the start of the class period and 72% since that time, both significantly higher than the industry average during the same period. A prudent fiduciary would have monitored the American Century TDFs' turnover, investigated the reasons for the high turnover rate, and taken action to protect the Plan participants' retirement savings, including removing the American Century TDFs from the Plan.

**ANSWER**: SageView denies the allegations in Paragraph 27.

28. To remedy these fiduciary breaches, Plaintiffs bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) in a representative capacity to enforce Defendants' liability under 29 U.S.C. § 1109(a), and to make good to the Plan all losses resulting from these breaches. In addition, Plaintiffs seek to reform the Plan to comply with ERISA and to prevent further breaches of fiduciary duties and grant other equitable and remedial relief as the Court may deem appropriate.

**ANSWER**: SageView admits that Plaintiffs bring claims under ERISA, but denies that any breaches of fiduciary duties or violations of law occurred. Responding further, SageView denies that Plaintiffs are entitled to relief under ERISA or any other relief whatsoever. SageView denies any remaining allegations in Paragraph 28.

## JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq.*

**ANSWER**: Paragraph 29 asserts legal conclusions to which no response is required. To the extent a response is required, SageView states that it does not contest that the Court has subject matter jurisdiction over this action. SageView denies any remaining allegations in Paragraph 29.

30. This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

**ANSWER**: Paragraph 30 asserts legal conclusions to which no response is required. To the extent a response is required, SageView states that it does not contest that the Court has personal jurisdiction over SageView. SageView denies any remaining allegations in Paragraph 30.

31. Venue is appropriate in this District within the meaning of 29 U.S.C. § 1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District.

**ANSWER**: Paragraph 31 asserts legal conclusions to which no response is required. To the extent a response is required, SageView states that it does not contest venue in this district. SageView denies any remaining allegations in Paragraph 31.

## THE PARTIES AND THE PLAN

32. The Evergy Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).

**ANSWER**: Paragraph 32 asserts legal conclusions to which no response is required. To the extent a response is required, SageView admits that the Plan is a "defined contribution" plan, as defined in ERISA § 3(34), 29 U.S.C. § 1002(34). SageView denies any remaining allegations in Paragraph 32.

33.     Plaintiff Derick L. Doll is a resident of the State of Missouri and currently resides in Kansas City, Missouri, and during the Class Period, was a participant in the Plan under 29 U.S.C. § 1002(7). Plaintiff Doll was employed by Evergy's predecessor KCPL starting in 2000 and was an Evergy employee until May 2024. During that time he held several positions, including Work Week Manager, Transition Team Manager, and Simulator Instructor.

**ANSWER**:     SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 33 and therefore denies them.

34.     Plaintiff Doll held the following investments in the Plan, among others: American Century Retirement 2025 Trust Class XI, American Century Retirement 2030 Trust Class XI, American Century Retirement 2035 Trust Class XI, American Century Retirement 2040 Trust Class XI, American Century Retirement 2045 Trust Class XI, American Century Retirement 2050 Trust Class XI, American Century Retirement 2055 Trust Class XI.

**ANSWER**:     SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 34 and therefore denies them.

35.     Plaintiff Catherine M. Fluegel (formerly Catherin Tilden) is a resident of the State of Missouri and currently resides in Montrose, Missouri, and during the Class Period, was a participant in the Plan under 29 U.S.C. § 1002(7). Plaintiff Fluegel was employed by Evergy from 2008 through December 2022, in the position of Lead Plant Chemist.

**ANSWER**:     SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 35 and therefore denies them.

36.     Plaintiff Fluegel held the following investment in the Plan, among others: American Century Retirement 2030 Trust Class XI.

**ANSWER**: SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 36 and therefore denies them.

37. Plaintiff, Joseph Nagle, resides in Wichita, Kansas. During his employment, Plaintiff Nagle participated and invested in the options offered by the Plan that are challenged in this lawsuit. Plaintiff Nagle specifically invested American Century Retirement 2055 Trust Class XI during the Class Period.

**ANSWER**: SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 37 and therefore denies them.

38. Plaintiffs have Article III standing to bring this action on behalf of the Plan because they suffered actual injuries to their Plan accounts in which they held a number of the American Century TDFs during the Class Period, those injuries are fairly traceable to Defendants' unlawful conduct as fiduciaries of the Plan in maintaining the American Century TDFs in the Plan, and the harm is likely to be redressed by a favorable judgment.

**ANSWER**: SageView denies the allegations in Paragraph 38.

39. In all, Plaintiffs were invested in various American Century TDFs (American Century Retirement 2025 Trust Class XI, American Century Retirement 2030 Trust Class XI, American Century Retirement 2035 Trust Class XI, American Century Retirement 2040 Trust Class XI, American Century Retirement 2045 Trust Class XI, American Century Retirement 2050 Trust Class XI, and American Century Retirement 2055 Trust Class XI), during the Class Period, and thus, suffered an injury-in-fact to their individual retirement accounts in the Evergy Plan.

**ANSWER**: SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations that Plaintiffs were invested in various American Century TDFs during

the putative class period and therefore deny them. SageView denies that Plaintiffs suffered an injury-in-fact. SageView denies any remaining allegations in Paragraph 39.

40. Having established Article III standing, Plaintiffs may seek recovery under ERISA § 502(a)(2), *codified at* 29 U.S.C. § 1132(a)(2), on behalf of the Plan to obtain for relief for the Plan under ERISA § 409(a), *codified at* 29 U.S.C. § 1109(a), including relief that sweeps beyond their own injuries.

**ANSWER**: Paragraph 40 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 40.

41. The named Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, regarding the imprudence selection, and maintenance of, the Challenged Investments) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

**ANSWER**: SageView lacks sufficient information to form a response as to the knowledge of the named Plaintiffs as well as all of the participants in the Plan regarding the alleged acts underlying this lawsuit and, therefore, deny the allegations in Paragraph 41 on that basis. SageView denies any remaining allegations in Paragraph 41.

42. The named Plaintiffs and all participants in the Plan, having never managed a large 401(k) Plan such as the Plan, lacked actual knowledge of prudent Plan investments or the prudent alternative investments available to the Plan. Further, Plaintiffs did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' processes for maintaining and monitoring the Plan's investments) because this information is solely within the possession of Defendants prior to discovery. For purposes of this

Amended Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth below.

**ANSWER**: SageView lacks sufficient information to form a response as to the knowledge of the named Plaintiffs as well as all of the participants in the Plan regarding the alleged acts underlying this lawsuit and, therefore, deny the allegations in Paragraph 42 on that basis. SageView denies any remaining allegations in Paragraph 42.

43. Evergy is an American publicly traded public utility company incorporated in 2017 in Missouri and headquartered in Kansas City, Missouri, with significant energy generation and distribution operations in Kansas and Missouri. Its principal headquarters are located at 1200 Main Street, Kansas City, Missouri 64105. In this Complaint, "Evergy" refers to the named Defendants and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

**ANSWER**: Upon information and belief, SageView admits the allegations in the first and second sentences of Paragraph 43. As to the third sentence of Paragraph 43, SageView admits only that Plaintiffs purport to define Every to include all parent, subsidiary, related, predecessor, and successor entities. Unless expressly admitted, SageView denies the allegations in Paragraph 43.

44. Evergy is the Plan sponsor under 29 U.S.C. § 1002(16)(B).

**ANSWER**: SageView admits the allegations in Paragraph 44.

45. Evergy acted through its officers, including the Board Defendants, to perform Plan-related fiduciary functions in the course and scope of their business.

**ANSWER**: SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 45 and therefore denies them.

16

46. David A. Campbell is the current Chief Executive Officer of Evergy, and has served in that capacity since January 4, 2021. Under the Plan, the Chief Executive Officer of Evergy is responsible for appointing the Plan's Plan Committee, and accordingly had a concomitant fiduciary duty to monitor and supervise those appointees. For these reasons, the Mr. Campbell, as Chief Executive Officer of Evergy, is a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

**ANSWER**:    Upon information and belief, SageView admits the allegations in the first sentence of Paragraph 46. The second and third sentences of Paragraph 46 purport to describe the terms of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the terms of that document. Responding further, SageView states that any allegations regarding fiduciary status and associated duties constitute legal conclusions and therefore no response is required. To the extent a response is required, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 46.

47. Terry Bassham was the Chief Executive Officer of Evergy prior to the appointment of Mr. Campbell, and was also, in that capacity, a fiduciary of the Plan

**ANSWER**:    Upon information and belief, SageView admits that Terry Bassham was the Chief Executive Officer of Evergy prior to the appointment of Mr. Campbell. SageView states that any allegation regarding fiduciary status is a legal conclusion to which no response is required. To the extent a response is required, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 47.

48. The Plan Committee of the Evergy, Inc. 401(k) Savings Plan ("Plan Committee"), is the Plan Administrator of the Plan.

**ANSWER**: SageView lacks sufficient information to form an opinion as to the truth or falsity of the allegations in Paragraph 48 and therefore denies them.

49. As the Plan Administrator, the Plan Committee is a fiduciary with day-to-day Plan and operating control of the Plan under 29 U.S.C. § 1002(21)(A). It has authority and responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a).

**ANSWER**: Paragraph 49 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 49.

50. The Plan Committee is also a named fiduciary of the Plan, and has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

**ANSWER**: Paragraph 40 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView admits that the Plan Committee is a named fiduciary of the Plan. SageView denies the remaining allegations in Paragraph 40.

51. SageView Advisory Group LLC is a plan investment consultant and advisor that has expertise in consulting on 401(k), 457(b) and 403(b) plans; defined benefit and cash balance plans; nonqualified deferred compensation (NQDC) plans; as well as endowments and foundations and ESOPs. Its principal headquarters are located at 4000 MacArthur Boulevard, Suite 1050, Newport Beach, CA 92660.

**ANSWER**: SageView admits the allegations in Paragraph 51.

52. According to the January 2013 Plan IPS, "[t]he Investment Consultant, SageView Advisory Group, is a *co-fiduciary* charged with the responsibility of advising the Committee on investment policy, advising on the selection of investment managers, providing performance analysis and monitoring services, and educating the Committee on economic and investment trends

that may impact the performance of the selected and available investment options. The Investment Consultant, along with the Committee, shall be responsible for the Plan level investment selection process, as set forth in this Investment Policy Statement." *See* Investment Policy Statement of the Great Plains Energy Incorporated 401(k) Savings Plan, at 3 (January 2010, revised as of January 1, 2013) ("January 2013 IPS").

**ANSWER**:    Paragraph 52 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 52.

53.    As a co-fiduciary of the Plan, SageView has also exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

**ANSWER**:    Paragraph 53 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 53.

**DIRECT EVIDENCE OF DEFENDANTS' IMPRUDENT FIDUCIARY PROCESS**

54.    The Evergy Plan had two investment policy statements ("IPSs") during the Class Place. The version that was in place at the beginning of the Class Period is dated January 2010 (revised as of January 1, 2013). *See* Investment Policy Statement of the Great Plains Energy Incorporated 401(k) Savings Plan (January 2010, revised as of January 1, 2013) ("January 2013 IPS").

**ANSWER**:    SageView admits the allegations in Paragraph 54.

55.    The Evergy January 2013 IPS establishes the policies and guidelines for the Evergy Plan and was intended to assist the Plan Committee in effectively selecting, monitoring, and evaluating investment alternatives made available to participants under the Plan. *Id.* at 2-3.

**ANSWER**:     Paragraph 55 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 55.

56.     The Evergy January 2013 IPS outlines and prescribes what would have been, if implemented, a prudent and acceptable investment philosophy, and sets out the investment management procedures. *Id.* at 6-8.

**ANSWER**:     Paragraph 56 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 56.

57.     When a Plan participant does not give instructions on how they want to invest their retirement money in the Evergy Plan, their retirement monies are placed into a qualified default investment alternative ("QDIA").

**ANSWER**:     SageView admits the allegations in Paragraph 57.

58.     The Plan Committee may elect to utilize a multi-asset class investment option, such as TDFs, as the QDIA.

**ANSWER**:     SageView admits the allegations in Paragraph 58.

59.     A target date fund is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches.

**ANSWER**:     SageView admits the allegations in Paragraph 59.

60.     All target date funds are inherently actively managed because managers make changes to the allocations to stocks, bonds, and cash over time. These allocation shifts are referred to as a fund's "glide path."

20

**ANSWER**:    The first sentence of Paragraph 60 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in the first sentence. SageView admits the allegations in the second sentence of Paragraph 60. SageView denies any allegation not expressly admitted.

61.    The underlying mutual funds that target date fund managers choose to represent each asset class can be actively or passively managed, but all TDFs are actively managed even if the underlying funds which populate the asset classes are passive funds.

**ANSWER**:    Paragraph 61 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 61.

62.    There is no economically meaningful difference between "to-retirement" and "through-retirement" TDFs. In almost all instances, one type of TDF can be replicated using the other type through proper vintage selection. That is, a "to" can replicate a "through" and vice versa.

**ANSWER**:    SageView denies the allegations in Paragraph 62.

63.    For example, in the early years when investors have more time to bear short-term fluctuations in the stock market, each fund's asset allocation favors stocks to try to maximize returns. Then as the "target date" nears, money is gradually moved out of stocks and into more conservative investments, like bonds, to try to preserve the accumulated value of investors' accounts. Typically, there will be multiple TDFs for the different retirement targets of a given organization, such as the 2020 Fund, the 2030 Fund, and the 2040 Fund. Collectively these TDFs are sometimes referred to as a "series." TDFs are primarily designed for participants who want a dynamic but consistently conservative asset allocation that matches their retirement timeline, and are designed to be a "set it and forget it" investment option for participants who want their investments to be appropriately balanced and managed until they expect to retire.

**ANSWER**:     SageView lacks sufficient information to form a response to the broad and sweeping allegations regarding each and every suite or series of target date funds available. SageView therefore denies the allegations in Paragraph 63.

64.     The American Century TDFs had been included as investment options in the Evergy Plan for many years prior to the beginning of the Class Period.

**ANSWER**:     SageView lacks sufficient information as to when the American Century TDFs were first included as investment options in the Evergy Plan, but admits that the American Century TDFs were included in the Plan prior to the proposed class period. SageView denies any remaining allegations in Paragraph 64.

65.     The Plan Committee was responsible for crafting the Plan's investment lineup, as well as adding new funds and removing old funds, and could have chosen other target date fund families than the American Century TDFs at or any time before or after the beginning of the Class Period.

**ANSWER**:     SageView admits that the Plan Committee was responsible for "crafting the Plan's investment lineup" and could have chosen other prudent target date fund families that the American Century TDFs. SageView denies the remaining allegations in Paragraph 65.

66.     During the Class Period, the QDIA for the Evergy Plan was the American Century TDFs from the beginning of the Class Period through January 5, 2025.

**ANSWER**:     SageView admits the allegations in Paragraph 66.

67.     The specific target date portfolio for a participant who fails to make an investment election will be based on the participant's date of birth and an assumed normal retirement date of age 65.

**ANSWER**:     SageView admits the allegations in Paragraph 67.

68.     As far as selection of investment options, the January 2013 IPS provides that the Plan investment consultant, SageView, will take a two-tier approach to fund selection. *Id.* at 5-8.

**ANSWER**:     Paragraph 68 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 68.

69.     Quantitative factors include investment track record, investment risk, investment risk/return, investment style analysis, performance consistency, investment cost, and turnover ratio. *Id.* at 6-7.

**ANSWER**:     Paragraph 69 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 69.

70.     Qualitative factors include investment-style variations, portfolio concentration, and asset size and growth. *Id.* at 8.

**ANSWER**:     Paragraph 70 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 70.

71.     In addition to diversification and risk tolerance considerations, fund expenses will be considered in the selection of investment alternatives. *Id.*

**ANSWER**:     Paragraph 71 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 71.

72.     The January 2013 IPS sets out the "evaluation methodology" for evaluating on an on-going basis Plan investment options using several measures that quantify the expenses, returns, and risk-adjusted performance of each fund within its peer group. *Id.* at 6-8.

**ANSWER**:     Paragraph 72 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 72.

73.     "The [Plan] Committee, with the assistance of the Investment Consultant, [SageView,] will review the Plan's Investment Policy and *monitor each investment option* outlined in Appendix A on an ongoing basis, but *no less frequently than annually*. No less frequently than annually, the Committee *will evaluate the investment results of the investment options*." *Id.* at 8 (emphasis added). The American Century TDFs were investment options outlined in Appendix A of the January 2013 IPS. *Id.* at 11.

**ANSWER**:     Paragraph 73 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 73.

74.     The following investment criteria are utilized: trailing one-, three-, five- and ten-year returns; rolling 12-month returns (five years); rolling 36-month returns (ten years), Sharpe Ratio (five years); Alpha (five years); Up Capture Ratio (five years); Down Capture Ratio (five years); Style Consistency to the appropriate index (R-Squared); and Expense Ratio. *Id.* at 6-7.

**ANSWER**:     Paragraph 74 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 74.

75.     Each Plan investment option is benchmarked to a specific market index, and fund performance is evaluated and compared to a relevant peer group using Morningstar category classifications. A fund is given a peer group ranking in each criterion, shown as a percentage. *Id.* at 7.

**ANSWER**:     Paragraph 75 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 75.

76.     The benchmark for Target Date investment option category was the S&P Target Date Indexes. *Id.* at 14.

**ANSWER**:     Paragraph 76 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 76.

77.     The rankings for all criteria are then weighted and averaged to a give a fund its average ranking score. An overall SageView score is used to indicate where a fund places in relation to the score of the other funds in its category. SageView generally divides the funds in a category into deciles or quartiles. *Id.*

**ANSWER**:     Paragraph 77 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 77.

78.     While monitoring investment performance, the Plan Committee is required to maintain a "Watch List" for investment options that are not meeting certain investment objectives. *Id.* at 8.

**ANSWER**:    Paragraph 78 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 78.

79.    Based on Plan Committee practice, the Plan Committee determined that whenever an investment option fell into the 3rd quartile based on SageView's scoring system, they would place that investment on the Watch List.

**ANSWER**:    SageView denies the allegations in Paragraph 79.

80.    Based on Plan Committee practice, the Watch List investment option would be monitored and remain on the Watch List for four consecutive quarters, even if its performance improved. If the option remained in the 3rd quartile for four consecutive quarters, a detailed review of the option was made and a recommendation to replace or retain the option would be presented to the Committee.

**ANSWER**:    Paragraph 80 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 80.

81.    Final selection, replacement and/or removal of an investment option would be completed only after conducting a thorough review of the identified investment option.

**ANSWER**:    Paragraph 81 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 81.

82.    No such reviews of the American Century TDF investment option occurred between December 2018 and June 2024.

**ANSWER**:    SageView denies the allegations in Paragraph 82.

83.     There is no indication in the January 2013 IPS that individual vintages of the American Century TDFs (e.g., American Century TDF 2040) could not be placed on the Watch List separately from other American Century TDF vintages.

**ANSWER**:     Paragraph 83 purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 83.

84.     The January 2013 IPS was not replaced until September 2022, almost ten years later, even though there were substantial and important developments with regard to the types of plan investments in which plans, like the Evergy Plan, were invested.

**ANSWER**:     SageView admits only that the January 2013 IPS was replaced in or around September 2022. The remaining allegations in Paragraph 84 assert argument to which no response is required. To the extent a response is required, SageView denies the remaining allegations in Paragraph 84.

85.     The January 2013 IPS and September 2022 IPS are materially identical in all relevant respects, except that the September 2022 adds upfront a "Note" that states the "[t]he provisions of this Investment Policy Statement are guidelines only. The fiduciaries are not required to follow them. Instead, in all cases, fiduciaries are expected to exercise discretion and independent judgment when it considers this to be prudent and in the best interest of participants and beneficiaries of the Plan," September 2022 IPS at 3, where the January 2013 IPS had a similar statement towards the end of the IPS. January 2013 IPS at 8.

**ANSWER**:     Paragraph 85 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 85.

86.     That being said, Evergy makes clear in many other Plan documents that it seeks to align directly its investment review of the Plan investments with the IPS are do TDF review in conjunction with the IPS.

**ANSWER**:     Paragraph 86 purports to describe the content of unidentified written documents that speaks for themselves. SageView denies any allegations that are inconsistent with the content of those documents. SageView denies any remaining allegations in Paragraph 86.

87.     Moreover, in every Evergy Quarterly Plan Investment Review, SageView undertakes an "IPS Historical Ranking" and/or an "Historical IPS Rankings For Alternatives" based on the SageView scoring system, whose methodology in set out in both the 2013 and 2022 IPS.

**ANSWER**: Paragraph 87 purports to describe the content of written documents that speaks for themselves. SageView denies any allegations that are inconsistent with the content of those documents. SageView denies any remaining allegations in Paragraph 87.

88.     In its June 12, 2019 Plan Committee Minutes, the Plan Committee explains about the Plan Watch List: "All nine of the One Choice Target Date Funds passed their IPS scoring criteria, with the series receiving an average Sage View ranking at the 25th percentile. The series has been removed from qualitative watch." Evergy Plan Committee Minutes (June 12, 2019) (emphasis added).

**ANSWER**:     Paragraph 88 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 88.

89.     These Minutes suggest, and the other evidence, make clear that the Plan Committee and SageView did, in fact, did follow the IPSs assiduously.

**ANSWER**: Paragraph 89 asserts argument to which no response is required. Paragraph 89 also purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 89.

90. There was at least one important difference between the two IPSs. Only starting with the September 2022 IPS, did other investment evaluation criteria start coming into play when the Plan Committee and SageView reviewed multi-asset class investments, like TDFs. *See Investment Policy Statement of the Evergy, Inc. 401(k) Savings Plan* (September 2022), at 6 ("September 2022 IPS).

**ANSWER**: Paragraph 90 purports to describe the content of written documents that speak for themselves. SageView denies any allegations that are inconsistent with the content of that documents. SageView denies any remaining allegations in Paragraph 90.

91. With regard to TDFs, the September 2022 IPS, states that "[f]or multi-asset class investment alternatives, such as target-date funds, the asset allocation and glide path should be evaluated taking into account factors such as generally accepted investment theories and prevailing investment industry practices, and goals of the plan, the philosophy of the fiduciaries regarding asset class diversification and the desired relationship of risk (or volatility) and potential return, and the needs and abilities of the participants and beneficiaries. *The Committee, subject to any further delegation to an investment consultant or investment manager, expects to engage in a process to identify and consider those goals, preferences, needs and abilities and to select a default investment consistent with that analysis*." *Id.* (emphasis added).

**ANSWER**: Paragraph 91 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 91.

92. From December 2018 to June 2024, neither the Plan Committee nor Sageview *"engage[d[ in a process to identify and consider [TDF] goals, preferences, needs and abilities and to select a default investment consistent with that analysis."*

**ANSWER**: SageView denies the allegations in Paragraph 92.

93. As a result of numerous defects in their fiduciary process, the Plan Committee only yet removed the American Century TDFs from the Plan on January 5, 2025, years later than they should have.

**ANSWER**: SageView denies the allegations in Paragraph 93.

94. The American Century TDFs consistently, materially, and dramatically underperformed their own benchmarks, the S&P Target Date Index, during the three-year, five-year, and ten-year period before the beginning of the Class Period in 2018.

**ANSWER**: SageView denies the allegations in Paragraph 94.

95. The American Century TDFs continued to underperform their own benchmarks in the IPSs.

**ANSWER**: SageView denies the allegations in Paragraph 95.

96. The American Century TDFs also underperformed all of the major TDFs available in the marketplace, both substantially before and throughout the Class period.

**ANSWER**: SageView denies the allegations in Paragraph 96.

97. Any prudent fiduciary would have reviewed the American Century TDFs' performance history, both relative to its benchmark and relative to other comparable TDF investment options in the marketplace as part of a prudent fiduciary process.

**ANSWER**:     Paragraph 97 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 97.

98. A prudent fiduciary who reviewed that performance and turnover information— all of which was available to Defendants at the beginning of the Class Period—would have taken action to monitor and remove the American Century TDFs from the Plan as a result of their dramatic and sustained underperformance.

**ANSWER**:     SageView denies the allegations in Paragraph 98.

99. Defendants' failure to monitor or remove the American Century TDFs as investment options for the Plans despite the long-term underperformance and high turnover of the American Century TDFs suggests that Defendants' fiduciary process was imprudent.

**ANSWER**:     SageView denies the allegations in Paragraph 99.

100. Plan Committee minutes also suggest that SageView, co-fiduciary of the Evergy Plan, unreasonable favored retention of the American Century TDFS, even when prudent fiduciaries in similar circumstances would have advised their removal from the Plan.

**ANSWER**:     SageView denies the allegations in Paragraph 100.

101. Defendants' failures were compounded by their decision to select the American Century TDFs, despite their underperformance and high turnover, as the QDIA for Plan participants' retirement savings and for company matching contributions in the absence of an affirmative election for a different investment option.

**ANSWER**:     SageView denies the allegations in Paragraph 101.

102. No reasonably prudent fiduciary would have allowed so much of the Plan participants' retirement savings be diverted into manifestly imprudent investment options as the American Century TDFs.

**ANSWER**:   SageView denies the allegations in Paragraph 102.

103. Despite the underperformance and high turnover rates of the American Century TDFs, Defendants nevertheless selected the TDFs as the default investment option for Plan participants' retirement savings and for company matching contributions. Thus, unless participants affirmatively directed otherwise, Defendants automatically directed participants' savings into the American Century TDFs as the Plan QDIA.

**ANSWER**:   SageView admits only that the American Century TDFs were the Plan's QDIA during the putative class period. SageView denies the remaining allegations in Paragraph 103.

104. As a result, the American Century TDFs held more of the Plan's assets than any other investment option in the Plan throughout the Class Period, by a significant margin. Since the beginning of the Class Period, the American Century TDFs have consistently held more than one-third (1/3) of the Plans' total assets, and at the beginning of the Class Period, the American Century TDFs held in excess of 40% of the Plan's assets:

| Year Ending | Evergy Plan Assets in American Century TDFs | Total Evergy Plan Assets | Percentage of Evergy Plan Asset in American Century TDFs |
|---|---|---|---|
| 12/31/2019 | $ 584,753,920 | $ 1,353,285,042 | 43.2% |
| 12/31/2020 | $ 550,483,179 | $ 1,435,366,990 | 38.4% |
| 12/31/2021 | $ 569,927,380 | $ 1,539,730,672 | 37.0% |
| 12/31/2022 | $ 463,727,025 | $ 1,247,728,854 | 37.2% |
| 12/31/2023 | $ 491,529,199 | $ 1,332,946,113 | 36.9% |

**ANSWER**: SageView admits that, according to the Plan's Forms 5500 for 2019 through 2023, the Plan held more than 33.33% of its invested assets in the American Century TDFs. SageView denies that the Plan's Form 5500 for 2024 reported holding more than 33.33% of its invested assets in the American Century TDFs. SageView further denies that the Plan's Form 5500 for 2018 reported holding more than 40% of its invested assets in the American Century TDFs. SageView denies any remaining allegations in Paragraph 104.

105. As a jumbo plan with hundreds of missions of dollars to invest in a target date fund, the Plan would have been able to choose virtually any available target date funds for the Plan by the start of the Class Period.

**ANSWER**: Paragraph 105 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 105.

106. As relevant here, American Century Target Date Series were the only target date investing option in the Plan through January 5, 2025, when they were finally replaced by the Black Rock TDFs. In other words, for most of the Class Period, participants in the Plan who wanted to invest in a target date strategy have no choice other than the American Century TDFs.

**ANSWER**: SageView denies that the American Century TDFs were the only TDFs offered by the Plan during the putative class period through January 5, 2025. The remaining allegations in Paragraph 106 assert argument to which no response is required. To the extent a response is required, SageView denies those allegations in Paragraph 106.

107. SageView provided the Plan Committee with all the necessary information to do the required IPS analysis through quarterly Plan Investment Reviews throughout the Class Period.

**ANSWER**: Paragraph 107 asserts argument to which no response is required. To the extent a response is required, SageView admits it provided the Plan Committee with all

information and analyses it was required to provide. SageView denies any remaining allegations in Paragraph 107.

108. These Plan investment reviews by SageView provided information from December 2018 through June 2024 that illustrated that American Century TDFs had many red flags with regard to its suitability for its Plan population and demographics, its design and structure, and its performance based on numerous quantitative factors outlined in the 2013 and 2022 IPSs.

**ANSWER**: SageView denies the allegations in Paragraph 108.

109. Nevertheless, both SageView and the Plan Committee ignored these issues and did not conduct any TDF suitability analyses or comparative TDF analyses from December 2018 until June 2024, or for over five and half years. Even then, it took almost another two years, until January 6, 2025, for the American Century TDFs to be replaced by the Black Rock TDFs.

**ANSWER**: SageView denies the allegations in Paragraph 109.

110. If a proper TDF suitability analysis and a comparative TDF analysis had been completed in early 2019 as it should have been based on the January 2013 IPS, the American Century TDFs could have been replaced by any number of many meaningful benchmark TDFs, including the Vanguard TDFs, T. Rowe Price TDFs, or the Black Rock TDFs (which was actually selected and became the Plan TDF on January 6, 2025).

**ANSWER**: SageView lacks information and knowledge as to what definitions of "proper TDF suitability analysis" and "comparative TDF analysis" Plaintiffs ascribe to those terms as used in Paragraph 110 and, therefore, cannot form a response as to those allegations. SageView admits that it consistently worked with the Committee to monitor the Plan's investment options. SageView denies any remaining allegations in Paragraph 110.

111.     All of these comparator TDFs above were selected as "meaningful benchmarks" by SageView because these comparators have "similar aims, risks, and potential rewards" as the American Century TDFs. *See Nelson v. F. Hoffman-La Roche, Inc.*, No. 21-cv-10074-TLT, 2022 WL 19765995, at *1 (N.D. Cal. Nov. 2, 2022).

**ANSWER**:     SageView denies the allegations in Paragraph 111.

112.     Although each of these comparators had different TDF glide paths, different percentage of various asset classes, different retirement strategies, and various amounts of passive and active underlying funds, SageView considered them to be "meaningful benchmarks" because SageView still believed they had "similar aims, risks, and potential rewards" as the American Century TDFs to be considered as replacements for the American Century TDFs.

**ANSWER**:     SageView denies the allegations in Paragraph 112.

113.     Indeed, the Black Rock TDFs which replaced the American Century TDFs, albeit on an untimely basis, became the Plan QDIA just like the American Century TDFs.

**ANSWER**:     SageView admits that the BlackRock TDFs replaced the American Century TDFs as the Plan's QDIA at some point in time. SageView denies the remaining allegations in Paragraph 113.

114.     Even though by as early as September 2021, SageView reported that at least one of the American Century Target Date funds had not passed IPS scoring criteria, that vintage of the American Century Date fund was not placed on the Watch List.

**ANSWER**:     SageView states that Paragraph 114 purports to characterize the content of a written document that speaks for itself. SageView denies the allegations in Paragraph 114 to the extent the allegations are inconsistent with that document. Responding further, SageView admits that target date funds are offered as a suite, and that the Committee did not place a single vintage

of the American Century Target Date funds on the Watch List in September 2021. SageView denies the remaining allegations in Paragraph 114.

115.    Again and again, between September 2021 and June 2024, when American Century Target Date funds had not passed IPS scoring criteria, they were also not placed on the Watch List like that should have been.

**ANSWER**:    SageView denies the allegations in Paragraph 115.

116.    Indeed, one of the American Century Target Date Funds (American Century 2065 TDF) fell into the Fourth Quartile in December 2023, which required an immediate analysis of whether it should be removed under the September 2022 IPS, and this was not done by the Plan Committee or recommended by SageView.

**ANSWER**:    SageView denies the allegations in Paragraph 116.

117.    It was not until May 31, 2024, that SageView reluctantly recommended to the Plan Committee to a deeper dive into whether to keep the American Century Funds as the Plan's QDIA and TDF series.

**ANSWER**:    SageView admits that, in May 2024, it recommended the Committee should perform a "deeper dive" into the American Century TDFs. Responding further, SageView states that any characterization regarding SageView's alleged "reluctance" surrounding this decision asserts argument to which no response is required. To the extent a response is required, SageView denies those allegations. SageView further admits that the Committee then performed a "deeper dive" into the American Century TDFs. SageView denies any remaining allegations in Paragraph 117.

118.    Remarkably, and even though starting in September 2021 the American Century TDFs failed IPS scoring criteria according to SageView, in September 2023, when only four out

of nine of the American Century Target date funds passe IPS scoring criteria," SageView simply "attributed the drop in rankings to the drop off of good years in the 3-and 5-year scoring," and took no further action.

**ANSWER**:    Paragraph 118 asserts argument to which no response is required. Paragraph 118 also purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 118.

119.    Yet, a mere eight months later, according to the May 31, 2024 Plan Committee Minutes, SageView pointed that now only "[t]wo out of nine of the American Century Target Date Funds passed their IPS scoring criteria, with the series receiving an average SageView ranking at the 58th percentile. Mr. Gratton [from SageView] then briefly reviewed potential share class adjustments that could be implemented in the future." Critically, SageView did not recommend any replacements for the American Century TDF funds.

**ANSWER**:    Paragraph 119 assert argument to which no response is required. Paragraph 119 also purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 119.

120.    Instead, and reluctantly, SageView "recommended that the Committee do a deeper dive into alternative target date options by soliciting and reviewing proposals from other providers at a future meeting."

**ANSWER**:    Paragraph 120 asserts argument to which no response is required. Paragraph 120 also quotes and purports to describe the content of a written document that speaks for itself.

SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 120.

121.    At the August 13, 2024 Plan Committee Meeting, the Plan Committee heard presentations from Vanguard, Black Rock, and T. Rowe Price about their target date funds.

**ANSWER**:    SageView admits the allegations in Paragraph 121.

122.    At a Plan Committee meeting on September 11, 2024, the Plan Committee heard presentations from the American Century about their target date funda in the Plan.

**ANSWER**:    SageView admits the allegations in Paragraph 122.

123.    After the American Century Fund presentation on September 11, 2024, the Plan Committee had a discussion about the presentations and concluded that, "that American Century has demonstrated underperformance over a five-year period and its glidepath exposes participants to more risk in retirement. Thus, they believed it was in participants' best interests to select a new TDF provider."

**ANSWER**:    Paragraph 123 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 123.

124.    This same analysis could have been completed at any other time in the Class Period and the same conclusion should have been reached. The Plan Committee came to this conclusion five to six years too late.

**ANSWER**:    SageView denies the allegations in Paragraph 124.

125.    The Plan Committee also concluded on September 11, 2024, that "[b]ased upon the three candidates who made presentations to the Committee in August, T. Rowe Price appeared to

be the most aggressive and Vanguard offered only a passively managed TDF option. They agreed that BlackRock appears to have the right balance of risk and stability for the Plan population."

**ANSWER**:    Paragraph 125 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 125.

126.    At the same meeting, SageView maintained "that if Sage View was retained as an ERISA 3(38) investment manager for the TDF funds in lieu of its current ERISA 3(21) co-fiduciary status, the T. Rowe Price investment fees would decrease from 19 basis points to 14 basis points and the BlackRock investment fees would decrease from 28 basis points to 21 basis points."

**ANSWER**:    Paragraph 126 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 126.

127.    The change would also garner SageView more money "by approximately $75,000 if they accepted ERISA 3(38) responsibility just for the Target Date Funds, or approximately $140,000 if they accepted ERISA 3(38) responsibility for all of the Plan's investments."

**ANSWER**:    Paragraph 127 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 127.

128.    The Committee, after discussion, voted to engage Sage View as an ERISA 3(38) investment manager for the TDFs and select the BlackRock series of TDFs as the Plan's new investment default and TDF option.

**ANSWER**:    Paragraph 128 purports to describe the content of a written document, which speaks for itself. SageView denies any allegations that are inconsistent with that document. SageView denies any remaining allegations in Paragraph 128.

129.    These actions in September 2024 make SageView and Plan Committee's previous findings as recently as March 13, 2024 to keep the American Century Funds lack any credibility or legitimacy with regard to the reasonableness of the American Century TDF being a Plan investment or QDIA, and establishes that the Plan Committee was not paying sufficient attention to TDF investment issues.

**ANSWER**:    SageView denies the allegations in Paragraph 129.

130.    There is no reasonable or prudent reason why the Plan Committee waited so long to replace the American Century Funds, to the point where only 2 of 10 American Century Funds passed the SageView scoring criteria by May 31, 2024.

**ANSWER**:    SageView denies the allegations in Paragraph 130.

131.    A prudent plan fiduciary would have replaced these American Century TDFs substantially earlier, especially since according to both the January 2013 and September 2022 IPSs that "[n]o less frequently than annually, the Committee will evaluate the investment results of the investment options.

**ANSWER**:    SageView denies the allegations in Paragraph 131.

132.    For TDFs, according the September 2022 IPS, this means that "the asset allocation and glide path should be evaluated taking into account factors such as generally accepted investment theories and prevailing investment industry practices, and goals of the plan, the philosophy of the fiduciaries regarding asset class diversification and the desired relationship of risk (or volatility) and potential return, and the needs and abilities of the participants and

beneficiaries. The Committee . . . expects to engage in a process to identify and consider those goals, preferences, needs and abilities and to select a default investment consistent with that analysis." September 2022 IPS at 8. This was not done.

**ANSWER**: The first sentence of Paragraph 132 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 132.

133. It appears also that SageView was consistently manipulating its IPS scoring criteria in its quarterly Plan Investment Reviews to the Plan Committee from as early as its Plan Investment review of December 31, 2018 to May 31, 2024, to make sure during this same period of time (from 2021 to 2023) that many of the vintages of the American Century Fund were just barely staying in the Second Quartile (i.e., 46% to 50%), so they would not have to be placed on the Watch List under the Plan IPSs.

**ANSWER**: SageView denies the allegations in Paragraph 133.

134. Had SageView used an appropriate scoring methodology for the American Century Funds, there would not have been red flags for the Plan Committee that they needed to replace the American Century TDFs at the beginning of the Class Period.

**ANSWER**: SageView denies the allegations in Paragraph 134.

135. The Evergy Plan offered the XI version of the American Century TDFs from at least January 2019 through January 2025.

**ANSWER**: SageView denies the allegations in Paragraph 135.

136.     The Plan Committee was responsible for crafting the Plan lineup and could have chosen other target date families than the American Century TDFs at the beginning of the Class Period in January 2019.

**ANSWER**:     SageView admits that the Committee was responsible for selecting Plan investment options and that the Committee could have selected other prudent target date families than the American Century TDFs. SageView denies any remaining allegations in Paragraph 136.

137.     The Plan Committee was responsible for following the evaluation criteria and methodology set out in the both the January 2013 and September 2022 Plan IPSs, but failed to do so.

**ANSWER**:     SageView denies the allegations in Paragraph 137.

138.     In other words, the Plan Committee deviated from the "guidelines concerning the selection, evaluation, and monitoring of Plan investment options" in the January 2013 and September 2022 Plan IPSs. *See Bracalente*, 2024 WL 2274523, at * 2.

**ANSWER**:     SageView denies the allegations in Paragraph 138.

139.     As a result, numerous defects in their fiduciary process, the Plan Committee did not remove the American Century TDFs from the Plan until January 6, 2025, almost six years later than they should have had if the Plan Committee had followed their Plan IPS.

**ANSWER**:     SageView admits that the American Century TDFs were removed from the Plan's investment lineup on or around January 6, 2025. SageView denies the remaining allegations in Paragraph 139.

140.     The Plan Committee engaged in at least five major Plan fiduciary process errors during the Class Period that deviated from "guidelines concerning the selection, evaluation, and monitoring of Plan investment options" in the January 2013 and September 2022 Plan IPSs:

a.      uncritically relied on the Plan co-fiduciary and investment advisor and consultant, SageView, who unreasonably and imprudently favored American Century TDFs to be Plan investments and qualified default investment alternatives ("QDIAs") from the beginning of the Class Period until January 5, 2025;

b.      failed to follow its investment policy statements ("IPSs") and Plan Committee practice which required Plan funds falling into the third quartile of peer rankings to immediately to be placed on a Watch List;

c.      unreasonably provided a conservative equity allocation to young participants who had a long-term investment horizon;

d.      did not undertake any TDF or QDIA suitability analysis with regard to the American Century Funds from December 2018 until June 2024; and e. waited almost two years from the time that a majority of the American Century TDFs were on the Watch List (March 2023) before replacing them on January 6, 2025.

**ANSWER**:      SageView denies the allegations in Paragraph 140 and all subparagraphs thereunder.

141.   Through at least these five major fiduciary process defects, which amount to objectively unreasonable and imprudent conduct, Defendants breached their fiduciary duties of prudence by retaining and not removing the American Century TDFs from January 2019 until January 2025.

**ANSWER**:      SageView denies the allegations in Paragraph 141.

142.    Prudent alternative TDF options existed for the American Century TDFs –

"meaningful benchmarks" identified by the Plan investment consultant, SageView, that were more

suitable in terms of asset class coverage, glide paths, performance and category ranking, Sharpe

Ratios, risk v. return, net expense ratio, fund structure, underlying funds, and glidepath changes,

all criterion outlined in the Plan's January 2013 and September 2022 Plan IPSs.

**ANSWER**:    SageView denies the allegations in Paragraph 142.

143.    These "meaningful benchmark" TDFs identified by SageView included Vanguard

TDFs, T. Rowe Price TDFs, and Black Rock TDFs, among others.

**ANSWER**:    SageView admits that it evaluated many TDFs, including TDFs offered by

Vanguard, T. Rowe Price, and BlackRock. SageView denies any remaining allegations in

Paragraph 143.

144.    Each prudent alternative investment option was available to replace the American

Century TDFs at the beginning of the Class Period, if the Plan Committee had prudently followed

the IPS methodology for target date funds.

**ANSWER**:    SageView denies the allegations in Paragraph 144.

145.    Instead, the Plan Committee and SageView did not complete the necessary analysis

until September 2024.

**ANSWER**:    SageView denies the allegations in Paragraph 145.

146.    During the Class Period, Plaintiffs had no knowledge of Defendants' process for

selecting TDFs and for regularly monitoring them to ensure they remained prudent.

**ANSWER**:    SageView lacks sufficient information to form a response as to allegations

regarding Plaintiffs' personal knowledge of the TDF selection process. SageView therefore denies

the allegations in Paragraph 146 on that basis. SageView denies any remaining allegations in Paragraph 146.

147.    During the Class Period, Plaintiffs had no knowledge of how the performance of the TDFs compared to readily available prudent alternative investments and whether the American Century TDFs remained suitable given Plan demographics and other Plan features.

**ANSWER**:    SageView lacks sufficient information to form a response as to allegations regarding Plaintiffs' personal knowledge of TDF performance. SageView therefore denies the allegations in Paragraph 147 on that basis. SageView denies any remaining allegations in Paragraph 147.

148.    During the Class Period, Plaintiffs did not know about the availability of comparable investment options that Defendants failed to reasonably offer at the beginning of the Class Period in January 2019, because Defendants provided no suitability or comparative TDF information to allow Plaintiffs to evaluate and compare Defendants' potential TDF options.

**ANSWER**:    SageView lacks sufficient information to form a response as to allegations regarding Plaintiffs' personal knowledge about the alleged availability of comparable investment options. SageView therefore denies the allegations in Paragraph 148 on that basis. SageView denies any remaining allegations in Paragraph 148.

149.    Defendants were imprudent starting in January 2019 in retaining the American Century TDFs, and should have known from the information presented by SageView about the American Century TDFs' lack of suitability for the Plan demographics, its imprudent structure and plan design, and its poor, historical investment performance adjusted for risk.

**ANSWER**:    SageView denies the allegations in Paragraph 149.

150.    During the Class Period and because Defendants imprudently did not choose prudent, alternative TDFs at the beginning of the Class Period, Defendants caused unreasonable and unnecessary losses to Plaintiffs and Plan participants invested in the American Century TDFs in the tens of millions of dollars.

**ANSWER**:    SageView denies the allegations in Paragraph 150.

## CIRCUMSTANTIAL EVIDENCE OF IMPRUDENT FIDUCIARY PROCESS

151.    In addition to all this and other direct evidence of procedural defects, there is voluminous circumstantial factual allegations from which it may be reasonably inferred that the fiduciary process followed by Defendants was seriously flawed.

**ANSWER**:    SageView denies the allegations in Paragraph 151.

152.    For instances, with respect to investment returns, as discussed above, diligent investment professionals monitor the performance of their selected target date funds using appropriate industry-recognized "benchmarks" and prudently managed equivalents.

**ANSWER**:    Paragraph 152 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 152.

153.    A meaningful benchmark simply provides a sound basis for comparison. See *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). When making an investment-by-investment challenge, "there is no one-size-fits-all approach" in choosing a meaningful benchmark. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020).

**ANSWER**:    Paragraph 153 asserts legal conclusions to which no response is required. Paragraph 153 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 153 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 153.

154.     Additionally, no "circuit court ... has held that a market index can never serve as a meaningful benchmark." *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, at 2018 (6th Cir. 2024). In fact, the Eighth Circuit in *Braden v. Walmart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) "expressly held that market indices are appropriate meaningful points of comparison for passive funds." *Johnson*, 122 F.4th at 218.

**ANSWER**:     Paragraph 154 asserts legal conclusions to which no response is required. Paragraph 154 also purports to quote a judicial decision that speaks for itself. To the extent Paragraph 154 mischaracterizes, misrepresents, or misquotes the judicial decision, SageView denies those allegations. SageView denies any remaining allegations in Paragraph 154.

155.     The American Century TDFs underperformed their own benchmark, the S&P Target Date index, before and during the Class Period.

**ANSWER**:     SageView denies the allegations in Paragraph 155.

156.     For the three-year period ending on December 31, 2018, the American Century TDFs underperformed their S&P Benchmark:[1]

---

[1] The performance data presented herein is adjusted to eliminate discrepancies based on fees. Data for years prior to the launch of the XI share class comes from different classes of the same fund, but is adjusted upwards to account for the lower fees in the XI class.

| American Century TDF | 2018 AmCent TDF 3 Year Return | 2018 S&P Benchmark 3 Year Return | 2018 3 Year AmCent Underperformance |
|---|---|---|---|
| American Century 2025 XI | 4.60% | 5.46% | 0.87% |
| American Century 2030 XI | 4.82% | 5.77% | 0.94% |
| American Century 2035 XI | 5.08% | 6.09% | 1.00% |
| American Century 2040 XI | 5.45% | 6.32% | 0.87% |
| American Century 2045 XI | 5.79% | 6.51% | 0.71% |
| American Century 2050 XI | 6.00% | 6.68% | 0.68% |
| American Century 2055 XI | 6.14% | 6.82% | 0.68% |
| American Century 2060 XI | 6.14% | 6.95% | 0.81% |

**ANSWER**: SageView denies the allegations in Paragraph 156.

157. The same pattern of underperformance for the American Century TDFs continued after January 1, 2019:

| American Century TDF | AmCent Performance Since 1/1/2019 | S&P Benchmark Performance Since 1/1/2019 | AmCent Underperformance Since 1/1/2019 |
|---|---|---|---|
| American Century 2025 XI | 7.40% | 7.79% | 0.39% |
| American Century 2030 XI | 7.97% | 8.87% | 0.90% |
| American Century 2035 XI | 8.58% | 9.98% | 1.40% |
| American Century 2040 XI | 9.20% | 10.87% | 1.67% |
| American Century 2045 XI | 9.93% | 11.40% | 1.47% |
| American Century 2050 XI | 10.67% | 11.69% | 1.02% |
| American Century 2055 XI | 11.08% | 11.76% | 0.67% |
| American Century 2060 XI | 11.36% | 11.81% | 0.45% |

**ANSWER**: SageView denies the allegations in Paragraph 157.

158. Moreover, the underperformance of the American Century TDFs has become more severe since 2021:

| American Century TDF | AmCent Performance Since 1/1/2021 | S&P Benchmark Performance Since 1/1/2021 | AmCent Underperformance Since 1/1/2021 |
|---|---|---|---|
| American Century 2025 XI | 3.75% | 4.33% | 0.57% |
| American Century 2030 XI | 3.94% | 5.30% | 1.35% |
| American Century 2035 XI | 4.24% | 6.30% | 2.06% |
| American Century 2040 XI | 4.54% | 7.20% | 2.67% |
| American Century 2045 XI | 4.95% | 7.75% | 2.80% |
| American Century 2050 XI | 5.46% | 8.06% | 2.60% |
| American Century 2055 XI | 5.85% | 8.12% | 2.27% |
| American Century 2060 XI | 6.06% | 8.12% | 2.06% |
| American Century 2065 XI | 6.13% | 8.26% | 2.13% |

**ANSWER**:     SageView denies the allegations in Paragraph 158.

159.    In 2018, the largest TDF families in the marketplace (the "Large TDF Comparator Funds") are listed, with assets under management, in the following table:

| TDF Fund Family | Dec 2018 AUM |
|---|---|
| Vanguard Target Retirement Series | $ 396,175,296,240 |
| Fidelity Freedom Series | $ 84,729,035,081 |
| Capital American Target Date Retirement Series | $ 78,086,788,111 |
| T. Rowe Price Retirement Series | $ 30,368,625,484 |
| JPM SmartRetirement Series | $ 29,672,047,144 |
| Nuveen Lifecycle Series | $ 21,886,508,996 |
| BlackRock LifePath Index | $ 17,267,116,854 |
| Principal LifeTime Series | $ 13,487,459,129 |
| Nuveen Lifecycle Index Series | $ 12,184,480,741 |
| American Century One Choice Series | $ 7,084,048,834 |
| Fidelity Advisor Freedom Series | $ 5,526,751,117 |
| JPMorgan SmartRetirement Blend Series | $ 5,057,908,188 |

**ANSWER**:     SageView admits that the table in Paragraph 159 purports to show the assets under management of various suites of TDFs as of December 2018. SageView lacks sufficient

information to form a response as to the accuracy of those allegations and, therefore, denies the allegations on that basis. SageView denies any remaining allegations in Paragraph 159.

160. In addition to underperforming their benchmarks, the American Century TDFs have also underperformed compared to the Large TDF Comparator Funds during the three-year period ending December 31, 2018, and since 2019 and 2021:

| Three-Year Performance Before 12/31/2018 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| American Century TDF | AmCent Fund Perform. | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
| American Century 2025 XI | 4.60% | 5.21% | 6.12% | 5.73% | 4.97% | 5.76% | 5.03% | 6.19% | 5.73% |
| American Century 2030 XI | 4.82% | 5.64% | 6.92% | 6.40% | 5.38% | 6.22% | 5.09% | 6.53% | 6.07% |
| American Century 2035 XI | 5.08% | 6.07% | 7.44% | 6.67% | 5.45% | 6.69% | 5.33% | 6.69% | 6.41% |
| American Century 2040 XI | 5.45% | 6.41% | 7.61% | 6.53% | 5.71% | 7.11% | 5.44% | 6.88% | 6.74% |
| American Century 2045 XI | 5.79% | 6.63% | 7.78% | 6.52% | 5.67% | 7.23% | 5.52% | 6.89% | 6.79% |
| American Century 2050 XI | 6.00% | 6.66% | 7.82% | 6.56% | 5.64% | 7.35% | 5.60% | 6.89% | 6.77% |
| American Century 2055 XI | 6.14% | 6.68% | 7.81% | 6.53% | 5.65% | 7.45% | 5.64% | 6.87% | 6.77% |
| American Century 2060 XI | 6.14% | | 7.81% | 6.50% | | 7.53% | 5.59% | 6.80% | 6.77% |

| Performance Since 1/1/2019 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| American Century TDF | AmCent Fund Perform. | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
| American Century 2025 XI | 7.40% | 6.96% | 8.33% | 7.91% | 7.30% | 8.26% | 8.14% | 8.93% | 8.03% |
| American Century 2030 XI | 7.97% | 8.32% | 9.44% | 8.95% | 8.48% | 9.16% | 8.98% | 9.82% | 8.92% |
| American Century 2035 XI | 8.58% | 9.59% | 11.01% | 10.57% | 10.03% | 10.14% | 9.80% | 10.71% | 9.78% |

| American Century 2040 XI | 9.20% | 10.75% | 11.97% | 11.80% | 11.02% | 11.20% | 10.62% | 11.48% | 10.64% |
| American Century 2045 XI | 9.93% | **11.74%** | **12.19%** | **12.02%** | **11.71%** | **12.02%** | **11.23%** | **12.02%** | **11.46%** |
| American Century 2050 XI | 10.67% | **12.30%** | **12.25%** | **12.01%** | **11.81%** | **12.26%** | **11.70%** | **12.10%** | **11.73%** |
| American Century 2055 XI | 11.08% | **12.46%** | **12.23%** | **12.01%** | **11.82%** | **12.41%** | **11.87%** | **12.11%** | **11.71%** |
| American Century 2060 XI | 11.36% | **12.46%** | **12.20%** | **12.02%** | **11.81%** | **12.55%** | **12.00%** | **12.12%** | **11.72%** |
| American Century 2065 XI | 7.40% | 6.96% | **8.33%** | **7.91%** | 7.30% | **8.26%** | **8.14%** | **8.93%** | **8.03%** |

| Performance Since 1/1/2021 | | | | | | | | | |
| American Century TDF | AmCent Fund Perform. | BlackRock | American Funds | Fidelity Freedom | JPMorgan | Nuveen | Principal | T Rowe Price | Vanguard |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| American Century 2025 XI | 3.75% | 2.69% | 4.64% | 3.45% | 3.38% | 4.08% | 3.77% | 4.55% | 3.89% |
| American Century 2030 XI | 3.94% | 4.06% | 5.42% | 4.20% | 4.44% | 4.81% | 4.33% | 5.20% | 4.68% |
| American Century 2035 XI | 4.24% | 5.29% | 6.40% | 5.62% | 5.87% | 5.67% | 5.04% | 5.95% | 5.46% |
| American Century 2040 XI | 4.54% | 6.47% | 7.27% | 6.95% | 6.78% | 6.73% | 5.85% | 6.61% | 6.24% |
| American Century 2045 XI | 4.95% | 7.51% | 7.42% | 7.27% | 7.50% | 7.44% | 6.47% | 7.10% | 7.00% |
| American Century 2050 XI | 5.46% | 8.13% | 7.39% | 7.26% | 7.66% | 7.70% | 6.90% | 7.22% | 7.36% |
| American Century 2055 XI | 5.85% | 8.34% | 7.35% | 7.25% | 7.67% | 7.85% | 7.04% | 7.24% | 7.36% |
| American Century 2060 XI | 6.06% | 8.33% | 7.30% | 7.26% | 7.68% | 7.97% | 7.14% | 7.24% | 7.37% |
| American Century 2065 XI | 6.13% | 8.36% | 7.34% | 7.28% | | 8.16% | 7.13% | 7.49% | 7.39% |

**ANSWER**: SageView denies the allegations in Paragraph 160.

161.     All of the Large TDF Comparator Funds had similar structure, objectives, strategy, and risk profile to the American Century TDFs, and all were designed to provide essentially the same type of investment experience to plan participants: a long-term investment strategy based on holding a mix of stocks, bonds and other investments (this mix is called an asset allocation) that automatically changes over time as the participant ages.

**ANSWER**:     SageView denies the allegations in Paragraph 161.

162.     The Large TDF Comparator Funds were available to the Defendants to include as investment options for the Plan, and thousands of other ERISA plan fiduciaries selected these Large TDF Comparator Funds for their plans as well.

**ANSWER**:     SageView lacks sufficient information to form a response as to the allegations regarding other, unidentified ERISA plan fiduciaries and, therefore, denies those allegations on that basis. SageView denies any remaining allegations in Paragraph 162.

163.     Any reasonably prudent fiduciary determining which target date funds to offer the Plan's participants was or should have been aware of the Large TDF Comparator Funds, and should have compared the performance of the American Century TDFs to the performance of these comparator TDFs.

**ANSWER**:     Paragraph 163 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 163.

164.     All of these target date fund families were, like the American Century TDFs, included in the "Target Date" Morningstar category.

**ANSWER**:     SageView lacks sufficient information to form a response as to the allegations regarding other "target date fund families," and therefore, deny those allegations on that basis. SageView denies any remaining allegations in Paragraph 164.

165.    Morningstar, the most well respected and accepted financial industry fund database has created the Morningstar Lifetime Moderate Index category as the index category for target date funds.

**ANSWER**:    Paragraph 165 asserts argument and/or opinion regarding Morningstar's reputation to which no response is required. To the extent a response is required, SageView denies that the Morningstar Lifetime Moderate Index is a meaningful or appropriate comparator. SageView denies any remaining allegations in Paragraph 165.

166.    A Morningstar Category is assigned by placing funds into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . . Funds are placed in a category based on their portfolio statistics and compositions over the past three years. Analysis of performance and other indicative facts are also considered." *See* Morningstar's summary of the Northern Trust Focus 2045 Fund, filed in *Allegretti v. Walgreen Co. et al.*, No. 19-cv-05392 at Dkt. 43 ECF pg. 28 (N.D. Ill. Dec. 6, 2019). The analysis in Allegretti similarly deals with the Morningstar Lifetime Moderate Index category. *Id.*

**ANSWER**:    Paragraph 166 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 166.

167.    Specifically, Morningstar Categories group funds "into categories according to their actual investment style, not merely their stated investment objectives, nor their ability to generate a certain level of income. To ensure homogeneous groupings, Morningstar normally allocates funds to categories on the basis of their portfolio holdings. Several portfolios are taken

into account to ensure that the fund's real investment stance is taken into account." *See* https://lt.morningstar.com/1c6qh1t6k9/glossary/default.aspx?LanguageId=en-GB&group=M

**ANSWER**:    Paragraph 167 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 167.

168.    Morningstar categories are more reliable than simply comparing fund prospectuses, because Morningstar is a third party providing neutral information. Indeed, "Morningstar categories help investors and investment professionals make meaningful comparisons between funds." *See* https://sg.morningstar.com/sg/news/115635/morningstar-category-definition.aspx

**ANSWER**:    SageView denies the allegations in the first sentence of Paragraph 168. The remaining allegations in Paragraph 168 purport to quote from or characterize a written publication that speaks for itself. SageView denies any characterization contrary to the terms of that publication. SageView denies any remaining allegations in Paragraph 168.

169.    Morningstar is particularly meaningful here because the American Century target date funds use Morningstar data to provide publicly available information. *See* https://www.americancentury.com/invest/funds/one-choice-2045-portfolio/aroix/.

**ANSWER**:    SageView denies the allegations in Paragraph 169.

170.    For example, American Century's own dissemination of information explains that the Morningstar ratings for the 2045 vintage were only one star for the overall returns (out of 180 funds), three-year returns, five-year returns, and 10-year returns. *Id.*

**ANSWER**:    SageView denies the allegations in Paragraph 170.

171.    Additionally, the measurement of target date funds against prudently managed alternatives is critical given that these alternatives represent other target date funds available to the

plan, which may be a more appropriate choice to meet participants' retirement needs. 85. There was no shortage of prudent choices. Beginning in 1994, the market for target date funds exploded with numerous investment managers offering a variety of different target date funds (both mutual funds and CITs alike).

**ANSWER**:    Paragraph 171 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 171.

172.    By 2010, multiple investment firms and banks offered target date funds with established and consistent performance histories, stable and experienced management, and discrete changes to the underlying assets and allocations.

**ANSWER**:    SageView lacks sufficient information to form a response as to the allegations regarding which target date funds were offered by unidentified "investment firms and banks" and, therefore, denies those allegations on that basis. SageView denies any remaining allegations in Paragraph 172.

173.    Established target date investment managers include, but are not limited to, American Funds, Callan GlidePath® Funds, MoA Clear Passage Funds, Natixis Funds, Nuveen Lifecycle Funds, T. Rowe Price Retirement Funds, and Voya Target Retirement Funds. T. Rowe has offered target date funds for more than 20 years while American offered target date funds for approximately 15 years, providing stable investment returns to 401(k) plan participants. The T. Rowe Price Retirement Target Date A Series, the American Funds Target Date R6 Series, the Callan GlidePath® Target Date R6 Series, the MoA Clear Passage Target Date Series, the Natixis Target Date N Series, the Nuveen Lifecycle Target Date R6 Series and Voya Target Date CIT Series will all be referred to as the "Morningstar Comparator Funds."

**ANSWER**: SageView admits that Paragraph 173 purports to identify various TDF investment managers and purported "comparator" funds, but SageView denies any of the funds identified in Paragraph 173 are meaningful benchmarks or appropriate comparators. SageView denies any remaining allegations in Paragraph 173.

174. The Morningstar Comparator Funds are grouped in the same Morningstar Category as the American Century Target Date Series.

**ANSWER**: SageView admits that Paragraph 174 purports to describe supposed "comparator" funds, but SageView denies any of the funds are meaningful benchmarks or appropriate comparators. SageView denies any remaining allegations in Paragraph 174.

175. A closer look at the American Century Target Date Series and Morningstar Comparator Funds further demonstrate they had similar underlying investments and strategies.

**ANSWER**: SageView denies the allegations in Paragraph 175.

176. The American Century Target Date Series and each of the Morningstar Comparator Funds are Large Cap Blend series, meaning their underlying holdings are a combination of active and passive investments.

**ANSWER**: SageView denies the allegations in Paragraph 176.

177. The American Century Target Date Series and all of the Morningstar Comparator Funds have a "through" glidepath.[2]

---

[2] *See* https://res.americancentury.com/docs/a-auth/one-choice-target-date-portfolios-plan-sponsor-brochure?cpg=true ; https://capitalgroup.prospectus-express.com/summary.asp?doctype=pros&cid=capgroup&fid=02630T365 ; https://doc.morningstar.com/LatestDoc.aspx?clientid=greatgray&key=1cd9aa63b2372cae&documenttype=124&sourceid=260&secid=FOUSA06U3N ; https://moafunds.com/funds/target-date/clear-passage-2045 and https://moafunds.com/documents/fs/MoA-Clear-Passage-2045-Factsheet.pdf ; https://www.im.natixis.com/en-us/products/mutual-funds/natixis-target-retirement-funds#key ; https://www.nuveen.com/en-us/mutual-funds/nuveen-lifecycle-2045-fund?shareclass=I ; https://prospectus-express.broadridge.com/summary.asp?doctype=pros&clientid=trowepll&fundid=74149P481 ; https://individuals.voya.com/product/mutual-fund/profile/voya-target-retirement-2045-fund

**ANSWER**:    SageView denies the allegations in Paragraph 177.

178.    While one or two years of underperformance or outperformance might not cause a prudent fiduciary to question investment options, the American Century TDFs have been consistently underperforming for almost ten years, as they consistently failed to meet their own benchmark and numerous other TDF families had better performance over almost ten years.

**ANSWER**:    SageView denies the allegations in Paragraph 178.

179.    The 2045 vintage is just one good demonstration of the American Century Target Date Series and the Morningstar Comparator Funds' asset allocations because the target date is neither too close nor too distant. The asset allocation is sufficiently similar across all funds, where U.S. Equities are the largest percentage of holdings, non-U.S. equities range from 20.07-29.57% of holdings, and the remaining holding are Fixed Income (or bonds), Cash investments, and less than one percent of "other" and "not classified" investments:[3]

| | U.S. Equity | Non-U.S. Equity | Fixed Income | Other | Cash | Not Classified |
|---|---|---|---|---|---|---|
| **American Century 2045 TDFs**[4] | 45.64% | 21.19% | 31.19% | 0.04% | 1.7% | 0.24% |
| **Natixis Target Retirement 2045**[5] | 54.6% | 26.67% | 14.11% | 0.25% | 4.33% | N/A |
| **Nuveen Lifecycle 2045**[6] | 55.71% | 29.17% | 13.43% | 0.02% | 1.65% | N/A |

---

[3] Similar categorial information for the 2045 Callan GP series was not found, however the asset allocation is as follows: Bank Loan 0.51%, High Yield 0.51%, Real Asset 8.31%, Dom Lg Cap Stks 47.10%, Dom Sm/Mid Cap Stks 10.58%, Developed Non-U.S. 26.92%, Dev Non-U.S. Passive 2.01%. *See* https://doc.morningstar.com/LatestDoc.aspx?clientid=greatgray&key=1cd9aa63b2372cae&d ocumenttype=124&sourceid=260&secid=FOUSA06U3N

[4] *See* https://www.morningstar.com/funds/xnas/aroix/portfolio

[5] *See* https://www.morningstar.com/funds/xnas/nsfjx/portfolio

[6] *See* https://www.morningstar.com/funds/xnas/tlxix/portfolio

| | U.S. Equity | Non-U.S. Equity | Fixed Income | Other | Cash | Not Classified |
|---|---|---|---|---|---|---|
| **American Funds 2045**[7] | 59.24% | 25.84% | 10.05% | 0.4% | 4.34% | 0.14% |
| **MoA Clear Passage 2045**[8] | 62.32% | 20.07% | 13.34% | 0.16% | 4.11% | N/A |
| **Voya Target Retirement 2045**[9] | 60.18% | 29.57% | 10.98% | 0.04% | -0.78% | 0.01 |
| **T. Rowe Price Retirement 2045**[10] | 65.6% | 28.66% | 2.6% | 0.61% | 2.51% | 0.02 |

> **ANSWER**: SageView denies the allegations in Paragraph 180.

180. A prudent fiduciary should have used some or all of these benchmarks, or substantially similar benchmarks (as discussed below), to evaluate the performance of the American Century Target Date Series as early as the inception of the Class Period, or sooner, and on an ongoing basis thereafter.

> **ANSWER**: SageView denies the allegations in Paragraph 180.

181. The information in the charts below is based on the total return, meaning that the fees paid for the fund's maintenance and management are not factored into their performance. However, when taking into account total returns below, the Morningstar Comparator Funds were the most cost-effective.

> **ANSWER**: SageView denies the allegations in Paragraph 181.

---

[7] *See* https://www.morningstar.com/funds/xnas/aahtx/portfolio

[8] *See* https://www.morningstar.com/funds/xnas/murmx/portfolio

[9] *See* https://www.morningstar.com/funds/xnas/irspx/portfolio

[10] *See* https://www.morningstar.com/funds/xnas/trrkx/portfolio

182. In the chart below, the American Century TDFs (highlighted in yellow), consistently underperformed compared to the Morningstar Comparator Funds (in red text) in their Morningstar Categories and their Morningstar benchmarks (in bold) on a 3-year average basis at the start of the Class Period and continued to underperform throughout the Class Period. In fact, the chart below demonstrates that, in 2019, the 2030-2060 vintages of the American Century TDFs underperformed against the Morningstar Comparator Funds' corresponding vintages 36 out of 41 instances (88%). In 2021, the same vintages underperformed against the Morningstar Comparator Funds' corresponding vintages in all 49 instances (100%). In 2023 and 2024, the 2030-2065 vintages of the American Century TDFs underperformed against the Morningstar Comparator Funds' corresponding vintages in all 55 instances (100%), and in all 56 instances (100%), respectively. In total and since 2017, the American Century TDFs underperformed the Morningstar Comparator Funds on a 3-year lookback period in 196 out of 201 instances, or 98% of the time.

| | Three-Year Return (Annualized) | | | |
| Investment and Benchmark | 1/1/2017 - 12/31/2019 | 1/1/2019 - 12/31/2021 | 1/1/2021 - 12/31/2023 | 1/1/2022 - 12/31/2024 |
|---|---|---|---|---|
| American Century Retirement 2030 Trust Class XI | 8.64 | 14.30 | 2.29 | 1.68 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 10.86 | 16.09 | 3.47 | 2.77 |
| Callan GlidePath® 2030 Fund CL R6 | 10.56 | 17.62 | 4.85 | 3.11 |
| MoA Clear Passage 2030 Fund | 9.77 | 16.22 | 4.49 | 3.23 |
| Natixis Target Retirement 2030 N | N/A | 16.31 | 3.19 | 2.43 |
| Nuveen Lifecycle 2030 R6 | 10.34 | 15.61 | 2.64 | 2.31 |
| T. Rowe Price Retirement 2030 Tr-A | 11.26 | 17.34 | 3.23 | 2.45 |
| Voya Target Retirement 2030 Tr Comps CIT | 10.12 | 16.46 | 2.82 | 1.98 |
| | | | | |
| Benchmark: Morningstar Lifetime Mod 2030 TR USD | 10.01 | 15.47 | 1.27 | 0.40 |
| | | | | |
| American Century Retirement 2035 Trust Class XI | 9.25 | 15.42 | 2.49 | 1.82 |
| | | | | |
| American Funds 2035 Trgt Date Retire R6 | 12.28 | 18.75 | 4.20 | 3.35 |

| | | | | |
|---|---|---|---|---|
| Callan GlidePath® 2035 Fund CL R6 | 10.95 | 18.60 | 5.23 | 3.50 |
| MoA Clear Passage 2035 Fund | 10.28 | 17.94 | 5.42 | 3.98 |
| Natixis Target Retirement 2035 N | N/A | 17.82 | 3.95 | 2.90 |
| Nuveen Lifecycle 2035 R6 | 11.07 | 17.00 | 3.29 | 2.88 |
| T. Rowe Price Retirement 2035 Tr-A | 11.87 | 18.68 | 3.86 | 2.99 |
| Voya Target Retirement 2035 Tr Comps CIT | 10.89 | 18.10 | 3.83 | 2.85 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **10.76** | **16.60** | **2.38** | **1.34** |
| | | | | |
| American Century Retirement 2040 Trust Class XI | 9.94 | 16.54 | 2.63 | 2.01 |
| | | | | |
| American Funds 2040 Trgt Date Retire R6 | 12.76 | 19.96 | 4.75 | 4.14 |
| Callan GlidePath® 2040 Fund CL R6 | 11.22 | 19.37 | 5.61 | 4.02 |
| MoA Clear Passage 2040 Fund | 10.32 | 19.10 | 6.45 | 4.78 |
| Natixis Target Retirement 2040 N | N/A | 18.70 | 4.48 | 3.48 |
| Nuveen Lifecycle 2040 R6 | 11.72 | 18.36 | 4.09 | 3.61 |
| T. Rowe Price Retirement 2040 Tr-A | 12.36 | 19.80 | 4.35 | 3.47 |
| Voya Target Retirement 2040 Tr Comps CIT | 11.30 | 19.70 | 4.75 | 3.54 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **11.24** | **17.50** | **3.51** | **2.40** |
| | | | | |
| American Century Retirement 2045 Trust Class XI | 10.62 | 17.75 | 2.90 | 2.28 |
| | | | | |
| American Funds 2045 Trgt Date Retire R6 | 12.96 | 20.32 | 4.83 | 4.23 |
| Callan GlidePath® 2045 Fund CL R6 | 11.33 | 19.77 | 5.68 | 4.26 |
| MoA Clear Passage 2045 Fund | 10.34 | 19.38 | 6.78 | 5.08 |
| Natixis Target Retirement 2045 N | N/A | 19.67 | 4.97 | 3.87 |
| Nuveen Lifecycle 2045 R6 | 12.05 | 19.63 | 4.63 | 3.98 |
| T. Rowe Price Retirement 2045 Tr-A | 12.59 | 20.49 | 4.80 | 3.90 |
| Voya Target Retirement 2045 Tr Comps CIT | 11.52 | 20.65 | 5.40 | 4.15 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **11.42** | **17.99** | **4.25** | **3.19** |
| | | | | |
| American Century Retirement 2050 Trust Class XI | 11.15 | 18.95 | 3.28 | 2.62 |
| | | | | |
| American Funds 2050 Trgt Date Retire R6 | 13.11 | 20.53 | 4.75 | 4.20 |

| | | | | |
|---|---|---|---|---|
| Callan GlidePath® 2050 Fund CL R6 | 11.33 | 19.79 | 5.75 | 4.47 |
| MoA Clear Passage 2050 Fund | 10.26 | 19.53 | 6.92 | 5.29 |
| Natixis Target Retirement 2050 N | N/A | 19.80 | 4.94 | 3.87 |
| Nuveen Lifecycle 2050 R6 | 12.18 | 19.96 | 4.81 | 4.14 |
| T. Rowe Price Retirement 2050 Tr-A | 12.58 | 20.53 | 4.88 | 4.03 |
| Voya Target Retirement 2050 Tr Comps CIT | 11.58 | 20.72 | 5.33 | 4.25 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **11.43** | **18.09** | **4.52** | **3.54** |
| | | | | |
| American Century Retirement 2055 Trust Class XI | 11.34 | 19.43 | 3.56 | 2.98 |
| | | | | |
| American Funds 2055 Trgt Date Retire R6 | 13.11 | 20.54 | 4.56 | 4.15 |
| Callan GlidePath® 2055 Fund CL R6 | 11.30 | 19.84 | 5.76 | 4.46 |
| MoA Clear Passage 2055 Fund | 10.17 | 19.73 | 6.97 | 5.34 |
| Natixis Target Retirement 2055 N | N/A | 19.68 | 5.05 | 4.05 |
| Nuveen Lifecycle 2055 R6 | 12.27 | 20.10 | 4.89 | 4.23 |
| T. Rowe Price Retirement 2055 Tr-A | 12.60 | 20.53 | 4.87 | 4.04 |
| Voya Target Retirement 2055 Tr Comps CIT | 11.68 | 20.84 | 5.42 | 4.36 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **11.41** | **18.05** | **4.50** | **3.54** |
| | | | | |
| American Century Retirement 2060 Trust Class XI | 11.50 | 19.86 | 3.71 | 3.12 |
| | | | | |
| American Funds 2060 Trgt Date Retire R6 | 13.05 | 20.51 | 4.62 | 4.14 |
| Callan GlidePath® 2060 Fund CL R6 | 11.37 | 19.89 | 5.76 | 4.48 |
| MoA Clear Passage 2060 Fund | N/A | 19.99 | 7.19 | 5.44 |
| Natixis Target Retirement 2060 N | N/A | 20.22 | 5.32 | 4.15 |
| Nuveen Lifecycle 2060 R6 | 12.34 | 20.34 | 4.97 | 4.29 |
| T. Rowe Price Retirement 2060 Tr-A | 12.56 | 20.55 | 4.88 | 4.02 |
| Voya Target Retirement 2060 Tr Comps CIT | 11.62 | 21.04 | 5.45 | 4.30 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **11.37** | **17.95** | **4.41** | **3.45** |
| | | | | |
| American Century Retirement 2065 Trust Class XI | N/A | N/A | 3.72 | 3.21 |
| | | | | |
| American Funds 2065 Trgt Date Retire R6 | N/A | N/A | 4.65 | 4.14 |

| | | | | |
|---|---|---|---|---|
| Callan GlidePath® 2065 Fund CL R6 | N/A | N/A | 5.77 | 4.48 |
| MoA Clear Passage 2065 Fund | N/A | N/A | 7.40 | 5.70 |
| Natixis Target Retirement 2065 N | N/A | N/A | N/A | 4.21 |
| Nuveen Lifecycle 2065 R6 | N/A | N/A | 5.15 | 4.42 |
| T. Rowe Price Retirement 2065 Tr-A | N/A | N/A | 5.16 | 4.03 |
| Voya Target Retirement 2065 Tr Comps CIT | N/A | N/A | 5.42 | 4.37 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2065 TR USD** | **N/A** | **N/A** | **4.31** | **3.35** |

**ANSWER**:      SageView denies the allegations within the first sentence of Paragraph 182. The remaining allegations in Paragraph 182 assert argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 182.

183.    Further, the charts above demonstrate that the American Century TDFs underperformed their Morningstar benchmarks on a 3-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period. More specifically, 2030-2065 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 3-year average basis in every instance in 2019, four out of seven instances in 2021, and six out of eight instances in 2023 and 2024.

**ANSWER**: SageView denies the allegations within the first sentence of Paragraph 183. The remaining allegations in Paragraph 183 assert argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 183.

184.    As seen in the chart below, the Challenged Funds (in yellow) underperformed compared to the peers (in red text) in their Morningstar Categories and their Morningstar benchmarks on a 5-year average basis before the start of the Class Period and continued to underperform throughout the Class Period.

**ANSWER**:      SageView denies the allegations in Paragraph 184.

185.     Specifically, the chart below demonstrates that, in 2019, the 2030-2060 vintages of the American Century TDFs underperformed against the Morningstar Comparator Funds' corresponding vintages 35 out of 35 instances (100%).

**ANSWER**:     Paragraph 185 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 185.

186.     In 2021, the same vintages underperformed against the Morningstar Comparator Funds' corresponding vintages in 39 out of 41 instances (95%).

**ANSWER**:     Paragraph 186 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 186.

187.     In 2023 and 2024, the same vintages underperformed against the Morningstar Comparator Funds' corresponding vintages in all 49 instances (100%). In total, and since 2015, the American Century TDFs underperformed the Morningstar Comparator Funds on a 5-year lookback period in 172 out of 174 instances, or 99% of the time.

| | Five-Year Return (Annualized) | | | |
| Investment and Benchmark | 1/1/2015 - 12/31/2019 | 1/1/2017 - 12/31/2021 | 1/1/2019 - 12/31/2023 | 1/1/2020 - 12/31/2024 |
|---|---|---|---|---|
| American Century Retirement 2030 Trust Class XI | 6.27 | 10.00 | 7.61 | 5.72 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 8.07 | 12.16 | 8.90 | 7.18 |
| Callan GlidePath® 2030 Fund CL R6 | 8.05 | 12.51 | 9.92 | 7.90 |
| MoA Clear Passage 2030 Fund | 7.88 | 11.23 | 9.21 | 7.21 |
| Natixis Target Retirement 2030 N | N/A | N/A | 8.92 | 6.92 |
| Nuveen Lifecycle 2030 R6 | 7.67 | 11.35 | 8.48 | 6.41 |
| T. Rowe Price Retirement 2030 Tr-A | 8.25 | 12.64 | 9.39 | 7.21 |
| Voya Target Retirement 2030 Tr Comps CIT | 7.47 | 11.74 | 8.61 | 6.71 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2030 TR USD** | **7.28** | **11.07** | **7.44** | **5.15** |
| American Century Retirement 2035 Trust Class XI | 6.69 | 10.76 | 8.22 | 6.17 |

| | | | | |
|---|---|---|---|---|
| American Funds 2035 Trgt Date Retire R6 | 8.99 | 13.97 | 10.39 | 8.43 |
| Callan GlidePath® 2035 Fund CL R6 | 8.25 | 13.09 | 10.51 | 8.48 |
| MoA Clear Passage 2035 Fund | 8.28 | 12.22 | 10.28 | 8.33 |
| Natixis Target Retirement 2035 N | N/A | N/A | 9.83 | 7.67 |
| Nuveen Lifecycle 2035 R6 | 8.11 | 12.27 | 9.38 | 7.22 |
| T. Rowe Price Retirement 2035 Tr-A | 8.64 | 13.55 | 10.24 | 8.05 |
| Voya Target Retirement 2035 Tr Comps CIT | 7.91 | 12.86 | 9.77 | 7.87 |
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **7.82** | **11.85** | **8.41** | **6.04** |
| American Century Retirement 2040 Trust Class XI | 7.14 | 11.57 | 8.80 | 6.67 |
| American Funds 2040 Trgt Date Retire R6 | 9.30 | 14.75 | 11.17 | 9.40 |
| Callan GlidePath® 2040 Fund CL R6 | 8.35 | 13.55 | 11.02 | 9.08 |
| MoA Clear Passage 2040 Fund | 8.29 | 12.79 | 11.19 | 9.36 |
| Natixis Target Retirement 2040 N | N/A | N/A | 10.48 | 8.40 |
| Nuveen Lifecycle 2040 R6 | 8.51 | 13.17 | 10.34 | 8.17 |
| T. Rowe Price Retirement 2040 Tr-A | 8.93 | 14.31 | 10.93 | 8.80 |
| Voya Target Retirement 2040 Tr Comps CIT | 8.21 | 13.77 | 10.83 | 8.94 |
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **8.15** | **12.42** | **9.3** | **6.98** |
| American Century Retirement 2045 Trust Class XI | 7.59 | 12.42 | 9.48 | 7.25 |
| American Funds 2045 Trgt Date Retire R6 | 9.45 | 15.02 | 11.35 | 9.60 |
| Callan GlidePath® 2045 Fund CL R6 | 8.41 | 13.73 | 11.26 | 9.34 |
| MoA Clear Passage 2045 Fund | 8.30 | 12.91 | 11.43 | 9.65 |
| Natixis Target Retirement 2045 N | N/A | N/A | 11.11 | 8.93 |
| Nuveen Lifecycle 2045 R6 | 8.76 | 13.85 | 11.08 | 8.86 |
| T. Rowe Price Retirement 2045 Tr-A | 9.08 | 14.73 | 11.43 | 9.33 |
| Voya Target Retirement 2045 Tr Comps CIT | 8.35 | 14.25 | 11.54 | 9.65 |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **8.26** | **12.70** | **9.84** | **7.63** |
| American Century Retirement 2050 Trust Class XI | 7.93 | 13.18 | 10.18 | 7.89 |

| | | | | |
|---|---|---|---|---|
| American Funds 2050 Trgt Date Retire R6 | 9.55 | 15.17 | 11.41 | 9.64 |
| Callan GlidePath® 2050 Fund CL R6 | 8.43 | 13.74 | 11.31 | 9.48 |
| MoA Clear Passage 2050 Fund | 8.26 | 12.93 | 11.55 | 9.85 |
| Natixis Target Retirement 2050 N | N/A | N/A | 11.13 | 9.06 |
| Nuveen Lifecycle 2050 R6 | 8.86 | 14.06 | 11.28 | 9.09 |
| T. Rowe Price Retirement 2050 Tr-A | 9.07 | 14.73 | 11.48 | 9.42 |
| Voya Target Retirement 2050 Tr Comps CIT | 8.39 | 14.24 | 11.54 | 9.67 |
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **8.24** | **12.75** | **10.03** | **7.88** |
| American Century Retirement 2055 Trust Class XI | 8.07 | 13.48 | 10.52 | 8.29 |
| American Funds 2055 Trgt Date Retire R6 | 9.54 | 15.17 | 11.35 | 9.60 |
| Callan GlidePath® 2055 Fund CL R6 | 8.39 | 13.75 | 11.34 | 9.50 |
| MoA Clear Passage 2055 Fund | N/A | 13.03 | 11.65 | 10.03 |
| Natixis Target Retirement 2055 N | N/A | N/A | 11.13 | 9.00 |
| Nuveen Lifecycle 2055 R6 | 8.93 | 14.17 | 11.37 | 9.19 |
| T. Rowe Price Retirement 2055 Tr-A | 9.08 | 14.75 | 11.47 | 9.43 |
| Voya Target Retirement 2055 Tr Comps CIT | 8.44 | 14.36 | 11.65 | 9.81 |
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **8.19** | **12.71** | **10.01** | **7.86** |
| American Century Retirement 2060 Trust Class XI | N/A | 13.73 | 10.78 | 8.52 |
| American Funds 2060 Trgt Date Retire R6 | N/A | 15.13 | 11.32 | 9.59 |
| Callan GlidePath® 2060 Fund CL R6 | 8.46 | 13.80 | 11.37 | 9.53 |
| MoA Clear Passage 2060 Fund | N/A | N/A | 11.84 | 10.21 |
| Natixis Target Retirement 2060 N | N/A | N/A | 11.51 | 9.31 |
| Nuveen Lifecycle 2060 R6 | 9.01 | 14.29 | 11.53 | 9.31 |
| T. Rowe Price Retirement 2060 Tr-A | 9.11 | 14.73 | 11.47 | 9.42 |
| Voya Target Retirement 2060 Tr Comps CIT | N/A | 14.46 | 11.72 | 9.89 |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **8.13** | **12.65** | **9.94** | **7.77** |

**ANSWER**: Paragraph 187 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 187.

188. The chart above also demonstrates that the American Century TDFs underperformed their Morningstar benchmarks on a 5-year average basis since before the start of the Class Period and continued to underperform throughout the Class Period. More specifically, 2030-2060 vintages of the American Century TDFs underperformed against the Morningstar benchmarks on a 5-year average basis in every instance in 2019, four out of seven instances in 2021, three out of seven instances in 2023, and three out of seven instances in 2024.

**ANSWER**: SageView denies the allegations within the first sentence of Paragraph 188. The remaining allegations in Paragraph 188 assert argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 188.

189. To make matters worse, the American Century Target Date Series continuously ranked poorly as compared to its peers in its Morningstar Category on a 3-year average basis since before and throughout the Class Period.

| Group/Investment | Peer Group Percentile Rank | | | |
| --- | --- | --- | --- | --- |
| | 1/1/2017 - 12/31/2019 | 1/1/2019 - 12/31/2021 | 1/1/2021 - 12/31/2023 | 1/1/2022 - 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 91 | 89 | 76 | 75 |
| American Funds 2030 Trgt Date Retire R6 | 6 | 34 | 5 | 10 |
| Callan GlidePath® 2030 Fund CL R6 | 16 | 5 | 9 | 20 |
| MoA Clear Passage 2030 Fund | 48 | 29 | 1 | 5 |
| Natixis Target Retirement 2030 N | N/A | 23 | 13 | 20 |
| Nuveen Lifecycle 2030 R6 | 20 | 46 | 35 | 24 |
| T. Rowe Price Retirement 2030 Tr-A | 4 | 13 | 39 | 42 |
| Voya Target Retirement 2030 Tr Comps CIT | 30 | 24 | 51 | 66 |
| | | | | |
| American Century Retirement 2035 Trust Class XI | 86 | 87 | 90 | 87 |

| | | | |
|---|---|---|---|
| American Funds 2035 Trgt Date Retire R6 | 1 | 3 | 7 | 11 |
| Callan GlidePath® 2035 Fund CL R6 | 25 | 11 | 3 | 19 |
| MoA Clear Passage 2035 Fund | 61 | 27 | 1 | 7 |
| Natixis Target Retirement 2035 N | N/A | 33 | 14 | 23 |
| Nuveen Lifecycle 2035 R6 | 21 | 50 | 50 | 24 |
| T. Rowe Price Retirement 2035 Tr-A | 9 | 11 | 43 | 45 |
| Voya Target Retirement 2035 Tr Comps CIT | 30 | 19 | 45 | 51 |
| **American Century Retirement 2040 Trust Class XI** | **89** | **94** | **95** | **91** |
| American Funds 2040 Trgt Date Retire R6 | 1 | 5 | 12 | 8 |
| Callan GlidePath® 2040 Fund CL R6 | 37 | 17 | 10 | 24 |
| MoA Clear Passage 2040 Fund | 81 | 25 | 1 | 7 |
| Natixis Target Retirement 2040 N | N/A | 37 | 26 | 33 |
| Nuveen Lifecycle 2040 R6 | 18 | 44 | 51 | 24 |
| T. Rowe Price Retirement 2040 Tr-A | 6 | 9 | 51 | 51 |
| Voya Target Retirement 2040 Tr Comps CIT | 31 | 12 | 36 | 47 |
| **American Century Retirement 2045 Trust Class XI** | **85** | **87** | **96** | **92** |
| American Funds 2045 Trgt Date Retire R6 | 1 | 7 | 33 | 16 |
| Callan GlidePath® 2045 Fund CL R6 | 47 | 26 | 9 | 27 |
| MoA Clear Passage 2045 Fund | 91 | 45 | 3 | 9 |
| Natixis Target Retirement 2045 N | N/A | 26 | 24 | 37 |
| Nuveen Lifecycle 2045 R6 | 17 | 28 | 49 | 32 |
| T. Rowe Price Retirement 2045 Tr-A | 7 | 12 | 60 | 58 |
| Voya Target Retirement 2045 Tr Comps CIT | 38 | 6 | 20 | 38 |
| **American Century Retirement 2050 Trust Class XI** | **66** | **67** | **93** | **91** |
| American Funds 2050 Trgt Date Retire R6 | 1 | 1 | 50 | 30 |
| Callan GlidePath® 2050 Fund CL R6 | 52 | 43 | 19 | 31 |
| MoA Clear Passage 2050 Fund | 92 | 50 | 3 | 9 |
| Natixis Target Retirement 2050 N | N/A | 33 | 38 | 52 |
| Nuveen Lifecycle 2050 R6 | 14 | 26 | 45 | 33 |
| T. Rowe Price Retirement 2050 Tr-A | 7 | 12 | 63 | 62 |

| Fund | | | | |
|---|---|---|---|---|
| Voya Target Retirement 2050 Tr Comps CIT | 35 | 4 | 36 | 52 |
| American Century Retirement 2055 Trust Class XI | 60 | 58 | 92 | 89 |
| American Funds 2055 Trgt Date Retire R6 | 1 | 1 | 57 | 38 |
| Callan GlidePath® 2055 Fund CL R6 | 65 | 43 | 12 | 37 |
| MoA Clear Passage 2055 Fund | 96 | 46 | 3 | 10 |
| Natixis Target Retirement 2055 N | N/A | 51 | 34 | 44 |
| Nuveen Lifecycle 2055 R6 | 13 | 24 | 42 | 35 |
| T. Rowe Price Retirement 2055 Tr-A | 6 | 11 | 67 | 69 |
| Voya Target Retirement 2055 Tr Comps CIT | 43 | 4 | 42 | 50 |
| American Century Retirement 2060 Trust Class XI | 57 | 46 | 91 | 85 |
| American Funds 2060 Trgt Date Retire R6 | 1 | 6 | 62 | 41 |
| Callan GlidePath® 2060 Fund CL R6 | 68 | 45 | 21 | 33 |
| MoA Clear Passage 2060 Fund | N/A | 45 | 4 | 10 |
| Natixis Target Retirement 2060 N | N/A | 24 | 32 | 40 |
| Nuveen Lifecycle 2060 R6 | 12 | 12 | 39 | 29 |
| T. Rowe Price Retirement 2060 Tr-A | 10 | 20 | 62 | 65 |
| Voya Target Retirement 2060 Tr Comps CIT | 43 | 8 | 36 | 48 |
| American Century Retirement 2065 Trust Class XI | N/A | N/A | 82 | 86 |
| American Funds 2065 Trgt Date Retire R6 | N/A | N/A | 63 | 45 |
| Callan GlidePath® 2065 Fund CL R6 | N/A | N/A | 16 | 40 |
| MoA Clear Passage 2065 Fund | N/A | N/A | 9 | 11 |
| Natixis Target Retirement 2065 N | N/A | N/A | N/A | 43 |
| Nuveen Lifecycle 2065 R6 | N/A | N/A | 36 | 28 |
| T. Rowe Price Retirement 2065 Tr-A | N/A | N/A | 41 | 65 |
| Voya Target Retirement 2065 Tr Comps CIT | N/A | N/A | 29 | 50 |

**ANSWER**:     SageView denies the allegations in Paragraph 189.

190. The American Century Target Date Series also continuously ranked poorly as compared to its peers in its Morningstar Category on a 5-year average basis since before and throughout the Class Period.

| | Peer Group Percentile Rank | | | |
|---|---|---|---|---|
| Group/Investment | 1/1/2015 - 12/31/2019 | 1/1/2017 - 12/31/2021 | 1/1/2019 - 12/31/2023 | 1/1/2020 - 12/31/2024 |
| American Century Retirement 2030 Trust Class XI | 88 | 91 | 85 | 78 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 2 | 3 | 10 | 1 |
| Callan GlidePath® 2030 Fund CL R6 | 11 | 11 | 6 | 6 |
| MoA Clear Passage 2030 Fund | 13 | 42 | 5 | 1 |
| Natixis Target Retirement 2030 N | N/A | N/A | 10 | 6 |
| Nuveen Lifecycle 2030 R6 | 20 | 33 | 31 | 27 |
| T. Rowe Price Retirement 2030 Tr-A | 7 | 6 | 12 | 12 |
| Voya Target Retirement 2030 Tr Comps CIT | 27 | 22 | 30 | 28 |
| | | | | |
| American Century Retirement 2035 Trust Class XI | 86 | 90 | 87 | 86 |
| | | | | |
| American Funds 2035 Trgt Date Retire R6 | 1 | 1 | 1 | 2 |
| Callan GlidePath® 2035 Fund CL R6 | 22 | 16 | 6 | 7 |
| MoA Clear Passage 2035 Fund | 18 | 38 | 7 | 5 |
| Natixis Target Retirement 2035 N | N/A | N/A | 19 | 17 |
| Nuveen Lifecycle 2035 R6 | 21 | 35 | 38 | 35 |
| T. Rowe Price Retirement 2035 Tr-A | 14 | 6 | 12 | 18 |
| Voya Target Retirement 2035 Tr Comps CIT | 29 | 22 | 24 | 23 |
| | | | | |
| American Century Retirement 2040 Trust Class XI | 93 | 90 | 95 | 92 |
| | | | | |
| American Funds 2040 Trgt Date Retire R6 | 1 | 1 | 7 | 2 |
| Callan GlidePath® 2040 Fund CL R6 | 19 | 20 | 13 | 10 |
| MoA Clear Passage 2040 Fund | 30 | 48 | 6 | 4 |
| Natixis Target Retirement 2040 N | N/A | N/A | 24 | 25 |
| Nuveen Lifecycle 2040 R6 | 18 | 28 | 28 | 36 |
| T. Rowe Price Retirement 2040 Tr-A | 7 | 6 | 14 | 16 |
| Voya Target Retirement 2040 Tr Comps CIT | 25 | 16 | 16 | 14 |

| | | | | |
|---|---|---|---|---|
| **American Century Retirement 2045 Trust Class XI** | 86 | 86 | 85 | 88 |
| | | | | |
| American Funds 2045 Trgt Date Retire R6 | 1 | 1 | 8 | 8 |
| Callan GlidePath® 2045 Fund CL R6 | 28 | 25 | 23 | 17 |
| MoA Clear Passage 2045 Fund | 38 | 71 | 4 | 7 |
| Natixis Target Retirement 2045 N | N/A | N/A | 21 | 28 |
| Nuveen Lifecycle 2045 R6 | 12 | 18 | 22 | 29 |
| T. Rowe Price Retirement 2045 Tr-A | 7 | 5 | 11 | 18 |
| Voya Target Retirement 2045 Tr Comps CIT | 33 | 13 | 8 | 6 |
| | | | | |
| **American Century Retirement 2050 Trust Class XI** | 71 | 64 | 89 | 92 |
| | | | | |
| American Funds 2050 Trgt Date Retire R6 | 1 | 1 | 6 | 8 |
| Callan GlidePath® 2050 Fund CL R6 | 31 | 39 | 39 | 21 |
| MoA Clear Passage 2050 Fund | 47 | 73 | 3 | 7 |
| Natixis Target Retirement 2050 N | N/A | N/A | 26 | 34 |
| Nuveen Lifecycle 2050 R6 | 10 | 16 | 15 | 29 |
| T. Rowe Price Retirement 2050 Tr-A | 6 | 6 | 21 | 27 |
| Voya Target Retirement 2050 Tr Comps CIT | 42 | 13 | 17 | 14 |
| | | | | |
| **American Century Retirement 2055 Trust Class XI** | 81 | 56 | 82 | 89 |
| | | | | |
| American Funds 2055 Trgt Date Retire R6 | 1 | 1 | 15 | 11 |
| Callan GlidePath® 2055 Fund CL R6 | 52 | 44 | 39 | 32 |
| MoA Clear Passage 2055 Fund | N/A | 75 | 4 | 8 |
| Natixis Target Retirement 2055 N | N/A | N/A | 32 | 44 |
| Nuveen Lifecycle 2055 R6 | 8 | 15 | 15 | 30 |
| T. Rowe Price Retirement 2055 Tr-A | 7 | 5 | 27 | 36 |
| Voya Target Retirement 2055 Tr Comps CIT | 48 | 10 | 9 | 10 |
| | | | | |
| **American Century Retirement 2060 Trust Class XI** | N/A | 51 | 64 | 75 |
| | | | | |
| American Funds 2060 Trgt Date Retire R6 | N/A | 1 | 27 | 15 |
| Callan GlidePath® 2060 Fund CL R6 | 58 | 44 | 40 | 31 |
| MoA Clear Passage 2060 Fund | N/A | N/A | 3 | 9 |

| Natixis Target Retirement 2060 N | N/A | N/A | 12 | 28 |
| Nuveen Lifecycle 2060 R6 | 8 | 12 | 9 | 29 |
| T. Rowe Price Retirement 2060 Tr-A | 10 | 9 | 33 | 34 |
| Voya Target Retirement 2060 Tr Comps CIT | N/A | 15 | 16 | 9 |

**ANSWER**:    SageView denies the allegations in Paragraph 190.

191. The chart below shows that starting in 2019, the 2030-2065 vintages of the American Century TDFs underperformed against each of the Morningstar Comparator Funds' corresponding vintages on a one-year cumulative return basis in 211 out of 216 instances, or 98% of the time, and underperformed the Morningstar benchmarks in 28 out of 31 instances.

| | **One Year Return (Cumulative)** | | | |
|---|---|---|---|---|
| **Investment and Benchmark** | **1/1/2019 - 12/31/2019** | **1/1/2021 - 12/31/2021** | **1/1/2023 - 12/31/2023** | **1/1/2024 - 12/31/2024** |
| American Century Retirement 2030 Trust Class XI | 18.88 | 10.75 | 12.65 | 8.76 |
| | | | | |
| American Funds 2030 Trgt Date Retire R6 | 20.06 | 13.16 | 14.52 | 10.86 |
| Callan GlidePath® 2030 Fund CL R6 | 21.96 | 16.88 | 14.41 | 11.19 |
| MoA Clear Passage 2030 Fund | 21.93 | 15.29 | 15.25 | 11.16 |
| Natixis Target Retirement 2030 N | 20.99 | 12.77 | 16.65 | 10.28 |
| Nuveen Lifecycle 2030 R6 | 21.27 | 11.23 | 14.59 | 10.16 |
| T. Rowe Price Retirement 2030 Tr-A | 22.70 | 13.45 | 16.56 | 10.92 |
| Voya Target Retirement 2030 Tr Comps CIT | 21.05 | 13.64 | 15.80 | 10.87 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2030 TR USD** | **21.24** | **11.69** | **13.33** | **8.83** |
| American Century Retirement 2035 Trust Class XI | 20.28 | 11.52 | 13.54 | 9.36 |
| | | | | |
| American Funds 2035 Trgt Date Retire R6 | 23.29 | 15.54 | 16.90 | 12.73 |
| Callan GlidePath® 2035 Fund CL R6 | 23.16 | 17.95 | 15.66 | 12.23 |
| MoA Clear Passage 2035 Fund | 23.62 | 17.84 | 17.26 | 13.05 |
| Natixis Target Retirement 2035 N | 23.12 | 14.95 | 17.89 | 11.50 |
| Nuveen Lifecycle 2035 R6 | 23.04 | 12.70 | 16.38 | 11.36 |
| T. Rowe Price Retirement 2035 Tr-A | 23.99 | 15.02 | 18.43 | 12.19 |
| Voya Target Retirement 2035 Tr Comps CIT | 22.67 | 15.70 | 17.65 | 12.43 |

| | | | | |
|---|---|---|---|---|
| **Benchmark: Morningstar Lifetime Mod 2035 TR USD** | **23.04** | **13.63** | **14.84** | **10.18** |
| | | | | |
| American Century Retirement 2040 Trust Class XI | 21.63 | 12.23 | 14.40 | 10.20 |
| | | | | |
| American Funds 2040 Trgt Date Retire R6 | 24.40 | 16.83 | 19.33 | 14.79 |
| Callan GlidePath® 2040 Fund CL R6 | 23.99 | 18.77 | 16.75 | 13.50 |
| MoA Clear Passage 2040 Fund | 24.25 | 19.89 | 18.87 | 14.35 |
| Natixis Target Retirement 2040 N | 23.83 | 15.87 | 19.76 | 12.59 |
| Nuveen Lifecycle 2040 R6 | 24.56 | 14.33 | 18.39 | 12.76 |
| T. Rowe Price Retirement 2040 Tr-A | 24.95 | 16.30 | 19.93 | 13.40 |
| Voya Target Retirement 2040 Tr Comps CIT | 24.07 | 17.87 | 19.33 | 13.85 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2040 TR USD** | **24.35** | **15.35** | **16.34** | **11.70** |
| | | | | |
| American Century Retirement 2045 Trust Class XI | 23.09 | 13.12 | 15.14 | 11.08 |
| | | | | |
| American Funds 2045 Trgt Date Retire R6 | 24.68 | 17.18 | 20.15 | 15.17 |
| Callan GlidePath® 2045 Fund CL R6 | 24.59 | 18.97 | 17.58 | 14.24 |
| MoA Clear Passage 2045 Fund | 24.54 | 20.57 | 19.64 | 14.90 |
| Natixis Target Retirement 2045 N | 25.23 | 17.09 | 20.65 | 13.45 |
| Nuveen Lifecycle 2045 R6 | 25.87 | 15.94 | 19.47 | 13.80 |
| T. Rowe Price Retirement 2045 Tr-A | 25.59 | 17.22 | 20.83 | 14.22 |
| Voya Target Retirement 2045 Tr Comps CIT | 25.15 | 19.12 | 20.20 | 14.94 |
| | | | | |
| **Benchmark: Morningstar Lifetime Mod 2045 TR USD** | **24.97** | **16.36** | **17.39** | **12.86** |
| | | | | |
| American Century Retirement 2050 Trust Class XI | 24.44 | 14.19 | 15.96 | 12.01 |
| | | | | |
| American Funds 2050 Trgt Date Retire R6 | 25.04 | 17.27 | 20.83 | 15.43 |
| Callan GlidePath® 2050 Fund CL R6 | 24.60 | 18.96 | 18.04 | 14.67 |
| MoA Clear Passage 2050 Fund | 24.65 | 20.82 | 19.94 | 15.39 |
| Natixis Target Retirement 2050 N | 24.89 | 17.22 | 21.31 | 13.66 |
| Nuveen Lifecycle 2050 R6 | 26.19 | 16.48 | 20.03 | 14.27 |
| T. Rowe Price Retirement 2050 Tr-A | 25.67 | 17.35 | 21.12 | 14.51 |
| Voya Target Retirement 2050 Tr Comps CIT | 25.61 | 19.05 | 20.59 | 15.45 |

72

| | | | | |
|---|---|---|---|---|
| **Benchmark: Morningstar Lifetime Mod 2050 TR USD** | **25.09** | **16.60** | **17.85** | **13.36** |
| American Century Retirement 2055 Trust Class XI | 24.96 | 14.76 | 16.60 | 12.83 |
| American Funds 2055 Trgt Date Retire R6 | 25.09 | 17.28 | 21.40 | 15.58 |
| Callan GlidePath® 2055 Fund CL R6 | 24.61 | 19.01 | 18.02 | 14.65 |
| MoA Clear Passage 2055 Fund | 24.40 | 21.11 | 19.98 | 15.66 |
| Natixis Target Retirement 2055 N | 25.51 | 17.25 | 21.74 | 13.93 |
| Nuveen Lifecycle 2055 R6 | 26.36 | 16.65 | 20.25 | 14.46 |
| T. Rowe Price Retirement 2055 Tr-A | 25.65 | 17.37 | 21.20 | 14.60 |
| Voya Target Retirement 2055 Tr Comps CIT | 25.64 | 19.15 | 20.68 | 15.62 |
| **Benchmark: Morningstar Lifetime Mod 2055 TR USD** | **25.05** | **16.50** | **17.90** | **13.33** |
| American Century Retirement 2060 Trust Class XI | 25.45 | 15.16 | 16.85 | 13.20 |
| American Funds 2060 Trgt Date Retire R6 | 25.01 | 17.19 | 21.61 | 15.60 |
| Callan GlidePath® 2060 Fund CL R6 | 24.71 | 18.96 | 18.03 | 14.70 |
| MoA Clear Passage 2060 Fund | 24.53 | 21.60 | 20.19 | 15.73 |
| Natixis Target Retirement 2060 N | 25.78 | 17.71 | 21.74 | 13.84 |
| Nuveen Lifecycle 2060 R6 | 26.70 | 16.80 | 20.46 | 14.56 |
| T. Rowe Price Retirement 2060 Tr-A | 25.70 | 17.45 | 21.17 | 14.60 |
| Voya Target Retirement 2060 Tr Comps CIT | 25.56 | 19.51 | 20.70 | 15.63 |
| **Benchmark: Morningstar Lifetime Mod 2060 TR USD** | **24.96** | **16.33** | **17.86** | **13.15** |
| American Century Retirement 2065 Trust Class XI | N/A | 15.21 | 17.09 | 13.52 |
| American Funds 2065 Trgt Date Retire R6 | N/A | 17.32 | 21.55 | 15.64 |
| Callan GlidePath® 2065 Fund CL R6 | N/A | 18.96 | 18.03 | 14.68 |
| MoA Clear Passage 2065 Fund | N/A | 21.73 | 20.50 | 16.01 |
| Natixis Target Retirement 2065 N | N/A | N/A | 22.06 | 13.95 |
| Nuveen Lifecycle 2065 R6 | N/A | 17.15 | 20.59 | 14.71 |
| T. Rowe Price Retirement 2065 Tr-A | N/A | 18.33 | 21.24 | 14.55 |
| Voya Target Retirement 2065 Tr Comps CIT | N/A | 19.26 | 20.89 | 15.73 |

| Benchmark: Morningstar Lifetime Mod 2065 TR USD | N/A | 16.10 | 17.78 | 12.92 |
|---|---|---|---|---|

**ANSWER**: Paragraph 191 asserts argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 191.

192. Altogether, the charts above span from the first day of 2015 until the last day of 2024, demonstrating that the American Century TDFs underperformed in both good markets and bad markets.

**ANSWER**: SageView denies the allegations in Paragraph 192.

193. Looking at this data together, the American Century TDFs underperformed across several metrics for *years before* the Class Period, and for *years into* the Class Period. This consistent underperformance data was publicly available to the Plan Committee and SageView at the time of their decision-making, whether they reviewed the funds annually or quarterly (if at all).

**ANSWER**: SageView denies the allegations in Paragraph 193.

194. Prudent fiduciaries would have acknowledged that this pattern of underperformance did not bode well for American Century TDFs' future performance and would have made a timely switch to any of the numerous safer, better managed, and ultimately more optimistic investment options.

**ANSWER**: SageView denies the allegations in Paragraph 194.

195. Given the long history of underperformance, it's inexplicable why the American Century TDFs would have been included as Plan investment options by the start of the Class Period and kept in place, unless SageView was unreasonably favoring American Century TDFs for retention. Of course, that would be a fiduciary breach on SageView's part.

**ANSWER**: SageView denies the allegations in Paragraph 195.

196.    The market has taken note of the American Century TDFs' underperformance. In 2016, the American Century TDFs had a roughly 1.5% market share among TDFs. By the end of 2024, that market share had dwindled to 0.5%, or roughly 1/3 of its 2016 market share.



**ANSWER**:    SageView denies the allegations in Paragraph 196.

197.    The American Century TDF's steady underperformance has given rise to a dramatic loss of market share. The following chart illustrates the cumulative growth rate for the TDF sector as well as for AC based on monthly observations as of Dec 2016. Note that while the industry as a whole has seen nearly 100% growth (excluding investment returns), American Century has seen a nearly 40% decline in assets as a result of redemptions.

**ANSWER**:    SageView denies the allegations in Paragraph 197.

198.    Additionally, high turnover rates create meaningful transaction costs for funds.



**ANSWER**: SageView denies the allegations in Paragraph 198.

199. Turnover rates measure how often a fund changes its investments, with higher rates meaning the fund frequently buys and sells stocks or bonds.

**ANSWER**: SageView admits that "turnover rate" is generally used to refer to the rate at which a fund replaces its investments. SageView denies any remaining allegations in Paragraph 199.

200. A higher-than-average turnover rate indicates an investment manager's lack of experience or an attempt to mask a fund's underperformance.

**ANSWER**: SageView denies the allegations in Paragraph 200.

201. "High turnover is worrisome because it can suggest a manager is not following a disciplined investment strategy — which would contradict the funds' role in investors' retirement portfolios." Jessica Toonkel, *Target date turnover troubles big firms*, Investment News (Aug. 29, 2010).[11]

---

[11] Available at https://www.investmentnews.com/mutual-funds/target-date-turnover-troubles-big-firms/31049.

**ANSWER**: Paragraph 201 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 201.

202. A turnover rate above 30% "warrants closer inspection" by investment professionals. *Id.*

**ANSWER**: Paragraph 202 quotes and purports to describe the content of a written document that speaks for itself. SageView denies any allegations that are inconsistent with the content of that document. SageView denies any remaining allegations in Paragraph 202.

203. The American Century TDFs had significant turnover, however, much higher than 30%, both before and during the Class Period.

**ANSWER**: SageView denies the allegations in Paragraph 203.

204. During the period 2016-2018, the funds underlying the American Century TDFs had an average turnover of 68% per year, which rose to 72% per year over 2019-2023, more than *double* 30% starting in 2016, and substantially higher than the turnover for peer TDFs.

**ANSWER**: SageView denies the allegations in Paragraph 204.

205. A prudent fiduciary would monitor a fund's turnover rate and would understand that excessive turnover can mean that the manager is attempting to remedy underperformance by deviating from the fund's strategy.

**ANSWER**: Paragraph 205 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 205.

206. Here, the American Century TDF's turnover was a significant red flag, and a prudent fiduciary would have investigated the reasons for the high turnover and the impact the turnover was having on the Plan and the participants' retirement savings.

**ANSWER**:    SageView denies the allegations in Paragraph 206.

207.    Taken together, because of the underperformance and high turnover rates for the American Century TDFs, Defendants were or should have been aware from the beginning of the Class Period that the American Century TDFs were not an appropriate investment in the Plan.

**ANSWER**:    SageView denies the allegations in Paragraph 207.

208.    The analysis set forth above in *no way uses hindsight.* Instead, it is solely based on information that the Plan Committee had or should have had available to them before and at all times during the Class Period.

**ANSWER**:    SageView denies the allegations in Paragraph 208.

209.    Because Defendants imprudently did not choose prudent, alternative TDFs, and instead chose the consistently underperforming American Century TDFs, Defendants caused unreasonable and unnecessary losses to Plaintiffs and Plan participants invested in the American Century TDFs in the tens of millions of dollars over the course of the Class Period.

**ANSWER**:    SageView denies the allegations in Paragraph 209.

210.    Moreover, by failing to engage in an objectively reasonable fiduciary process when retaining and failing to remove American Century TDFs from January 2019 until January 2025, Defendants breached their fiduciary duties of prudence to Plaintiffs and Plan participants and are liable to Plaintiffs and Class Members for the retirement monies lost through the imprudent investment in the American Century TDFs through the Class Period.

**ANSWER**:    SageView denies the allegations in Paragraph 210.

211.    Defendants caused objectively unreasonable losses to Plaintiffs and the Plan's participants of more than $27 million from the beginning of the Class Period, when considering

the retirement losses suffered by Plaintiffs and the Class by the Plan Committee maintaining various versions of the American Century TDFs as the Plan's default investment.

**ANSWER**:　　SageView denies the allegations in Paragraph 211.

212.　　The following chart illustrates an estimate of damages suffered for each vintage of the American Century TDFs by maintaining the American Century TDF as the Plan's default investment instead of selecting, at the beginning of the Class Period, a more suitable and prudent alternative suite of TDFs.

**ANSWER**:　　SageView denies the allegations in Paragraph 212.

213.　　Defendants caused objectively unreasonable losses to Plaintiffs and the Plan's participants of over $31 million dollars from January 2019 through January 2025, when considering the retirement losses suffered by Plaintiffs and the Class by the Plan Committee maintaining various versions of just one of the many possible comparable TDFs the Committee could have used to replace the American Century TDFs as Plan investments QDIA.

| Fund | Est. Damages |
|---|---|
| American Century 2025 XI | $ 1,878,359 |
| American Century 2030 XI | $ 4,021,623 |
| American Century 2035 XI | $ 6,126,509 |
| American Century 2040 XI | $ 7,383,256 |
| American Century 2045 XI | $ 6,613,615 |
| American Century 2050 XI | $ 3,248,997 |
| American Century 2055 XI | $ 1,401,032 |
| American Century 2060 XI | $ 836,089 |
| American Century 2065 XI | $ 38,043 |
| **Total** | **$ 31,547,523** |

**ANSWER**:　　SageView denies the allegations in Paragraph 213.

214.　　If the Plan Committee appropriately evaluated the American Century TDFs at the beginning of and throughout the Class Period, it should have selected a more suitable and prudent

TDF suite. Any of those suites of TDFs would have delivered performance superior to the American Century TDFs.

      **ANSWER**:    SageView denies the allegations in Paragraph 214.

## CLASS ACTION ALLEGATIONS

215.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

      **ANSWER**:    Paragraph 215 assert legal conclusions to which no response is required. To the extent a response is required, SageView admits that the allegations in Paragraph 215 purport to characterize ERISA, but denies any characterization contrary to the terms of the statute. SageView denies any remaining allegations in Paragraph 215.

216.    In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the Evergy, Inc. 401(k) Plan who invested in any of the American Century Target Date Funds (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) during the Class Period.

      **ANSWER**:    SageView admits that Plaintiffs purport to seek class certification on behalf of the class defined in Paragraph 216, but SageView denies that class certification is appropriate. SageView denies any remaining allegations in Paragraph 216.

217.    The Class Period is defined as six years prior to the filing of this Complaint and continuing through the date of judgment in this action.

**ANSWER**:    SageView admits that Plaintiffs purport to seek class certification for the period identified in Paragraph 217, but SageView denies that class certification is appropriate. SageView denies any remaining allegations in Paragraph 217.

218.    The Class includes thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

**ANSWER**:    Paragraph 218 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 218.

219. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owe fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

- Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether Defendants breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

**ANSWER**:    SageView denies the allegations in Paragraph 219 and all subparagraphs thereunder.

220.    Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were Plan participants during the time period at issue and the designated participants in the Plan were harmed by Defendants' fiduciary misconduct in the same manner.

**ANSWER**: SageView denies the allegations in Paragraph 220.

221. Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were Plan participants in the Plan during the Class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

**ANSWER**: SageView denies the allegations in Paragraph 221.

222. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

**ANSWER**: SageView denies the allegations in Paragraph 222.

223. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

**ANSWER**: SageView denies the allegations in Paragraph 223.

224. Plaintiffs' attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

**ANSWER**:     SageView denies the allegations in Paragraph 224.

225.     The claims brought by the Plaintiffs arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the Plan. Exhaustion is intended to serve as a Plan procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for breaches of fiduciary duty.

**ANSWER**:     SageView denies the allegations in Paragraph 225.

226.     Under ERISA, an individual "participant" or "beneficiary" are distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust Plan remedies – does not, by itself, bind the Plan.

**ANSWER**:     Paragraph 226 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 226.

### FIRST CLAIM FOR RELIEF
#### Breach of Duty of Prudence of ERISA, as Amended
#### (Plaintiffs, on behalf of themselves and Class,
#### Against Defendant Plan Committee and SageView– Challenged TDFs)

227.     Plaintiffs restate the above allegations as if fully set forth herein.

**ANSWER**:     SageView restates and incorporates its answers to all prior paragraphs and allegations as though fully set forth herein.

228.     Defendant Plan Committee and its members and SageView are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

**ANSWER**:     Paragraph 228 asserts legal conclusions to which no response is required. To the extent a response is required, SageView admits that Paragraph 228 purports to characterize

ERISA, but denies any characterization contrary to ERISA's terms. SageView denies any remaining allegations in Paragraph 228.

229.    29 U.S.C. § 1104(a)(1)(B) imposes a fiduciary duty of prudence upon Defendant Plan Committee and SageView in managing the investments of the Plan.

**ANSWER**:    Paragraph 228 asserts legal conclusions to which no response is required. To the extent a response is required, SageView admits that Paragraph 229 purports to characterize ERISA, but denies any characterization contrary to ERISA's terms. SageView denies any remaining allegations in Paragraph 229.

230.    Defendant Plan Committee and SageView, as fiduciaries of the Plan, are responsible for selecting and maintaining prudent investment options and taking any other necessary steps to ensure that the Plan's assets are invested prudently.

**ANSWER**:    Paragraph 230 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 230.

231.    During the Class Period, Defendant Plan Committee and SageView had a fiduciary duty to do all of the following: manage the assets of the Plan prudently and act with the care, skill, diligence, and prudence required by ERISA.

**ANSWER**:    Paragraph 231 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 231.

232.    During the Class Period, Defendant Plan Committee and SageView breached their fiduciary duties of prudence owed to Plan participants, including to Plaintiffs, by failing to manage the TDFs of the Plan prudently, and failing to act with the care, skill, diligence, and prudence required by ERISA.

**ANSWER**:    SageView denies the allegations in Paragraph 232.

233.     Defendant Plan Committee and SageView, as fiduciaries of the Plan, had a continuing duty to regularly monitor and independently assess before and during the Class Period whether the Plan's TDFs were prudent choices for the Plan and to remove imprudent investment options regardless of how long those investments had been in the Plan.

**ANSWER**:     Paragraph 233 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 233.

234.     During the Class Period, Defendant Plan Committee and SageView breached their fiduciary duties of prudence to Plan participants, including Plaintiffs, by failing to engage in a prudent fiduciary process for monitoring the Plan's TDFs and by failing to remove imprudent TDFs investments within a reasonable period.

**ANSWER**:     SageView denies the allegations in Paragraph 234.

235.     Defendant Plan Committee and SageView were directly responsible for: evaluating and monitoring the Plan's investment options, including the American Century TDFs, in a prudent fashion; eliminating funds, such the American Century TDFs, that were no longer prudent investment options; and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

**ANSWER**:     SageView denies that the American Century TDFs were imprudent investments. The remaining allegations in Paragraph 235 assert argument and legal conclusions to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 235.

236.     Defendant Plan Committee and SageView failed to employ a prudent fiduciary process by failing to monitor evaluate the American Century TDFs for suitability given Plan demographics and in comparison to other meaningful benchmark TDFs.

**ANSWER**:     SageView denies the allegations in Paragraph 236.

237.     Defendant Plan Committee and SageView, as fiduciaries of the Plan, had a continuing duty to regularly monitor and independently assess through the Plan 2013 and 2022 IPSs whether the Plan's TDFs were prudent choices for the Plan and to remove imprudent investment options regardless of how long those investments had been in the Plan.

**ANSWER**:     Paragraph 237 asserts legal conclusions and argument to which no response is required. To the extent a response is required, SageView denies the allegations in Paragraph 237.

238.     Defendant Plan Committee and SageView failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching their fiduciary duties of prudence under 29 U.S.C. § 1104(a)(1)(B).

**ANSWER**:     SageView denies the allegations in Paragraph 238.

239.     As a result of Defendant Plan Committee and SageView's breach of their fiduciary duty of prudence with respect to the Plan, the Plaintiffs and Plan participants suffered tens of millions of dollars in unreasonable and unnecessary monetary losses.

**ANSWER**:     SageView denies the allegations in Paragraph 239.

240.     Defendant Plan Committee and SageView are liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the fiduciary breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breach of fiduciary duty alleged in this Count. In addition, Defendant Plan Committee and SageView are subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

**ANSWER**:     SageView denies the allegations in Paragraph 240.

## SECOND CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries under ERISA,
### (Plaintiffs, on behalf of themselves and Class,
### Against Defendants Evergy, Campbell, and Bassham– Challenged TDFs)

241.    Plaintiffs restate the above allegations as if fully set forth herein.

**ANSWER**:     SageView restates and incorporates its answers to all prior paragraphs and allegations as though fully set forth herein.

242.    Defendants Evergy, Campbell, and Bassham had the authority to appoint and remove members or individuals responsible for Plan investment management on the Plan Committee and for hiring SageView, and were aware that these fiduciaries had critical responsibilities for the Plan.

**ANSWER**:     SageView denies the allegations in Paragraph 242.

243.    In light of this authority, Defendants Evergy, Campbell, and Bassham had a duty to monitor those individuals responsible for Plan investment management on the Plan Committee and at SageView to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

**ANSWER**:     SageView denies the allegations in Paragraph 243.

244.    Defendants Evergy, Campbell, and Bassham had a duty to ensure that the individuals responsible for Plan investment management on the Plan Committee and at SageView possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions

and analysis with respect to the Plan's investments; and reported regularly to Defendants Evergy, Campbell, and Bassham.

**ANSWER**:    SageView denies the allegations in Paragraph 244.

245.    Defendants Evergy, Campbell, and Bassham breached their duty to monitor individuals responsible for Plan investment management on the Plan Committee and at SageView, by, among other things:

- Failing to monitor and evaluate the performance of individuals responsible for Plan investment management on the Plan Committee or at SageView or have a system in place for doing so, standing idly by as the Plan suffered significant losses by maintaining the imprudent American Century TDFs for most of the Class Period;

- Failing to monitor the process by which Plan TDFs were evaluated, failing to investigate the suitability of the American Century TDFs based on Plan demographics and failing to investigate the availability of alternative, prudent TDFs; and

- Failing to remove individuals responsible for Plan investment management on the Plan Committee or SageView whose performance was inadequate in that they continued to maintain the American Century TDFs, all to the detriment of the Plan and Plan participants' retirement savings.

**ANSWER**:    SageView denies the allegations in Paragraph 245 and all subparagraphs thereunder.

246.    As a result of Defendants Evergy, Campbell, and Bassham's foregoing breaches of the duty to monitor, the Plaintiffs and Plan Participants suffered unreasonable and unnecessary monetary losses amounting to tens of millions of dollars.

**ANSWER**: SageView denies the allegations in Paragraph 246.

247. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants Evergy, Campbell, and Bassham are liable to restore to the Plan all loses caused by their failure to adequately monitor individuals responsible for Plan investment management on the Plan Committee and at SageView. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

**ANSWER**: SageView denies the allegations in Paragraph 247.

## PRAYER FOR RELIEF

The remainder of the SAC consists of Plaintiffs' prayer for relief, to which no response is required. To the extent that a response is required, SageView denies that Plaintiffs are entitled to the relief requested in the SAC or to any relief whatsoever.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters that it would not otherwise bear, SageView asserts the following affirmative defenses to the Second Amended Complaint:

## FIRST DEFENSE:

SageView was not acting as a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1102(21)(A), with respect to the conduct as alleged in the Second Amended Complaint.

## SECOND DEFENSE:

Plaintiffs' claims against SageView are barred in whole or in part by the applicable statutes of repose or limitations, including but not limited to ERISA § 413, 29 U.S.C. § 1113.

## THIRD DEFENSE:

The claims of any alleged class member who executed a waiver or release of ERISA claims may be barred by that waiver or release of claims.

## FOURTH DEFENSE:

To the extent Plaintiffs have stated a claim on which relief can be granted, Plaintiffs proximately caused, contributed to, or failed to mitigate any and all losses claimed by them.

## FIFTH DEFENSE:

Plaintiffs' claims, as well as those of other members of the putative class, are barred, in whole or in part, by their lack of standing.

## SIXTH DEFENSE:

SageView is relieved of any alleged liability because Plan participants exercised control over their own individual accounts and suffered no loss due to the actions of SageView.

## SEVENTH DEFENSE:

Plaintiffs' alleged losses were not caused by any acts, fiduciary in nature or otherwise, by SageView and, instead, were caused by independent market and economic events wholly out of the control of SageView.

## EIGHTH DEFENSE:

All Defendants required to do so under the Plan engaged in a prudent process to select and monitor the Plan's investment options.

## NINTH DEFENSE:

The Plan's investments at all times during the putative class period were substantively and objectively prudent.

## RESERVATION OF RIGHTS:

SageView is presently without sufficient knowledge as to whether there are additional defenses beyond those stated above. SageView reserves the right to assert additional defenses as

it continues its investigation into the matters alleged in the Second Amended Complaint. SageView also reserves the right to amended its Answer as more information becomes available.

Dated: November 11, 2025

*/s/ W. Glenn Merten*
Alicia R. Olszeski, #66168MO
Faegre Drinker Biddle & Reath LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1219
Facsimile: (312) 569-3000
Email: *ali.olszeski@faegredrinker.com*

W. Glenn Merten (*pro hac vice*)
Faegre Drinker Biddle & Reath LLP
1500 K Street, N.W., Suite 1100
Washington, DC 20005
Telephone: (202) 230-5235
Facsimile: (202) 842-8465
Email: *glenn.merten@faegredrinker.com*

Allison S. Egan (*pro hac vice* forthcoming)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-1982
Facsimile: (215) 988-2757
Email: *allison.egan@faegredrinker.com*

*Attorneys for Defendant SageView Advisory Group LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2025, I caused the foregoing document to be filed via the Court's CM/ECF system, which will generate a notice of electronic filing to all counsel of record in this matter.

/s/ W. Glenn Merten
W. Glenn Merten